**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**KEY WEST DIVISION**
**Case No. 4:18-cv-10279-WILLIAMS/TORRES**

PETER SEAN BROWN,

        Plaintiff,

    v.

RICHARD A. RAMSAY, in his official
capacity as Sheriff of Monroe County,

        Defendant.

_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 2

STANDARD OF REVIEW ........................................................................................................ 4

ARGUMENT............................................................................................................................. 4

    I.    Defendant's Motion Is Procedurally Improper Because He Failed to Pursue Any of the Normal Avenues for Resolving Discovery Disputes. ....................................................... 4

    II.   Defendant Has Failed to Cite Any Evidence or Identify Any Specific Questions He Thinks Should Have Been Answered. ............................................................................... 6

    III.  The Motion Is Meritless in Any Event. ........................................................................... 8

    CONCLUSION......................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) ...........................................................................................9

*Burroughs v. Cty. of Nassau*,
  2014 WL 2587580 (E.D.N.Y. June 9, 2014) ......................................................................8

*Campbell v. Gerrans*,
  592 F.2d 1054 (9th Cir. 1979) .............................................................................................9

*Castillo v. Cartier*,
  2018 WL 6603864 (E.D. Cal. Dec. 17, 2018) ......................................................................7

*Dunbar v. United States*,
  502 F.2d 506 (5th Cir. 1974) .........................................................................................9, 11

*Eagle Hosp. Physicians v. SRG Consulting*,
  561 F.3d 1298 (11th Cir. 2009) ........................................................................................8, 9

*Heath v. Benitez*,
  2011 WL 2618927 (M.D. Fla. July 1, 2011) .......................................................................11

*Hemisphere Holdings I, LLC v. Wal-Mart Stores East, LP*,
  2015 WL 13229608 (S.D. Fla. Nov. 25, 2019).....................................................................7

*Herring v. Sec'y, Dep't of Corr.*,
  397 F.3d 1338 (11th Cir. 2005) ...........................................................................................8

*Jones v. Graham*,
  709 F.2d 1457 (11th Cir. 1983) ...........................................................................................8

*McNeil v. Johnson*,
  2019 WL 1650283 (D.N.J. Apr. 17, 2019) ..........................................................................8

*Medi-Weightloss Franchising USA v. Medi-Weightloss Clinic of Boca Raton*,
  2012 WL 12904394 (M.D. Fla. May 10, 2012)....................................................................7

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1978).............................................................................................................2

*Morawetz v. W. of England Ship Owners Ass'n*,
  62 F.3d 1356 (11th Cir. 1995) ......................................................................................4, 12

ii

*Pervis v. State Farm Fire & Cas. Co.*,
    901 F.2d 944 (11th Cir. 1990) ............................................................................11

*Serafino v. Hasbro, Inc.*,
    82 F.3d 515 (1st Cir. 1996) ...............................................................................9

*Societe Int'l v. Rogers*,
    357 U.S. 197 (1958) ...........................................................................................9

*TIKD Servs. LLC v. Fla. Bar*,
    2017 WL 6763946 (S.D. Fla. Nov. 9, 2017) ....................................................5

*United States v. Levy*,
    379 F.3d 1241 (11th Cir. 2004) .........................................................................8

*Velazquez v. Broesche*,
    2006 WL 2329401 (W.D. Tex., June 13, 2006) ..............................................7

*Wehling v. Columbia Broad. Sys.*,
    608 F.2d 1084 (5th Cir. 1979) .....................................................................9, 11

*Wouters v. Martin Cty.*,
    9 F.3d 924 (11th Cir. 1993) ....................................................................4, 5, 12

**Rules**

Fed. R. Civ. P. 26 ....................................................................................................5

Fed. R. Civ. P. 33 ....................................................................................................6

Fed. R. Civ. P. 34 ....................................................................................................6

Fed. R. Civ. P. 41(b) ....................................................................................4, 11, 12

**Other Authorities**

Order Setting Discovery Deadlines ..........................................................................5

## INTRODUCTION

Plaintiff Peter Sean Brown ("Mr. Brown") is a United States citizen who was held by Defendant, the Sheriff of Monroe County, pursuant to a detainer request issued by U.S. Immigration and Customs Enforcement ("ICE").  Despite multiple indications that Mr. Brown was a natural-born U.S. citizen—including the jail's own records, Mr. Brown's written grievances, his offer to produce his birth certificate, and his repeated pleas over the course of three weeks not to be turned over to ICE—Defendant held him for ICE so that he could be deported.  Mr. Brown filed suit against Defendant in December 2018.  Defendant did not move to dismiss, so discovery began in February 2019.

Now, six months into discovery, with no warning or attempt to confer, Defendant has suddenly moved to dismiss Mr. Brown's entire case, simply because Mr. Brown invoked the Fifth Amendment privilege against self-incrimination in response to several questions during his deposition.  This unusual motion should be denied for multiple reasons.

First, the motion is procedurally improper, because Defendant has not engaged any of the established channels for resolving discovery disputes.  He did not attempt to confer with Mr. Brown to seek an informal resolution.  He did not raise this discovery dispute with the Magistrate Judge who is handling discovery.  And he has not moved to compel any testimony. His motion can be dismissed on this basis alone.  The Eleventh Circuit has made clear that the drastic sanction of dismissal is a last resort, not a first resort.

Second, the motion is unsupported by evidence.  It does not cite or quote the deposition transcript at all or identify any specific question Mr. Brown allegedly should have answered. Defendant has thus failed to provide *any* evidence in support of his motion, which by its nature turns on the specific facts.  And Defendant cannot supply this missing factual material for the first time in his reply.

1

Third, on its merits, the motion is baseless.  Courts grant dismissal based on the Fifth Amendment privilege only in the most extreme cases, where invoking the privilege completely eliminates a Defendant's ability to defend himself.  There is nothing like that here, because the limited number of questions Mr. Brown declined to answer on that basis had little if anything to do with this case.  Defendant's counsel repeatedly asked Mr. Brown to admit drug and alcohol use during his probation, and to describe unrelated arrests and probation issues that took place many months before and after the ICE detainer incident.  None of those questions has anything to do with whether Defendant had probable cause to arrest Mr. Brown in April 2018, whether Defendant was the moving force behind the violation, or whether Mr. Brown suffered harm as a result.  And much of the information Defendant sought can be readily obtained through police, jail, and court records.  Mr. Brown's privilege invocations will not even impact, much less eliminate, Defendant's ability to present his defense.

## BACKGROUND

Mr. Brown filed this lawsuit on December 3, 2018.  Plaintiff alleges Fourth Amendment and false imprisonment claims against Rick Ramsay, in his official capacity as the Sheriff of Monroe County, Florida.  Mr. Brown asserts municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Compl., Dkt. 1 ¶¶ 6, 14, 74–87, 94.

As the Complaint alleges, Mr. Brown was arrested and held by Defendant in April 2018 based on a detainer issued by ICE, so that ICE could take custody of Mr. Brown and deport him. *Id.* ¶¶ 3–4, 15–52.  But Mr. Brown is a natural-born U.S. citizen who cannot be deported—a fact that was repeatedly made clear to the Sheriff's Office before it carried out the arrest for ICE. Defendant's own records stated in multiple places that Mr. Brown was a U.S. citizen born in Philadelphia, and Mr. Brown informed multiple jail staff of this fact, both verbally and in writing, and even offered to produce his U.S. birth certificate.  *Id.* ¶¶ 22, 25–28, 30–33, 37–39,

2

43, 46–48.  These clear indications of Mr. Brown's citizenship dispelled any prior probable

cause that Mr. Brown was deportable, and yet Defendant's agents refused to investigate Mr.

Brown's citizenship in the multiple weeks leading up to the arrest, taunted him for his efforts to

avoid deportation, and held him for ICE.  *Id.* ¶¶ 29–30, 33, 35, 38, 43, 48–50.  Mr. Brown's

arrest and near-deportation caused him severe emotional distress and lost wages.  *Id.* ¶¶ 8, 44–45,

61–62.

Defendant did not move to dismiss under Federal Rule of Civil Procedure 12, and instead

answered the Complaint.  Dkt. 31.  Discovery therefore commenced in February 2019 and has

now been proceeding for six months.  The parties have exchanged numerous interrogatories,

requests for admission, and requests for production.  There have been a number of depositions

and two discovery hearings before Magistrate Judge Torres, with a third set for August 16, 2019.

Discovery is currently set to conclude in approximately three months.  Dkt. 77.

On July 16, 2019, Defendant's counsel deposed Mr. Brown at the Monroe County

Detention Center, where he was in custody based on a charge of violating his probation.  During

the day-long deposition, Mr. Brown answered the vast majority of Defendant's questions,

including all of his questions pertaining to the ICE detainer incident.  *See infra* Part III

(addressing deposition testimony).  In addition to these questions, Defendant's counsel also

asked a number of irrelevant and potentially incriminating questions about unrelated criminal

allegations, other incarcerations unconnected to the detainer incident, and drug and alcohol use

during probation.  On the advice of counsel, Mr. Brown invoked his Fifth Amendment privilege

against self-incrimination and refused to answer these latter questions.  *Id.*

After Mr. Brown's deposition, Defendant did not raise any discovery disputes related to

the deposition with Mr. Brown or the Magistrate Judge handling discovery.  Instead, on August

1, 2019, with no warning to Mr. Brown, Defendant filed this motion, seeking outright dismissal of this entire lawsuit under Federal Rule of Civil Procedure 41(b), with prejudice.  Dkt. 81 ("MTD").  The sole basis for the motion is Mr. Brown's invocation of his Fifth Amendment privilege at his deposition.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 41(b) allows a Court to dismiss a case with prejudice "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules] or a court order."  Rule 41(b) dismissal is very rare and is never applied where other options exist.  "Dismissal with prejudice is a sanction of last resort that is to be utilized only in extreme situations."  *Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995) (reversing dismissal).

## ARGUMENT

I. **Defendant's Motion Is Procedurally Improper Because He Failed to Pursue Any of the Normal Avenues for Resolving Discovery Disputes.**

Defendant's motion seeks "sanctions for litigation misconduct," as a result of Mr. Brown's alleged failure "to comply with discovery obligations."  MTD at 4.  And yet Defendant has not even *attempted* to resolve this discovery dispute through normal discovery channels.  He did not meet and confer with Plaintiff or make any effort to resolve this issue informally, and he did not present this dispute to the Magistrate Judge handling discovery—procedures Mr. Brown has diligently followed each of the many times Defendant has violated his discovery obligations. Instead, Defendant's very first course of action was to seek the most severe possible sanction. As the Eleventh Circuit has held time and again, the sanction of "dismissal is justified only in extreme circumstances and *as a last resort*."  *Wouters v. Martin County, Florida.*, 9 F.3d 924,

933 (11th Cir. 1993) (emphasis added) (reversing dismissal).  In light of this failure to engage in

the normal discovery-dispute process, the Court should deny Defendant's motion.

        Defendant should not be allowed to bypass the normal discovery process.  The Court has

imposed procedures for narrowing and resolving discovery disputes without the Court's

involvement.  The Court assigned discovery matters to Magistrate Judge Torres, Dkt. 27, whose

discovery rules require that "[i]f a bona fide discovery dispute arises, . . . the parties must first

confer in a good faith effort to resolve the dispute," including "at least one, if not more, personal

communications between counsel."  Order Setting Discovery Procedures, ¶ 2,

https://bit.ly/2MbgCp3.  Defendant skipped these steps.  Next, "to enforce a discovery

obligation," a party must schedule a discovery conference before the Magistrate Judge and file a

notice laying out "the substance of the discovery matter."  *Id.* ¶¶ 4, 5.  Defendant skipped these

steps as well.  These rules are designed to "streamline the process of resolving discovery disputes

by eliminating unnecessary motion practice."  *TIKD Servs. LLC v. Fla. Bar*, 2017 WL 6763946,

at *1 (S.D. Fla. Nov. 9, 2017).  Had he followed them, Defendant could have identified for Mr.

Brown precisely which questions he believed needed to be answered; the parties could have

looked for alternative sources of any critical information; and if all else failed, Defendant could

have asked the Magistrate for an order compelling any testimony he believed was improperly

withheld.  The Magistrate could then have assessed whether that testimony was in fact necessary

or even relevant to the case.  And yet Defendant did none of this.

        Defendant's disregard for the discovery rules is particularly inappropriate given how

diligently Mr. Brown has followed those rules over the last six months.  Defendant has

repeatedly violated the Federal Rules of Civil Procedure, the Local Rules, and the Court's

directives, ignoring requirements imposed by Rule 26 (initial disclosures), and missing deadlines

imposed by Rules 33 (interrogatories) and 34 (requests for production), often by multiple weeks or months. Each of these failures has prejudiced Mr. Brown's ability to pursue his case. But each time, Mr. Brown has followed the Court's discovery process, first raising each failure directly with Defendant, then attempting to meet and confer, then scheduling a discovery hearing with Judge Torres. *See, e.g.*, Ex. B[1] (Dkt. 51), Ex. C (Dkt. 59), Ex. D (Dkt. 68), Ex. E (Dkt. 83) (Plaintiff's notices of compliance regarding discovery hearings); Exs. F, G, & H (examples of Plaintiff's meet-and-confer letters). These efforts have resulted in multiple orders from Judge Torres requiring Defendant to comply with his discovery obligations, *e.g.*, Ex. I (Dkt. 74)—some of which, remarkably, Defendant has continued to violate.[2] *See* Ex. J (latest meet-and-confer letter); Ex. E (Dkt. 83). Mr. Brown's patient adherence to the normal discovery procedures underscores that Defendant should not be permitted to jettison those procedures and circumvent the streamlining function they serve.

## II.    Defendant Has Failed to Cite Any Evidence or Identify Any Specific Questions He Thinks Should Have Been Answered.

Even if the Court does entertain this motion, it should reject it as inadequately briefed and supported. The motion turns entirely on factual assertions about the nature of the questions Mr. Brown refused to answer at his deposition—namely, that some of those questions were critical to Defendant's case. And yet the motion does not quote or cite a *single* question from the deposition. It does not cite the deposition transcript at all or attach *any* portions of it as evidence.

---

[1] All References to "Ex. __" refer to the exhibits attached to the Declaration of Jonathan N. Soleimani, filed herewith.

[2] *See, e.g.*, Ex. D (Dkt. 68) at 2–3 (noting Defendant's defiance of the Court's order); Ex. I (Dkt. 74) (Court again ordering the same things); Ex. E (Dkt. 83) (noting that Defendant still failed to comply with the Court's now-multiple orders); *see also, e.g.*, Ex. C at 3 (Dkt. 59) (Defendant missing deadline under Rule 33 by 63 days, with no explanation and despite Plaintiff's repeated inquiries); *id.* at 2–3 (Defendant missing deadline under Rule 34 by three weeks, with no explanation and despite Plaintiff's repeated inquiries).

The motion simply makes vague assertions that Plaintiff refused to answer "questions regarding the subject matter of this lawsuit and his criminal history," MTD at 8, and questions about "the circumstances of the incident giving rise to the lawsuit and his incarceration history," MTD at 7. The motion thus lacks any factual support.

In the related context of fact-based motions to dismiss under Rule 12(b)(1), it has long been clear that "defendants ha[ve] the burden to produce evidence to support" their dismissal arguments. *Velazquez v. Broesche*, 2006 WL 2329401, at *3 (W.D. Tex., June 13, 2006); *Castillo v. Cartier*, 2018 WL 6603864, at *2, 3 (E.D. Cal. Dec. 17, 2018) (explaining that "a proper factual challenge" "requires evidence"). Here, Defendant has produced *no* evidence to support his request for the extraordinary sanction of dismissal. Instead, Defendant is simply asking the Court to take his word that "critical" questions were asked and not answered, MTD at 8, even though he has not identified any such question. Without any cites or quotes from the deposition, neither the Court nor Mr. Brown can assess the actual substance of Defendant's complaints, including how any particular question was worded, how Mr. Brown responded, the surrounding context, how similar questions were handled, and the like. Courts frequently deny motions "for failure to properly brief the issues the court must decide." *Hemisphere Holdings I, LLC v. Wal-Mart Stores East, LP*, 2015 WL 13229608, at *5 (S.D. Fla. Nov. 25, 2015) (internal quotation marks omitted) (collecting cases); *Medi-Weightloss Franchising USA, LLC v. Medi-Weightloss Clinic of Boca Raton*, LLC, 2012 WL 12904394, at *4 (M.D. Fla. May 10, 2012) (rejecting motion that "fails to raise specific objections and merely makes conclusory statements").

It is possible that Defendant is saving the necessary factual material for his reply brief. But that would unfairly deprive Mr. Brown of any opportunity to respond. It is black-letter law

that a party cannot raise new arguments or factual material for the first time in a reply brief. *See, e.g.*, *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotation marks and alteration omitted); *United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) ("[T]his Court . . . repeatedly has refused to consider issues raised for the first time in an appellant's reply brief."); *McNeil v. Johnson*, 2019 WL 1650283, at *12 (D.N.J. Apr. 17, 2019) ("It is axiomatic that a party may not raise new issues and present *new factual materials* in a reply brief that it should have raised in its initial brief.") (internal quotation marks omitted); *Burroughs v. Cty. of Nassau*, 2014 WL 2587580, at *13 (E.D.N.Y. June 9, 2014) ("[I]t is improper to sandbag one's opponent by raising new matter in reply; and providing specifics in a reply in support of a general argument . . . counts as new matter in reply.") (internal quotation marks and alterations omitted).  Thus, because Defendant could only attempt to prove his argument by raising factual material for the first time in reply, the proper course is to deny the motion.

### III.    The Motion Is Meritless in Any Event.

Finally, even if the Court reaches the merits, the motion is entirely baseless.  Involuntary dismissal is "a sanction of last resort, applicably only in extreme circumstances" when "lesser sanctions would not suffice."  *Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983) (internal quotation marks omitted).  Defendant provides no basis to dismiss this entire case, which is now six months into discovery.

Defendant's sole argument is that because Mr. Brown invoked his Fifth Amendment privilege, the case must be dismissed.  But the Eleventh Circuit has held the exact opposite—that automatic dismissal "solely as a result of the assertion of the Fifth Amendment" is "impermissible under the Constitution."  *Eagle Hosp. Physicians v. SRG Consulting*, *Inc.*, 561

F.3d 1298, 1304 (11th Cir. 2009).[3]  Indeed, it is well-established that plaintiffs retain their right against self-incrimination during civil litigation, and courts regularly refuse to sanction the exercise of that right.  *See Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 211 (1958) (refusing to dismiss and explaining "[i]t is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for nonproduction"); *Campbell v. Gerrans*, 592 F.2d 1054, 1058 (9th Cir. 1979) (reversing dismissal); *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087–88 (5th Cir. 1979) (reversing dismissal where narrower remedy sufficed); *Dunbar v. United States*, 502 F.2d 506, 509–10 (5th Cir. 1974) (reversing dismissal).[4]

Courts have occasionally dismissed cases based on the privilege in the most extreme circumstances: where (1) the privileged information is "central to defendants' defense," (2) "there was no effective substitute" for the plaintiff's answers, *and* (3) "there was no adequate alternative remedy to dismissal."  *Serafino v. Hasbro, Inc.*, 82 F.3d 515, 518 (1st Cir. 1996). This extraordinary sanction is only available where the privilege would "obliterate another party's right to a fair proceeding."  *Id.* at 518.  Defendant cannot establish these extreme conditions.

---

[3] In a confusing parenthetical, Defendant appears to suggest that *Eagle Hospital* upheld a default judgment against a party for invoking the Fifth Amendment privilege.  MTD at 6.  That is wrong:  *Eagle Hospital* went out of its way to make clear that the district court "did not enter a dismissal *because* of [the plaintiff's] use of the Fifth Amendment," but rather because the plaintiff "had been improperly intercepting confidential emails of the opposing party." *Id.* at 1304 (emphasis in original).  The plaintiff's refusal to testify about this grave breach simply corroborated this affirmative "evidence of misconduct." *Id.* at 1304.

[4] The Eleventh Circuit has adopted as binding precedent decisions of the Fifth Circuit handed down before September 30, 1981.  *Bonner v. City of Prichard*, *Alabama*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

First, Defendant has not been deprived of any information that is even *relevant*, much less "central" to his defense.  As explained above, Mr. Brown claims that, in late April 2018, Defendant arrested him without probable cause.  At the deposition, Mr. Brown forthrightly answered all questions about this incident: questions about the detainer, his citizenship, his efforts to inform jail staff about his citizenship, the pain he has experienced as a result.  *See, e.g.*, Ex. A (Brown Dep. Tr.) ("Tr.") 19:3–4; *id.* at 72:4–76:10; *id.* at 94:13–113:3; *id.* at 114:17– 118:12; *id.* at 136:1–143:3; *id.* at 148:5–154:23.  The questions where he invoked the privilege were about completely separate matters, and were phrased to invite incriminating answers.  *See, e.g.*, Tr. 57:14–16 ("Q: Why are you in jail right now?"—i.e., 15 months after the detainer incident); *id.* at 68:25–69:4 ("Q: When you use the illegal drug, what is the illegal drug that you use?"); *id.* at 67:9–13 ("Q: Do you consider yourself a substance abuser?"); *id.* at 68:5–7 (same); *id.* at 68:13–16 ("Q: Do you drink alcohol?"); *id.* at 67:14–17 (same).

Plaintiff had no obligation to respond to these repetitive and harassing questions.  The privilege clearly applied, because the questions implicated both criminal activity and Mr. Brown's pending sentencing.  *See* Tr. 55:3–7 (explaining this to Defendant's counsel).  And the answers, whatever they may be, have little if anything to do with whether Defendant is liable for Mr. Brown's arrest in April 2018—certainly Defendant has not explained why they are so crucial, *see supra* Part II.  For instance, none of the questions go to whether Defendant held Mr. Brown for ICE, whether Defendant knew of or investigated Mr. Brown's citizenship, whether he communicated about Mr. Brown with ICE, whether he trained his officers on probable cause in these circumstances, whether his policies led to Mr. Brown's arrest, or whether he has a pattern of similar violations.  Sanctions are inappropriate where the privilege was invoked in response to

10

such "peripheral" questions. *Wehling*, 608 F.2d at 1088 n.7; *see Dunbar*, 502 F.2d at 510 & n.2 (no sanctions where questions were "not . . . germane to the conduct of the instant lawsuit").[5]

  <u>Second</u>, Defendant asserts that "[t]here is no alternative source of information" for any of his deposition questions. MTD at 8. That is obviously incorrect. Defendant's counsel repeatedly asked Mr. Brown for information about the location of prior arrests, the nature of certain charges, and other criminal matters. *See, e.g.*, Tr. 78:1–2 ("Where were you arrested…?"); *id.* at 78:12 (same); *id.* at 81:2 (same); *id.* at 76:11–12 ("Why were you arrested [in April 2018]?"); *id.* at 77:20–21 (same); *id.* at 78:15 ("Were you arrested at the probation office?"); *id.* at 82:16–17 ("Were those charges, whatever they were, resolved? And if so, how?"). Even if any of this information was relevant—which it is not—most of it is contained in publicly available records, like police reports and court records. And information regarding Mr. Brown's "incarceration history" (MTD at 7) is presumably in Defendant's own records, because Defendant runs the Monroe County jails. Moreover, when Defendant's counsel phrased similar questions in a more objective and less incriminating way, Mr. Brown answered. *See, e.g.*, Tr. 57:17–58:15 (answering "What are the charges for which you are currently detained?"); *id.* at 67:6–8, 68:3–4 (answering questions about substance use treatment). Had Defendant raised these issues through the normal discovery process, these alternative sources of information would have been identified (although they are obvious).

---

[5] The other cases Defendant cites are inapposite. In *Heath v. Benitez*, there was no self-incrimination question, and the Court dismissed under Rule 41(b) only after the plaintiff had brazenly violated multiple court orders without explanation. 2011 WL 2618927, at *3 (M.D. Fla. July 1, 2011) (quotation marks omitted). In *Pervis v. State Farm Fire and Casualty Co.*, the plaintiff sought to enforce a contract in which he had agreed to "submit to an examination under oath as a condition precedent to suit." 901 F.2d 944, 947 (11th Cir. 1990). The Court simply held that the plaintiff could not enforce the contract without abiding by its terms.

Third, contrary to Defendant's assertion, he clearly has an "alternative remedy" at this stage, MTD at 8:  Follow the discovery procedure provided by Judge Torres's discovery order, which Mr. Brown has been following for months.  This process is designed to clarify the substance of discovery disputes and identify potential compromises.  Defendant can present Mr. Brown with the specific questions he believes are critical to his defense and ask Mr. Brown to reconsider his privilege invocations.  The parties can consider different wording that might allow Mr. Brown to answer.  Defendant can also work with Mr. Brown to identify alternative sources for any piece of information.  And if good-faith negotiations do not produce a resolution, Defendant can ask the Magistrate to referee the dispute, or even to compel testimony.  Rule 41(b) dismissal is a "last resort."  *Morawetz*, 62 F.3d at 1366; *Wouters*, 9 F.3d at 933–34.  Defendant cannot obtain this most "extreme" remedy before he has even tried to pursue alternatives.  *Id*.

## CONCLUSION

Defendant's motion is procedurally improper, factually unsupported, and legally baseless. It should be denied.


Dated: August 15, 2019                              Respectfully submitted,

                                                            */s/ Daniel Tilley*
                                                            DANIEL TILLEY, SBN 102882
                                                            ACLU FOUNDATION OF FLORIDA, INC.
                                                            dtilley@aclufl.org
                                                            4343 W. Flagler St., Suite 400
                                                            Miami, FL 33134
                                                            Telephone: (786) 363-2700

                                                            AMIEN KACOU, SBN 44302
                                                            akacou@aclufl.org
                                                            4023 N. Armenia Avenue, Suite 450
                                                            Tampa, FL 33607
                                                            Telephone: (813) 288-8390

SOUTHERN POVERTY LAW CENTER
VIVIANA BONILLA LÓPEZ, SBN 1003205
viviana.bonillalopez@splcenter.org
4770 Biscayne Blvd., Ste. 760
Miami, Florida 33137
Telephone: (786) 347-2056

SARAH M. RICH (admitted *pro hac vice*)
sarah.rich@splcenter.org
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: (404) 221-5830

AMERICAN CIVIL LIBERTIES UNION
SPENCER E. AMDUR (admitted *pro hac vice*)
samdur@aclu.org
CODY H. WOFSY (admitted *pro hac vice*)
cwofsy@aclu.org
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-1198

OMAR C. JADWAT (admitted *pro hac vice*)
ojadwat@aclu.org
LEE GELERNT (admitted *pro hac vice*)
lgelernt@aclu.org
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2620

GIBSON, DUNN & CRUTCHER LLP
HEATHER L. RICHARDSON (adm. *pro hac vice*)
hrichardson@gibsondunn.com
JONATHAN N. SOLEIMANI (adm. *pro hac vice*)
jsoleimani@gibsondunn.com
JENNIFER K. BRACHT (adm. *pro hac vice*)
jbracht@gibsondunn.com
JASON S. KIM (adm. *pro hac vice*)
jkim@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000

PATRICK HAYDEN (*adm. pro hac vice*)
phayden@gibsondunn.com
200 Park Avenue

13

New York, NY 10166
Telephone:  (212) 351-4000

*Attorneys for Plaintiff Peter Sean Brown*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**KEY WEST DIVISION**
**Case No. 4:18-cv-10279-WILLIAMS/TORRES**

PETER SEAN BROWN

        Plaintiff,

   v.

RICHARD A. RAMSAY, in his official
capacity as Sheriff of Monroe County

        Defendant.

_____/

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that a true and correct copy of the foregoing Opposition to Motion

to Dismiss was served via the U.S. District Court for the Southern District of Florida's electronic

filing system on August 15, 2019, on counsel for Defendant Richard A. Ramsay, Bruce Jolly and

Harrison A. Joss.  Service via the Court's electronic filing system is permitted under Federal

Rule of Civil Procedure 5(b)(2)(E) and S.D. Fla. Local Rule 5.1(e).


Dated: August 15, 2019

                     Respectfully submitted,

                     */s/ Daniel Tilley*
                     DANIEL TILLEY, SBN 102882
                     ACLU FOUNDATION OF FLORIDA, INC.
                     dtilley@aclufl.org
                     4343 W. Flagler St., Suite 400
                     Miami, FL 33134
                     Telephone: (786) 363-2700

                     AMIEN KACOU, SBN 44302
                     akacou@aclufl.org
                     4023 N. Armenia Avenue, Suite 450
                     Tampa, FL 33607

15

Telephone: (813) 288-8390

SOUTHERN POVERTY LAW CENTER
VIVIANA BONILLA LÓPEZ, SBN 1003205
viviana.bonillalopez@splcenter.org
4770 Biscayne Blvd., Ste. 760
Miami, Florida 33137
Telephone: (786) 347-2056

SARAH M. RICH (admitted *pro hac vice*)
sarah.rich@splcenter.org
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone: (404) 221-5830

AMERICAN CIVIL LIBERTIES UNION
SPENCER E. AMDUR (admitted *pro hac vice*)
samdur@aclu.org
CODY H. WOFSY (admitted *pro hac vice*)
cwofsy@aclu.org
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-1198

OMAR C. JADWAT (admitted *pro hac vice*)
ojadwat@aclu.org
LEE GELERNT (admitted *pro hac vice*)
lgelernt@aclu.org
125 Broad Street
New York, NY 10004
Telephone: (212) 549-2620

GIBSON, DUNN & CRUTCHER LLP
HEATHER L. RICHARDSON (adm. *pro hac vice*)
hrichardson@gibsondunn.com
JONATHAN N. SOLEIMANI (adm. *pro hac vice*)
jsoleimani@gibsondunn.com
JENNIFER K. BRACHT (adm. *pro hac vice*)
jbracht@gibsondunn.com
JASON S. KIM (adm. *pro hac vice*)
jkim@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000

PATRICK HAYDEN (*adm. pro hac vice*)

16

phayden@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:  (212) 351-4000

*Attorneys for Plaintiff Peter Sean Brown*

17