```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                         KEY WEST DIVISION
                     CASE NO. 18-10279-CIVIL-WILLIAMS
3

4    PETER SEAN BROWN,                    Miami, Florida

5                Plaintiff,              June 13, 2019

6          vs.                           3:44 p.m.

7    SHERIFF RICHARD A. RAMSAY,
     in his official capacity,
8
                 Defendant.         Pages 1 to 76
9    _____

10

11            CORRECTED TRANSCRIPT OF DISCOVERY HEARING
              BEFORE THE HONORABLE EDWIN G. TORRES
12               UNITED STATES MAGISTRATE JUDGE
            (TRANSCRIBED FROM THE DIGITAL AUDIO RECORDING)
13

14
     APPEARANCES:
15

16   FOR THE PLAINTIFF:        JONATHAN N. SOLEIMANI, ESQ.
                               GIBSON, DUNN & CRUTCHER, LLP
17                             333 South Grand Avenue
                               Los Angeles, California 90071
18
                               DANIEL BOAZ TILLEY, ESQ.
19                             ACLU FOUNDATION OF FLORIDA, INC.
                               4343 West Flagler Street
20                             Suite 400
                               Miami, Florida 33134
21

22   FOR THE DEFENDANT:        BRUCE WALLACE JOLLY, ESQ.
                               PURDY, JOLLY, GIUFFREDA,
23                                BARRANCO & GISA, P.A.
                               2455 East Sunrise Boulevard
24                             Suite 1216
                               Fort Lauderdale, Florida 33304
25
```

```
 1    TRANSCRIBED BY:          LISA EDWARDS, RDR, CRR
                               (305) 439-7168
 2                             Reporterlisaedwards@gmail.com

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   (TRANSCRIBER'S NOTE:  The digital audio recording of the

2   Discovery Hearing began subsequent to the commencement of the

3   proceedings as follows:)

4          THE COURTROOM DEPUTY.  ...Case No. 18-10279-

5   Civil-Judge Williams.

6          Counsel, please state your appearances for the record.

7          MR. SOLEIMANI:  Thank you, your Honor.  My name is

8   Jonathan Soleimani, associate at Gibson, Dunn & Crutcher.

9          And I am joined by my co-counsel --

10          MR. TILLEY:  Daniel Tilley.

11          MR. SOLEIMANI:  -- of the ACLU of Florida on behalf of

12   Plaintiff, Peter Sean Brown.

13          MR. JOLLY:  Your Honor, my name is Bruce Jolly.  The

14   law firm is Purdy, Jolly, Giuffreda, Barranco & Gisa of

15   Fort Lauderdale.  And I represent Sheriff Ramsay.

16          THE COURT:  Thank you.

17          This is a discovery hearing, I believe, requested by

18   the Plaintiff.

19          Is that right?

20          MR. SOLEIMANI:  That's right, your Honor.

21          THE COURT:  What's the most important issue you want to

22   tackle first?

23          MR. SOLEIMANI:  The central issue, your Honor, really

24   relates to the four different requests that we've made to the

25   Defendant and the objections that he has made to them.  That's

```
 1     really the central issue of the hearing.

 2          Briefly, your Honor, by way of background, Mr. Brown

 3     filed this suit to challenge Defendant's policy or practice of

 4     blindly effectuating all ICE detainer requests even where, as

 5     in this case, there's clear evidence undermining their basis.

 6          Defendant detained Mr. Brown, who is a US citizen,

 7     pursuant to an ICE detainer even though Defendant's own records

 8     listed Mr. Brown as a US citizen, born in Philadelphia, and

 9     despite Mr. Brown's filings of numerous grievances indicating

10     his citizenship.

11          Now, your Honor, sadly, cases like Mr. Brown's are all

12     too common.  And the central issue in this hearing is whether

13     Mr. Brown is entitled to information regarding those similar

14     instances involving US citizens in order to establish his

15     pattern or practice theory of liability under Monell.

16          And so all four of the requests here, two rogs, two

17     requests for production, they all relate to the same central

18     issue, which is again different types of information related to

19     the detainers that the Defendant has honored pursuant to ICE's

20     request.

21          Your Honor, as an initial matter, I would note that

22     Plaintiff maintains that under Rule 26.1(e), Defendant has

23     waived his ability to assert these objections -- although I'll

24     talk about the merits in a moment -- by serving his executed

25     rog responses 63 days after the 30-day deadline prescribed by
```

1    the federal rules.  That was on May 30th that they were finally

2    served.  But that's also more than six weeks after this hearing

3    was actually initially scheduled on April 17th.

4          THE COURT:  Did you grant him more time when that

5    happened?

6          MR. SOLEIMANI:  Actually, no.  There were no requests

7    at all from the Defendant for any kind of extension.

8          What happened was -- and this is all in the record,

9    your Honor -- and I have a copy of the binder of materials, if

10    you'd like as well.

11          THE COURT:  Great.

12          MR. SOLEIMANI:  Would you like me to bring it up?

13          THE COURT:  Sure.  Sure.

14          MR. SOLEIMANI:  This is identical to what was provided

15    to the Court.

16          And so, your Honor, the short answer is no.  There was

17    no request of any kind.  Specifically, those rogs were served

18    on February 26th.  Under the federal rules, they were due 30

19    days later, on March 28th.

20          The day after they were due, we sent a letter, which is

21    in the record, to Mr. Jolly, informing him that they were due,

22    seeking a reason why they had not been served.

23          There was no response of any kind, telephonically or

24    via email, to that request.

25          We sent a followup request on April 5th, similarly --

1    and again, this was citing the relevant local rules, Rule 26.

2           We received no response, written or by the phone.

3           We attempted to meet and confer.  Ultimately, Defendant

4    served unexecuted -- self-described unexecuted draft responses

5    on April 11th.

6           After that, when we couldn't resolve the issue with a

7    further meet and confer, we set the hearing on April 17th.  And

8    even after that date --

9           THE COURT:  And what happened at that hearing?

10          MR. SOLEIMANI:  That hearing did not take place,

11    ultimately.  It was a moved a few times.  The Court *sua sponte*

12    changed the date a couple times.  And then Mr. Jolly had a

13    conflict and had to move it.  And then unfortunately my

14    grandmother passed away, so I had to move it another two weeks.

15          So this hearing was originally scheduled to be May

16    10th, but for various reasons has been moved to today,

17    unfortunately.

18          THE COURT:  I see.

19          MR. SOLEIMANI:  The ultimate -- the sort of end of --

20          THE COURT:  And in the interim period, did he produce

21    the interrogatories?

22          MR. SOLEIMANI:  In the interim period, they were

23    finally served the previous -- the morning of -- that this

24    hearing was previously scheduled.  So on May 30th they were

25    served.

```
 1              So when I mentioned -- when I represented to the Court

 2    that it was 63 days late, that 63 days was on May 30th.  It was

 3    actually due on March 28th.

 4              THE COURT:  Got you.

 5              And with respect to your substantive argument about it?

 6              MR. SOLEIMANI:  The substantive argument on the merits

 7    for that and to the requests for production, which, similarly,

 8    your Honor, were 21 days late -- but on the merits, I want to

 9    focus on sort of two buckets of objections.

10              And if it would facilitate the Court, I have put all of

11    them in one document, where you can see it all in one place, if

12    that's easier.

13              THE COURT:  Okay.

14              MR. SOLEIMANI:  It's just two pages.  Otherwise, we'll

15    be flipping between -- it's totally up to you.

16              THE COURT:  What tab is that in?

17              MR. SOLEIMANI:  So the tabs would be -- for the RFPs,

18    it would be Tab E.

19              THE COURT:  E?

20              MR. SOLEIMANI:  E.  You can see both the request and

21    the response.

22              THE COURT:  Okay.

23              MR. SOLEIMANI:  For the rogs, I think you would have to

24    flip between two different ones, unfortunately.  The responses

25    are on -- and that's why I was hoping to provide that page.
```

1    The responses, the executed responses, are on A-1.

2         THE COURT:  All right.

3         MR. SOLEIMANI:  But to look at the actual

4    interrogatories, you'll have to flip back to B, which are the

5    interrogatories.

6         THE COURT:  Okay.  Do you want to start with the

7    production [inaudible]?

8         MR. SOLEIMANI:  I was hoping, your Honor, to actually

9    start, if it's okay with your Honor, with sort of the bucket of

10   objections to which there are relevance and proportionality

11   objections.  So the two categories are that there are relevancy

12   and proportionality objections to RFP No. 8 and to Rog No. 9.

13        THE COURT:  Okay.

14        MR. SOLEIMANI:  And then separately, there are

15   objections to two different requests, Rog 10 and RFP 9, under

16   federal regulations.  Substantively, I think it helps to walk

17   through them based on the substance of the objection.

18        THE COURT:  So start with No. 8, then.

19        MR. SOLEIMANI:  Sure.

20        THE COURT:  When you say "complaints related to

21   detainers," what does that mean?

22        MR. SOLEIMANI:  It means -- what we're talking about is

23   there are grievances that individuals have filed when they're

24   in the County's detention.

25        So, for example, in our case, there were -- there was a

1    three-week period that our client, Mr. Brown, was detained.

2    During that time, he was made aware of the fact that there was

3    an ICE detainer that was in his name.

4         Of course he knew that he was a US citizen; and he

5    filed repeated grievances with the sheriff's county, many of

6    which have been produced to us in this case, in which he

7    stated:  I am a United States citizen.  I don't understand.

8    Why is there an ICE detainer in my name?  I'd like to clarify

9    this.

10        So our hope is to get similar --

11        THE COURT:  How long was he in detention after -- after

12   that point?

13        MR. SOLEIMANI:  Two days.  He was released at the end

14   of the probation period -- excuse me.  At the end of his period

15   that he was detained, it was the 26th, I believe.  And then

16   subsequently, the 27th, finally, once ICE received information,

17   you know, his birth certificate, they essentially said that he

18   could leave.  They realized their error.

19        THE COURT:  So the injury related to that two days that

20   he was held?

21        MR. SOLEIMANI:  Two days.  Two days.

22        THE COURT:  Got you.  Okay.

23        MR. SOLEIMANI:  On the merits, your Honor, of those two

24   objections, again, as you stated, RFP No. 8 seeks complaints

25   related to detainers, including logs thereof and responses

1   thereto.

2         Similarly, Rog No. 9 seeks summary data regarding the

3   number of ICE requests for US citizens that Defendant receives

4   and how many it declines to enforce.

5         Defendant has objected to both of those on relevance

6   grounds and proportionality grounds.

7         We'd argue, your Honor, that they are highly relevant.

8         THE COURT:  Let's focus on No. 8.

9         MR. SOLEIMANI:  Sure.

10         THE COURT:  What is the point of -- how -- do you know

11   if they in fact received complaints related to these issues?

12         MR. SOLEIMANI:  We don't know.  I mean, our

13   understanding is that it is quite common for these types of

14   mistakes to occur; in other words, for detainers to wrongfully

15   be issued for a US citizen.

16         THE COURT:  So when you say "complaints," do you mean

17   complaints for the person who was wrongfully detained?  Is that

18   what you mean?

19         MR. SOLEIMANI:  We mean grievances, essentially,

20   grievances that have been submitted by those individuals who

21   have been detained, grievances submitted to the Monroe County

22   Sheriff's Office.  In other words --

23         THE COURT:  And when did you get a response?

24         MR. SOLEIMANI:  In response, we have received nothing.

25   We've received just an objection here, the objection being that

1    those documents are not relevant to our case.

2         THE COURT:  But the last paragraph says that they were

3    making available certain documents for review.

4         MR. SOLEIMANI:  Right.

5         THE COURT:  What was that?

6         MR. SOLEIMANI:  The only documents they've made

7    available for review are the documents, frankly, that we

8    already had, documents related to our individual Plaintiff.  So

9    we -- the grievances that our Plaintiff leveled with the Monroe

10   County Sheriff's Office they have produced.

11        We have been asking for not only the individual

12   Plaintiff's, but any similar grievances that have been

13   produced.  And the reason why is because in order to prove

14   the --

15        THE COURT:  Why do you think that they would have

16   similar grievances?

17        MR. SOLEIMANI:  Our -- according to the allegations in

18   the complaint, we have leveled a pattern or practice -- excuse

19   me -- a policy --

20        THE COURT:  How many citizens are they detaining

21   unlawfully, though?  I mean, how often does that happen?

22        MR. SOLEIMANI:  Well, that's one of the things that we

23   would like to find out.  In terms of the allegations of the

24   complaint, we have pleaded at least one similar instance at

25   Paragraph 40 of the complaint in which our client has -- is

1    aware of or has heard about related to an individual US citizen

2    who was similarly detained by the Monroe County Sheriff's

3    Office.

4            I would note, though, your Honor, that because --

5            THE COURT:  If it's a noncitizen, if it's not somebody

6    who clearly should not be detained --

7            MR. SOLEIMANI:  Right.

8            THE COURT:  -- let's put that example aside.  If it's

9    somebody who is either a resident alien or a without-status

10   person, they may never, ever file a complaint as it relates to

11   the City of Key West or -- excuse me -- the Monroe County

12   Sheriff's Office.

13           MR. SOLEIMANI:  True.  They may not.  They indeed may

14   not.

15           THE COURT:  Right.

16           So the only time you're likely to have a complaint, it

17   would seem to me, is somebody in your client's situation.

18           MR. SOLEIMANI:  I think that would be the most likely

19   situation --

20           THE COURT:  Right.

21           MR. SOLEIMANI:  -- a complaint of this kind, certainly.

22           THE COURT:  Right.

23           MR. SOLEIMANI:  There could be other individuals, you

24   know, for whom I can't speak but who might think that there's

25   some other mistake related to a detainer.  I don't know.

1          THE COURT:  Right.

2          Because a two-day detainer involving a without-status

3     person, are you claiming -- is that -- assuming that has

4     happened, does that at all relate to a claim or defense that

5     you have?

6          MR. SOLEIMANI:  It would -- having those documents

7     would help in terms of understanding percentages, your Honor,

8     in terms of understanding how often this type of thing happens.

9          THE COURT:  But then how is it relevant to your case?

10          MR. SOLEIMANI:  You're talking about -- just to

11     clarify, you're talking about individuals who are here

12     unlawfully for whom there is, you know, what would appear to be

13     a proper I-247 detainer form?

14          THE COURT:  Right.

15          MR. SOLEIMANI:  Well, among the different theories that

16     are sort of viable in this case, I think folks in related cases

17     have argued that any such detainers are not supported

18     sufficiently by probable cause.

19          It's not a theory that we have been focusing on in this

20     case.

21          Our focus in this case in terms of what is directly

22     relevant to our claims is, even if you were to assume, in other

23     words, that there is probable cause underlying the detainer,

24     there is in our case reason for the Sheriff to question the

25     determination when there is available evidence that would

1   undermine it.  In our case, evidence of US citizenship in the

2   Sheriff's records and so forth.

3          So in our view, I think if we were to gain all of the

4   documents that we're talking about, all grievances related to

5   detainers, I think the reason that it would help us

6   understand -- even -- including detainers, in other words,

7   grievances related to detainers for individuals who are not US

8   citizens, for example, I think part of what would help for the

9   pattern or practice claim is understanding how prevalent, how

10  often, these types of things happen, these types of grievances

11  are raised by US citizens or others.

12         If, for example, as your Honor suggested, the only

13  likely grievance that would come up is by a US citizen, in our

14  view, that would make it all the more relevant.  It should be

15  even more obvious to the County that -- it should be even more

16  obvious to the County there is reason to question what is sort

17  of before them, question the probable cause determination.

18         THE COURT:  All right.  I hear you.

19         I'll turn to the County.  Explain your position and

20  your objection.

21         When I first read it -- are you basically saying in

22  your -- this isn't a case where you're denying --

23         MR. JOLLY:  It's a *Monell* case.

24         THE COURT:  Right.

25         MR. JOLLY:  But it is not a practice or custom case.

1   It is a "This is what we do.  This is what we've done."

2          THE COURT:  Right.  So you would stipulate, then, to

3   the existence of the policy?

4          MR. JOLLY:  Not stipulate.  That was in our other

5   discovery responses, which have not been addressed by the

6   Plaintiff.

7          We admitted all of this in our requests for admission.

8          THE COURT:  Right.

9          MR. JOLLY:  We -- they may have done all kinds of crazy

10  things with others.  Who cares?  Because if what was done in

11  this instance was wrong, it doesn't matter that we have never

12  done it before or have done it before.

13         THE COURT:  Right.

14         MR. JOLLY:  [Inaudible.]

15         THE COURT:  Right.  You're stipulating to that aspect

16  of the -- of the claim.

17         MR. JOLLY:  I -- you know, this is not a

18  policy/practice case.  Or it's policy, but not a practice or

19  custom, under *Monell*.

20         THE COURT:  So putting that aside, then, in terms of

21  the stipulation, wouldn't the Plaintiff, though, still be

22  entitled to a clear answer on whether or not any complaints or

23  grievances involving a situation like this has occurred?

24         MR. JOLLY:  No.

25         THE COURT:  Why?

1    MR. JOLLY:  Number one, and what we [inaudible] into is

2 the regulation upon -- the federal regulation upon which we

3 relied when we asserted the objection.

4    THE COURT:  That's your defense.  Right?

5    MR. JOLLY:  No.  That's not.

6    Our defense is:  You were issued a warrant.  You gave

7 us the detainer.  And the documents are statutorily defined.

8    THE COURT:  Right.

9    MR. JOLLY:  And -- excuse me.  That statute was in

10 place when this individual was arrested.  Frankly, it was in

11 place when he was arrested on this violation of probation.

12    I-203, I-200, I-205 and I-247 are the four documents

13 that the Federal Government, ICE, provides to the Sheriff that

14 said, "Hold this guy."

15    THE COURT:  Right.  So that's your defense as to why

16 you held him.  Right?

17    MR. JOLLY:  I would -- yeah.  [Inaudible] defense for

18 the last -- and it wasn't two days.  It's less than 24 hours.

19 But for the first 20 days --

20    THE COURT:  How long was he held beyond the -- under

21 the detainer?

22    MR. JOLLY:  About 13 hours, is what we calculate.

23    THE COURT:  I see.

24    And -- but with respect to anybody else who has filed a

25 grievance or complaint, wouldn't that be relevant to the

1    Plaintiff's complaint?

2         MR. JOLLY:  Oh, in this broadest context, sure.

3         THE COURT:  Right.

4         MR. JOLLY:  But with the application of a federal

5    regulation, which basically says:  Thou shalt not provide any

6    documents to any -- no [inaudible], including any state or

7    local government, that houses, [inaudible] provides services to

8    or otherwise holds any detainee, shall disclose or otherwise

9    permit to be made public the name of, other than information

10   relating to the detainee, we can't give that.  That's why we

11   didn't give it to begin with.

12        The relevant --

13        THE COURT:  Haven't you looked at whether or not

14   there's any actual other complaints or grievances for somebody

15   similarly situated to this Plaintiff?

16        MR. JOLLY:  The answer is no.  I have not done that.  I

17   cannot speak to -- although the Sheriff recently told me that

18   they have roughly 15,000 theoretical detainees over the

19   applicable period, that they would have to go through to see

20   which ones --

21        THE COURT:  What period would that be?

22        MR. JOLLY:  It would be -- the period of the request

23   for -- for production, I think, was four years.

24        THE COURT:  Oh, I see.  Four years from --

25        MR. JOLLY:  Not from; but just encompassing both the

1    before and after.

2           THE COURT:  Got you.

3           MR. JOLLY:  And, you know, when I listened to him

4    today, Jonathan talking about *Monell*, I mean, I concede that it

5    is a *Monell* claim.  But ultimately, what we've done before or

6    what we have done since is irrelevant to the underlying

7    analysis for whether there is liability.

8           I'll tell you what we thought.  We thought this was

9    nothing other than a fishing expedition.  "Let's find out

10   theoretically what other plaintiffs are out there."

11          And I say this to you -- and I don't want you to think,

12   Judge Torres, that I'm a cynic in any respect.

13          THE COURT:  I wouldn't think that.

14          MR. JOLLY:  But we thought, given the 14 or so lawyers

15   on this case from the very public-interest law firms and

16   litigating entities, that in fact there was something else we

17   were looking at.

18          I don't wish to diminish Mr. Brown's personal claims.

19   We have not yet taken his deposition, so I can't do that yet.

20   But his claims are pretty straightforward and didn't need these

21   public-interest law firms from the entirety of the country

22   to -- to advance his cause.

23          So we made the technical objection, the federal

24   regulation objection.  And that was 8 CFR 2366.  And then the

25   broader objection, which was:  Don't make us do all this for

 1  this.

 2          THE COURT:  Yes.  But when you say -- I understand it

 3  based upon these words.  So I understand what you're saying.

 4          But if you were to look for any, wouldn't there be

 5  somebody who would be able to more easily find whether or not

 6  you'd ever gotten any complaint or grievance in a more

 7  similarly situated case?

 8          MR. JOLLY:  You mean someone from the Sheriff's Office?

 9          THE COURT:  Right.

10          MR. JOLLY:  I'm sorry, Judge.  I'm not comfortable in

11  telling you that it would be easy.

12          I am more comfortable in telling you it's going to be a

13  major pain.

14          THE COURT:  Because --

15          MR. JOLLY:  But so what?  If they're entitled to it, we

16  will do it.

17          THE COURT:  Right.

18          MR. JOLLY:  I just don't think they're entitled to it.

19          THE COURT:  Because doesn't the Sheriff -- obviously,

20  if there's a lawsuit filed, that would be easy to find.  This

21  would be the harder thing, would be --

22          MR. JOLLY:  Grievances?

23          THE COURT:  -- in terms of grievances.

24          Isn't there a way -- is there some way that it gets

25  tracked or monitored in a way that we could more easily find

 1    without pulling all 15,000 --

 2            MR. JOLLY:  I would like to tell you -- I don't think

 3    so, because I'd have to go through each grievance to see:  What

 4    are they about in the context of what we're talking about?

 5            THE COURT:  That's what I'm saying.  In other words,

 6    when you --

 7            MR. JOLLY:  The category?

 8            THE COURT:  Yes.  Explain to me.  Is there a record of

 9    grievances filed in --

10            MR. JOLLY:  By inmate?

11            THE COURT:  -- by inmate?  And so there is no

12    categorization of what the grievance was about?  You'd have to

13    look through all of them?  Is that the idea?

14            MR. JOLLY:  That's what I have been told.  That's my

15    understanding.

16            We just don't -- and I think it's even -- it might be

17    chronological, but I know it's inmate by inmate.

18            THE COURT:  Okay.

19            MR. JOLLY:  They pull the vitals.

20            THE COURT:  And then see what happens, see what the

21    issue was?

22            MR. JOLLY:  Yes.

23            And, of course, I don't want you to think that inmates

24    don't file grievances that are being detained at the Monroe

25    County Jail for lots of different reasons.

```
1              THE COURT:  Right.

2              But then if -- when the documents are kept, is there

3    some categorization at the time that one could look at?

4              MR. JOLLY:  I cannot answer that.  I don't know.

5              THE COURT:  Okay.

6              MR. JOLLY:  I would be surprised if they were that

7    efficient, as much as I like those people.  It would surprise

8    me if they were that efficient.

9              THE COURT:  Right.

10             So as best as you can tell, you'd have to go to answer

11   this question -- you'd have to go through --

12             MR. JOLLY:  15,000, and I think I was told 503.

13             THE COURT:  Right.

14             In terms of -- those are the grievances from the --

15   that relate that the Monroe County has received for that period

16   of time of any kind?

17             MR. JOLLY:  No.  I think that number was the number of

18   inmates that were held in the jail for the relevant period of

19   time under your detainers, marshal holds or other holds.

20   That's where that number came from.

21             THE COURT:  Got you.

22             MR. JOLLY:  That's the number I [inaudible] from the

23   research.

24             THE COURT:  Okay.  Let me go back to the Plaintiff.

25             Tell me why -- for purposes of your case, having that
```

1    information, that there were 15,000 holds during the relevant

2    period, coupled with the Plaintiff's stipulation -- excuse

3    me -- of the Defendant's stipulation that this was, in fact,

4    the policy of the Sheriff --

5         MR. SOLEIMANI:  Your Honor --

6         THE COURT:  -- why is that not sufficient for purposes

7    of your *Monell* claim?

8         MR. SOLEIMANI:  I will come back to that.

9         But there were many things that I would like to correct

10   for the record.

11        THE COURT:  Well, answer my question first.

12        MR. SOLEIMANI:  I would say first there aren't 15,000.

13   It sounded like he just said it was 15,000 beyond -- strictly

14   related to detainers.

15        Here, it's complaints or grievances related to

16   detainers.

17        I'd be curious to know how many there were.  Defendant

18   has had three and a half, four months since we served this.

19   And we still don't have a sense for what that number would be.

20   It might be 15,000.  I don't know.  But based on what I just

21   heard from defense counsel, it could be a lot smaller because,

22   again, the request is not all grievances; it's grievances

23   related to detainers that we are seeking.

24        MR. JOLLY:  But the way that you find that is by

25   reading the grievances.

1      THE COURT:  In other words, what he's saying is that

2  they don't -- they don't have anybody who tracks this to that

3  extent.  And so therefore, to find whether or not anybody falls

4  within that type of complaint relevant here, they'd have to

5  look through all 15,000 grievances.

6      MR. SOLEIMANI:  Understood, that he's saying that it

7  may be difficult to do so.

8      In terms of the question that you posed to me, your

9  Honor, you said:  How would it be relevant if that information

10  were to be made to us?

11      THE COURT:  Given the -- given the stipulation that

12  they're making, which it's hard not to, that this in fact was

13  the policy, to hold people in your client's position.

14      MR. SOLEIMANI:  Your Honor, respectfully, they have not

15  made any such stipulation of that kind.  I think that if you

16  look at the request for admission and the complaint, they have

17  not stipulated to many of the complaints -- many of the

18  allegations that we have.

19      So it's not the case, your Honor, that the policy has

20  in some way in this case been firmly established and that that

21  is -- you know, we're set on that and we are sort of

22  extraneously seeking this additional -- in fact, if I may just

23  briefly, your Honor:

24      What we have alleged is there is a policy or practice

25  that Defendant honors of essentially -- essentially, every

1    detainer request it received from ICE, no matter what other

2    information about the person it may receive or despite evidence

3    undermining their basis, no matter what information he

4    subsequently learns, those are not allegations to which the

5    Defendant has in any way submitted -- has said, "That is a

6    policy that we have."

7            That is something that we believe we would like to

8    further investigate through our RFPs and our allegations that

9    have been sufficiently pleaded on this front to prove a custom

10   or practice claim.

11           The --

12           THE COURT:  Doesn't that necessarily -- I guess what

13   you're saying is, they haven't put it in so many -- in

14   black-and-white terms.  But assuming they did --

15           MR. JOLLY:  I'll do it --

16           THE COURT:  Hold on.  I'm talking to him.

17           Assuming they did, coupled with the knowledge that

18   they've had 15,000 people that have been detained during the

19   relevant time period, which I think you said is two years

20   before and two years after.  Is that --

21           MR. JOLLY:  That's my memory.  And I could go through

22   their materials and find it.  But certainly it encompasses a

23   not insufficient period.

24           THE COURT:  Okay.  So during that relevant period, why

25   don't those two things resolve your necessity of more detail?

```
 1            MR. SOLEIMANI:  We need to demonstrate again that the

 2     pattern or practice is the moving force behind the violation.

 3            If, for example, we were able to show that there were

 4     many specific grievances in which probable cause -- the

 5     probable cause determination was obviously undermined, I think

 6     that would be much more probative, frankly, of the fact that

 7     there's Monell liability in this case than some sort of

 8     stipulation, again, which I'm skeptical the Defendant will

 9     actually agree to, that would be sufficient for Monell

10     liability.  I think that would be much more probative of the

11     relevant liability -- claims.

12            So, for example, your Honor, if we were to find that

13     there are many instances like our Plaintiff's in which specific

14     individual -- that 30 individuals had ICE detainer requests

15     that were issued in their name but they happened to be United

16     States citizens and, like our Plaintiff, over the course of the

17     last seven years when we've had Sheriff Ramsey in place, the

18     Defendant has not investigated those claims even though, like

19     our Plaintiff, the Sheriff's own records listed the person as a

20     US citizen or listed the person as born in Philadelphia or

21     there was some other discrepancy between that and the I-247 or

22     equivalent detainer form, I think that would be

23     significantly -- that would be much more probative of the

24     possibility of Monell liability than would be some sort of

25     stipulation, which -- I still don't understand what it would
```

1   look like.

2          The stipulation would have to be something along the

3   lines of:  We, the Defendant, agree that we -- you know, that

4   no matter what evidence we received, even in cases in which

5   probable cause is undermined because the person is clearly a US

6   citizen, will still effectuate the detainer, that is

7   essentially the policy or practice that we are alleging is

8   going on here.

9          And I would add, your Honor, that Defendant has not --

10  chose not to move to dismiss in this case.  Defendant filed an

11  answer.

12         In the two related cases before Judge Williams, the

13  *Creedle* case and the *CFC* case, the Defendant, Miami-Dade

14  County, moved to dismiss and lost before Judge Williams, went

15  long -- or published in the federal supplement.  All of those

16  theories, pattern and practice, are live in that case.

17         And in this case, they're equally live.  Defendant had

18  the opportunity to move to dismiss.  Defendant did not do so.

19  Defendant filed an answer, denied that there was such a pattern

20  or practice.

21         In the RFAs that he's speaking about, there is no such

22  admission.  So these are live claims that we are still seeking

23  that have been sufficiently pleaded that Defendant has not

24  moved to dismiss, that Defendant has denied and Defendant has

25  not admitted to in our case.

1         And so respectfully, your Honor, we would argue that we

2    are entitled to this information.

3         Now, if -- of course, we are happy to meet and confer

4    with Defendant regarding the scope of the request.

5         And I would argue, by the way, your Honor, that this

6    particular one that we've been focused on is probably most

7    burdensome.  The rest are much, much, more straightforward.

8    And I'm happy to get to them.

9         I would think that they have some of this data in a

10   document on file that they simply don't want to produce.

11        If the Miami-Dade cases are any example to learn from,

12   that is the case.  And I can hop to that.  But in that case,

13   Defendant Miami-Dade in response to almost identical requests

14   without entry of a protective order has produced reams of

15   evidence and did not even raise an objection under the

16   regulation that I'm happy to talk about, 236.6.

17        So again, we're seeking the same information that has

18   been provided in those cases without objection, without a

19   protective order.  We would even stipulate to enter a

20   protective order to alleviate Mr. Jolly's concerns, seemingly,

21   with the number of attorneys who are on this case or what we

22   were going to do with the information.

23        The purpose of the information is to understand

24   Mr. Brown's claims in this lawsuit and develop a pattern or

25   practice claim.

1          The only way we can do that, given that we sufficiently

2    pleaded the claim, is to seek RFPs and rogs and then depose the

3    individuals, which so far has been delayed, because we have not

4    been getting anything in response to our request.

5          MR. JOLLY:  All right.  Number one, the claims are very

6    different.

7          In the Miami-Dade case, it is a policy -- it is a

8    custom/practice claim.  This is not.

9          In the Miami-Dade case, guess who else they sued?  The

10   Federal Government.  Gee.  The Federal Government's not a

11   defendant in this case.  The claims are different.

12         One of the things that was just mentioned to you was

13   that you want -- whether the Defendant is prepared to stipulate

14   that they did not investigate Plaintiff's claim.

15         I've answered that.  They didn't investigate his claim.

16         And apparently [inaudible], he would go to a detention

17   deputy and say:  Hey, I'm a US citizen.  What's going on here?

18         To which the Defendant deputies, if they are ever --

19   not the defense; deputies -- if and when they're ever deposed,

20   will say:  Buddy, this is not our job.  The Feds have told us

21   to hold you.  We will continue to hold you until the Feds say,

22   "Stop holding him."

23         They do not investigate a claim of citizenship.  That's

24   the Fed's  job.  And when the Fed's got information, guess what

25   they did?  They cut him loose.  Of course, we'd already had him

1     for 22 days, only one of which relates to the detainer.

2          And no.  We did not move to dismiss.  We have

3     learned -- you might have guessed by now, I'm kind of old.

4     Over the years, I've learned it's stupid to file a motion to

5     dismiss when the same judge that we're in front of has already

6     chosen not to dismiss a case under similar, not the same --

7          THE COURT:  His point is not whether -- why you did or

8     didn't.  His point is that because you've answered the issues

9     at issue.  That's his point.

10         MR. JOLLY:  Which gets me to what you have been

11    suggesting we get to.

12         I am prepared -- in my response to the request for

13    admissions, we admitted -- this was the second response,

14    [inaudible], response at their request -- we -- the defense

15    admitted that this individual Plaintiff was detained on the

16    four documents that I described and that we give that and we

17    accept that.  If that wasn't good, guess what?  I call

18    Tallahassee, the people that tell me what to do, and say, "Get

19    out your checkbook."

20         If I'm right, they're [inaudible] going to various

21    places where they get to go to without having successfully

22    prosecuted this claim or any other claim on these facts.

23         THE COURT:  Okay.  Well, let me ask you this question:

24    If we narrow the window of time and since you believe you've

25    collected -- your client has assembled a subset of people who

1    were detained under that policy for a period of time --

2        MR. JOLLY:  Well, not just that policy, but it would be

3    other federal detainees as well.

4        You know, Monroe County's kind of an interesting place.

5    I don't know how --

6        THE COURT:  See -- hold on.

7        What they want to be able to do is they want to be able

8    to -- among those people, even for somebody who didn't even

9    file a complaint, but they would want to be able to identify

10   whether there were any other American citizens or US

11   citizens --

12       MR. JOLLY:  How are you defining it, then?  I mean, I

13   can tell them to do it if you tell me to tell them to do it.

14       THE COURT:  Right.

15       Well, part of me thinks that, you know, if the breadth

16   of the time period is a problem, I can narrow the time period

17   to make it a more manageable time period.

18       But then make those -- make those grievances available

19   to the Plaintiff's counsel and have them [inaudible] --

20       MR. JOLLY:  We will have to redact any -- the names,

21   identifying information on those particular documents because,

22   under the Federal Government regulation, we're not supposed to

23   disclose any information about these people even having been

24   there.

25       So I guess --

```
1            THE COURT:  Well, I would order it to make it easier.

2   I would order it.  Right?

3            MR. JOLLY:  Which was the next qualification for what I

4   was going to say.

5            THE COURT:  But let's say --

6            MR. JOLLY:  You tell me to do it.  Just what.

7            THE COURT:  Right.

8            But assume I ordered it.  I overruled your

9   confidentiality objection to preserve the Sheriff's legal

10  position.

11           And then give them the room and make them go and have

12  at.

13           MR. JOLLY:  How much time?

14           THE COURT:  How much time would they have or how much

15  time would you have?

16           MR. JOLLY:  The unit.  The time -- I'm having a --

17           THE COURT:  The relevant period?

18           MR. JOLLY:  Yes.

19           THE COURT:  Well, frankly, we could argue that.  But

20  what if I were to say it was just a year?

21           MR. JOLLY:  What year, though?

22           THE COURT:  What year?

23           MR. JOLLY:  The last year or the year when he was

24  detained?  Like a calendar year, January to December?

25           THE COURT:  How about six months before and six months
```

1    after?

2         MR. JOLLY:  That'll work.  If that's -- I don't want to

3    concede it.  But if you're telling me that, and this is going

4    to be reduced to an order that I can be reasonably precise,

5    it'll get done.

6         I like -- you know, Mr. Soleimani suggested that we're

7    to be -- that Monroe County is to be lumped in with Miami-Dade.

8         That's not fair.  I represent Miami-Dade.  These people

9    do what they're supposed to do.

10        THE COURT:  All right.  [Inaudible] that remedy?

11        MR. SOLEIMANI:  Your Honor, we respectfully request a

12   longer period, of course.  We're more than happy to reduce it

13   from what was requested.

14        THE COURT:  What would it accomplish, though?  In other

15   words, I understand that.  But for purposes of what you're

16   asking for, to the extent that you have any relevant

17   information, aren't you going to find it in that year period?

18        MR. SOLEIMANI:  I think it depends on -- first of all,

19   of course, it depends on how often it actually happens, your

20   Honor.  I think having a long enough period to demonstrate --

21   in many of these *Monell* cases, there can only be a handful of

22   cases.

23        And it's sufficient to --

24        THE COURT:  If you don't have any example in the six

25   months before or the six months after, doesn't that undermine

```
 1   your underlying theory that it happens all the time?

 2        MR. SOLEIMANI:  I disagree, your Honor, based on Monell

 3   liability.  In order to show a pattern of practice claim, you

 4   do not have to show that the incidents have happened in the six

 5   months before or the six months after.

 6        THE COURT:  Well, let's put it this way:  If -- maybe

 7   if you filed some information during that period, then that

 8   would create cause to go beyond that.  But if you don't find

 9   anything during that one-year period -- not six-month period;

10   one-year period -- then the question is whether or not for

11   purposes of discovery whether it's -- under a proportionality

12   analysis, we need to go that far, especially given their

13   stipulation.

14        MR. SOLEIMANI:  Again, I would dispute that there has

15   been a stipulation that is sufficient for purposes of what

16   we're talking about on pattern or practice.

17        Again, on that point, what Mr. Jolly said is that we

18   stipulate that this individual was detained without us looking

19   at these various things.

20        The whole point is that it's not about the individual;

21   it's about the policy or practice as it relates to everybody or

22   the pattern or practice as it relates to everybody.

23        As far as the time period, your Honor, we think that it

24   would be an insufficient sample size, just one year.  We

25   recognize the proportionality question.
```

1          We think, first of all, your Honor, unfortunately we

2    started with this one, which we agree among all of them would

3    be more difficult.

4          If you look at RFP No. 9, if you look at some of the

5    others, they're just talking about databases that -- I don't

6    know, but I presume they keep databases of this kind.  It's

7    very different than looking at individual grievances, which we

8    recognize.

9          And I would very much like to get to those other

10   requests, because I think for those, a much longer time -- it

11   could be -- I don't know -- it could be as easy as dragging and

12   dropping a file for ten years.  I don't know the answer,

13   because we haven't been able to get that from defense counsel.

14         But again, we started with the grievance.  I think just

15   as important is getting the summary.

16         To be clear, when I mentioned Miami-Dade, I was talking

17   about summary data.  I was not talking about thousands and

18   thousands of grievances.  So I was talking about their response

19   to the other ones, which are really about:  Please provide us

20   with evidence.  Summary data; no names.  How many ICE requests

21   have you received?  How many were US citizens?  Give us the

22   numbers.  Some of them are more specific.

23         And, your Honor, if I could at some point talk to --

24         THE COURT:  The motion will be granted in part as to

25   No. 8.

1          I'm going to grant it.  I'm going to basically

2     require -- to make it clear, so that what I'm doing is

3     unambiguous, the stipulation that you talked about will be

4     included in your amended answer to 8.  Okay?  Because I'm going

5     to rely on that stipulation to change the proportionality

6     analysis.

7          MR. JOLLY:  And the stipulation is that we detained him

8     pursuant to an actual policy in effect and we -- whether we get

9     it 100 times before or since, who cares?

10         MR. SOLEIMANI:  But what's the policy, is the question.

11         THE COURT:  Well, you need to identify the policy and

12    you need to identify that he was detained pursuant to that

13    policy.

14         MR. JOLLY:  I was -- it's actually a -- I didn't bring

15    it.  It's an agreement.

16         THE COURT:  Put it in writing --

17         MR. JOLLY:  I'll take care of it.

18         THE COURT:  -- under your amended No. 8.

19         MR. JOLLY:  That'll work.

20         THE COURT:  Okay.  And then pursuant to that

21    stipulation, then, I'm going to reduce the time period to the

22    six months before and the six months after.  And then that

23    should ameliorate the proportionality argument.

24         MR. JOLLY:  I understand what to do.

25         THE COURT:  Okay.  So that motion will be granted in

1    part and limited to that, subject to review at a later point.

2         All right.  What other independent or rather production

3    request did you want to get into?

4         MR. SOLEIMANI:  Your Honor, I think it might be easier

5    to go to -- it would be easier to go to RFP No. 9 -- excuse me.

6    If your Honor doesn't mind, I think --

7         THE COURT:  You can skip around.

8         MR. SOLEIMANI:  Yes.  Because the substantive

9    objections are different.

10        THE COURT:  Right.

11        MR. SOLEIMANI:  I think the only -- the other objection

12   for which defense counsel only brought a relevance and

13   proportionality objection is Rog No. 9.

14        THE COURT:  Interrogatory 9?

15        MR. SOLEIMANI:  Interrogatory No. 9.

16        There's no regulation.  I would note that the entire

17   time we've just talked about RFP No. 8, and he was mentioning

18   the regulation, he did not raise that objection to that RFP.

19        On Rog No. 9, similarly, there is no objection.  Under

20   the regulation, there is an objection:  It is not relevant.

21   Essentially, the same arguments that we just talked about.

22        THE COURT:  Hold off.  I've got to find his answer.

23   His answer is in A.  Right?

24        MR. SOLEIMANI:  His answer was in A-1.

25        THE COURT:  A-1?

1          MR. SOLEIMANI:  A-1.  Rog No. 9.  Page 3 of the rogs.

2          THE COURT:  I've got it.

3          You have your No. 9 in front of you, Mr. Jolly?

4          MR. JOLLY:  Yes.  I have the response, not the

5     interrogatory.

6          THE COURT:  Right.

7          Didn't you -- didn't your response in our discussion

8     earlier -- didn't you basically give this information, to some

9     extent?

10         MR. JOLLY:  Yes.

11         THE COURT:  So why is --

12         MR. JOLLY:  To answer your question.

13         THE COURT:  So why not just -- I understand you've

14    presented your objection.  But why not just put this

15    information down?  You seem to have it handy.  Right?  Or was

16    there a different interrogatory?

17         The interrogatory answer that I've seen from No. 9 is

18    for the period of January 2014 --

19         MR. JOLLY:  That's not what I have.

20         THE COURT:  Are there two sets of interrogatories?

21         MR. JOLLY:  My interrogatory answer was:  Objection.

22    The relevance/proportionality buzzwords that we now use.  And

23    then I say:  In this lawsuit, there is no issue in [inaudible]

24    other detainees.

25         THE COURT:  But what was the request that you were

```
 1    dealing with?  Because my No. 9 asks for the number of

 2    detainers, whether you declined to detain.  Am I wrong?

 3              MR. SOLEIMANI:  No.  You're right.  And Mr. Jolly's

 4    responses don't include the interrogatory.  That's the --

 5              THE COURT:  Right.

 6              MR. JOLLY:  We didn't do it that way.

 7              THE COURT:  That's fine.  But your No. 9 doesn't seem

 8    to be relevant to the question.  There isn't -- do you see what

 9    I'm saying?

10              MR. JOLLY:  Gee, I've never done anything like that

11    before.

12              THE COURT:  Right.

13              MR. JOLLY:  Okay.

14              THE COURT:  But do you want to reread the question?

15    Are you sure you answered the right question?

16              MR. JOLLY:  Yes.

17              THE COURT:  Okay.

18              MR. JOLLY:  So they've brought the numbers --

19              THE COURT:  So they have the number of detainers for

20    calendar year, any detainers that were declined, requests for

21    detainers that were declined --

22              MR. JOLLY:  Go ahead.

23              THE COURT:  -- and the reason why you declined it,

24    "you" being the County.

25              MR. JOLLY:  I understood.
```

```
 1          THE COURT:  Yes.  And the number of people who are
 2   listed as US citizens in any MCSO or other agency documents.
 3          MR. JOLLY:  Okay.  Well, the objection [inaudible] my
 4   objection.
 5          THE COURT:  Okay.
 6          MR. JOLLY:  This is at its root the very -- it's not as
 7   easy as I think everybody seems to think.  They're going to
 8   have to go back and pull all the detainers and figure out what
 9   were the circumstances.
10          And they've already had to reach out to me and said:
11   You think he's going to make us do that?
12          I said:  I don't know.  You know, I've [inaudible].
13          THE COURT:  But tell me the date the [inaudible]
14   executed.  You're telling me the number is zero.
15          MR. JOLLY:  Well, that's different.
16          THE COURT:  Didn't you just tell me that?
17          MR. JOLLY:  That's my understanding.
18          THE COURT:  Okay.  So the number in the end is zero.
19          MR. JOLLY:  In fact, I don't want to say that at some
20   point in time in the last four years they didn't decline.
21          But the information I have, we have an agreement with
22   the Feds.
23          THE COURT:  Okay.
24          MR. JOLLY:  "We will do this for you."
25          THE COURT:  So that's why I'm trying to figure out what
```

```
 1   the problem is in answering it.

 2          MR. JOLLY:  But it goes to this fundamental

 3   mischaracterization.

 4          THE COURT:  But they're just asking for data; in other

 5   words, data that you seem to know.

 6          MR. JOLLY:  Well, okay.  If that's the answer that the

 7   Court -- or that's the direction that the Court is directing me

 8   to go, we'll do what you're going to order.

 9          Here's the problem --

10          THE COURT:  But am I wrong?

11          MR. JOLLY:  Yes.

12          THE COURT:  How am I wrong?

13          MR. JOLLY:  You're wrong.  By having the data, I cannot

14   speak to that.

15          THE COURT:  Right.

16          MR. JOLLY:  Where I think you're wrong is:  Plaintiff,

17   who cares?  Your guy was detained under an agreement with the

18   Feds pursuant to the documentation --

19          THE COURT:  They want to tell the jury that there were

20   15,000 detainers.

21          MR. JOLLY:  Who cares?

22          THE COURT:  The jury might care.

23          MR. JOLLY:  Well, on their claim, on their *Monell*

24   claim, it's not relevant.  But, you know, if you're telling me

25   that's what we've got to do, Judge, again, it's been years
```

```
 1    since I was held in contempt.  We will do what you direct us to

 2    do.

 3            THE COURT:  I'm sure you're not going to be held in

 4    contempt.

 5            Based upon the information that you seem to tell me,

 6    you seem to have the data --

 7            MR. JOLLY:  I don't have this data.  They might.  It

 8    doesn't matter.

 9            THE COURT:  All right.

10            MR. JOLLY:  If you tell us to do it, we do it.

11            THE COURT:  Yes.  Unless you -- now, the only part of 9

12    that I have a question about -- 9-A will be granted as is.

13            As to 9-C, the number of people who are listed as US

14    citizens in any MCSO or other agency documents, wouldn't they

15    have to review every single one to begin to determine that?

16    That's different than extracting the number.  So isn't C this

17    issue that we were just dealing with?

18            MR. SOLEIMANI:  Your Honor, it depends on the way in

19    which they keep these -- this information.

20            And again, Mr. Jolly's had four months to figure that

21    out.

22            My assumption is that if they have a listing of the

23    number of detainers of individuals, there is a line that says

24    their citizenship.  That's the data that has been produced in

25    comparable cases.
```

1          THE COURT:  Is that how they track that?

2          MR. JOLLY:  That's not my understanding.  That would be

3   easy.  I have to tell you, the main objection was:  We don't

4   think it has anything to do with this case.  It is irrelevant.

5   It is --

6          THE COURT:  I think it would be relevant.

7          But the issue is whether or not -- to respond to the

8   request, if the information was kept in the manner in which

9   Plaintiff's counsel suggests, it'd be easy to turn over.

10          If that information is not separately cataloged, the

11   only way you could get to that information is to go through the

12   grievances themselves, which is relevant to what I had ordered

13   with respect to No. 8.

14          So --

15          MR. JOLLY:  We tried.

16          THE COURT:  So I'll grant No. 9-C in part only to the

17   extent that you're producing that information.  I interpret 9-C

18   to be relevant to Production Request 8.  So what I've ordered

19   as to Production Request 8 is what I'm ordering as to 9-C.

20          So the only one I'm really compelling them is 9-A and

21   B.

22          MR. SOLEIMANI:  Your Honor, 9-C is about detainers,

23   not -- the one you previously talked about is about grievances,

24   which are very, very separate.

25          So again, here, there might be a small number of

1   grievances, a large number of detainers.  This is just -- in

2   other words, this is information -- detainers that have come

3   down from ICE to the Monroe County Sheriff's Department.

4        The previous request was about complaints related to

5   being held pursuant to those detainers.

6        Very different sets of data.

7        THE COURT:  Well, I get you.  That's a valid point.

8        However, in order for them to respond to 9-C, based

9   upon what he's telling me -- and so I'm allowing his

10   representation.

11        Obviously, if the information --

12        MR. JOLLY:  Maybe it'll be easy.

13        THE COURT:  Maybe it will.

14        If it turns out that they categorize this information

15   in the manner in which you're suggesting, well, then, obviously

16   it should be just turned over.

17        If in order to comply with 9-C they'd have to

18   individually review every single detainer order to answer that

19   question, then they need not do that beyond Interrogatory 8.

20        Does that make sense?

21        MR. JOLLY:  And for the same period?

22        THE COURT:  For the same period.

23        But 9-A and B are granted in toto.  9-C is the one that

24   I'm --

25        MR. JOLLY:  Okay.  I get it.

1          THE COURT:  Okay.  What's the next one?

2          MR. SOLEIMANI:  The next one would be -- we can

3   categorize RFP 9 and the next one I'll talk about, Rog 10,

4   together, because they both involve the same substantive

5   objection.

6          RFP 9 -- your Honor, I'll give you a moment to pull it

7   up.

8          THE COURT:  Now, isn't RFP -- isn't this -- aren't I

9   producing this information to you through No. 8?

10         MR. SOLEIMANI:  Your Honor, No. 8 --

11         THE COURT:  Aren't you going to get this through No. 8?

12         MR. SOLEIMANI:  No. 8 -- and again, No. 9 is about

13   databases and spreadsheets in the original data format to the

14   extent those spreadsheets exist.

15         Defendant again has not clarified whether or not they

16   do.

17         My understanding is that in most counties, they

18   actually keep track of this type of information.  It's readily

19   available.

20         No. 8, as we suggested, your Honor, would involve

21   manually going through grievances very separate from whether or

22   not the Defendant has data regarding the detainers that the

23   Defendant has received.

24         THE COURT:  I think -- aren't they the same problems in

25   9-C, though?  I mean, isn't the -- I mean, isn't this just

1   another way of asking No. 9-C?  So why would I do anything

2   different, is my question here.

3          MR. JOLLY:  You know, Judge, I really don't think they

4   have a spreadsheet or database.

5          THE COURT:  I'm -- to some extent, I'm -- they're going

6   to verify that, obviously, in the deposition.  But I'm kind of

7   relying on that representation in terms of my -- my concern.

8          MR. JOLLY:  Okay.

9          THE COURT:  If they did have a spreadsheet, obviously,

10  then produce it.

11         MR. JOLLY:  Yes, sir.

12         THE COURT:  I'm assuming, based upon what you're

13  telling me, that they don't maintain this that way.  And so I'm

14  relying on your representation --

15         MR. JOLLY:  And if it's different, they get the stuff.

16         THE COURT:  Yes.  Okay.

17         MR. SOLEIMANI:  Your Honor, in terms of the substance,

18  RFP 9 is very different from Rog --

19         THE COURT:  Interrogatory 9-C versus 10:  What do --

20         MR. SOLEIMANI:  Sorry.  Versus -- I've been looking at

21  RFP 9, your Honor.  I apologize.  Are you now talking about

22  Interrogatory 10?

23         THE COURT:  The difference between Interrogatory 9-C

24  and Interrogatory 10.  Don't I have the same problem?  Isn't it

25  basically the same thing in a different way?

1          MR. SOLEIMANI:  The reason why, your Honor, I believe

2     it's different is that Rog No. 10 is about identifying

3     individuals in terms of, like, their names and so forth.

4          The reason why we believe that information is relevant

5     in this case is because we would like to pursue those

6     individuals' stories, understand what it is about other

7     individual cases that happened specifically, whether or not,

8     for example, the Sheriff knew about that individual, whether or

9     not that individual, who was a US citizen --

10          THE COURT:  Aren't you going to get that through the

11     information that I've compelled in the production of Request 8?

12          MR. SOLEIMANI:  No. 8 -- again, your Honor, No. 8

13     relates to grievances.

14          Number -- Rog 10 does not require that the person have

15     filed any grievance.

16          No. 8 is sort of a smaller subset of --

17          THE COURT:  So isn't 10 [inaudible] for 2006, every

18     detainer?  They'd have to review every detainer since 2006 to

19     be able to give you that data.

20          MR. SOLEIMANI:  Your Honor, it depends upon a few

21     things.

22          First, I would say we would of course stipulate to a

23     smaller time period.  That period was to some degree modeled

24     after assumptions as to what would exist.  We still don't know

25     what would exist.

1                 To the extent a database like this exists in its native

2     form, which, again, I'm assuming -- my understanding is many

3     sheriff's departments keep track of --

4                 THE COURT:  This is Monroe County.

5                 MR. SOLEIMANI:  Understood, your Honor.

6                 THE COURT:  You're not in New York anymore.  Right?

7                 MR. SOLEIMANI:  I'm from Los Angeles.

8                 THE COURT:  Los Angeles.  Or Miami, for that matter.

9     There's a different animal here.

10                MR. SOLEIMANI:  Understood.

11                But we would like to understand and learn the nature of

12    the beast.  And then that's part of what we have not been able

13    to do.

14                THE COURT:  I'm going to rely on his representation.

15    And so, based on his representation, I think -- I'm not going

16    to compel 10.

17                But you can verify his representation with the

18    appropriate persons with knowledge.  And if that turns out to

19    be wrong, then you -- then we can revisit it.  Okay?  So I'm

20    not going to compel No. 10 at this point.

21                MR. SOLEIMANI:  And just -- the representation would be

22    what?

23                THE COURT:  That they don't keep this type of data

24    normally, that in order for -- and you'll go through the

25    interrogatory with the person with the most knowledge, and she

```
 1    will verify what counsel is saying unless -- unless it's
 2    different.
 3              MR. JOLLY:  If it exists, they'll get it.
 4              THE COURT:  They'll get it.
 5              MR. JOLLY:  They're not creating one.
 6              THE COURT:  Right.  Absolutely.  They're not creating
 7    one.
 8              But I'm -- assuming he's right, his understanding, then
 9    I think 10 would just be -- it would just be way overbroad.
10              MR. SOLEIMANI:  Even for a limited time period?
11              THE COURT:  That's with the limited time period.
12              MR. SOLEIMANI:  Well, remember, the most relevant thing
13    would be --
14              THE COURT:  It's not just people who are detained.
15    It's people who are detained who fit the category of person
16    that your client is.  And so therefore, I'm -- if that has
17    happened, my presumption is that your -- the production that
18    I'm already ordering will get you some of that information.
19              10 is another way to get that, but it's so overbroad
20    that I just don't, given the nature of the case, that I want to
21    compel it, at least at this point.
22              MR. SOLEIMANI:  I would agree, your Honor, that it
23    depends significantly on the extent to which they have a lot of
24    this.  You know, a sample of the document that was produced by
25    Miami-Dade, recognizing it is not Monroe County --
```

```
 1              THE COURT:  Right.

 2              MR. SOLEIMANI:  -- and it is just a file that contains

 3    all of this information.

 4              THE COURT:  I'll revisit -- anything I'm denying, I'll

 5    revisit it if I need to.  But let's see where this gets us.

 6    Okay?

 7              MR. SOLEIMANI:  Thank you, your Honor.

 8              THE COURT:  Okay.  Anything else?

 9              MR. SOLEIMANI:  Yeah.  We're still on RFP No. 9, which

10    admittedly is --

11              THE COURT:  Hold on.

12              MR. SOLEIMANI:  It'll be similar.  The objection was

13    the same.

14              THE COURT:  Is that a similar problem?

15              MR. SOLEIMANI:  It's a similar problem.  It's about --

16    as your Honor suggested, we would have to depose individuals to

17    understand if this type of information is available.

18              THE COURT:  The same ruling on No. 9.  I'm not

19    compelling it unless we find out more information that shows

20    that this is in fact -- that they had this.

21              MR. JOLLY:  Okay.

22              THE COURT:  So similar to No. 9.  Okay.

23              MR. SOLEIMANI:  Your Honor, one question about

24    proportionality:  To the extent that Defendant has a lot of

25    these records in its possession, for example, 15,000 or 15,000
```

1   documents that have already been pulled together, if it were

2   the burden of Plaintiff to review those documents -- in other

3   words, if they were to say:  There are all the documents.

4   There's 15,000 for however many years, five years, ten years,

5   and they've already collected that, I could be wrong, your

6   Honor, but respectfully, it seems to me that if Plaintiff had

7   the burden of looking through the documents and seeking, for

8   example -- all it's going to be, I assume, is "I'm a US

9   citizen" or this person said, "I'm a US citizen or this

10   person" --

11        THE COURT:  But, see, if they catalog them in the way

12   that that suggests, then it'd be easy to produce it to make it

13   even easier on you.

14        MR. SOLEIMANI:  Sure.

15        THE COURT:  Again, I'm relying on the representation

16   that they don't catalog it the way that you're going to be --

17   but how do we get this information, is the issue.  And so I

18   still fall back on the same thing:  To the extent that this is

19   going to be findable, reasonably findable, it may be in

20   connection with the Request No. 8 that I've compelled.

21        MR. SOLEIMANI:  Your Honor --

22        THE COURT:  If that turns out to be incorrect, we can

23   revisit that, number one.

24        Number two, again, if the County has categorized things

25   in a way that are different than my understanding, we'll

1  revisit that as well.

2       So I'm not -- I'm not disagreeing with you on the

3  fundamental that some of this you may be entitled to.  But I

4  mean, I'm loath to compel to find the very specific data that I

5  think we're looking for, the type of review that I think this

6  might entail.

7       So I will rely on the representation.  I'm going to --

8  I'm not compelling it, at least yet.

9       MR. SOLEIMANI:  Your Honor, one question regarding the

10 future just in terms of the discovery deadlines --

11      THE COURT:  I know you want to take the depositions

12 sooner rather than later, because I think that's going to be

13 important, because you want -- to the extent that there's

14 additional information that we didn't appreciate, you want to

15 give yourself time to then --

16      MR. SOLEIMANI:  That's what I was going to ask.

17      And so to the extent information like that comes out in

18 the course of the deposition --

19      THE COURT:  What is the usual -- the usual routine of

20 parties waiting till the last week before the discovery cutoff

21 to take the depositions, which drives me nuts.

22      MR. JOLLY:  The discovery cutoff is August.

23      There has been some reference --

24      THE COURT:  On the [inaudible] you want to move sooner

25 rather than later.

1          MR. SOLEIMANI:  Understood, your Honor.

2          August 19th, I believe.

3          THE COURT:  The next one?

4          MR. SOLEIMANI:  So that's -- we'll start to the fourth

5    request that we've talked about.

6          THE COURT:  Okay.

7          MR. SOLEIMANI:  The separate issue in the case involves

8    the payment of services of electronic discovery in this case.

9          The [inaudible] specifically is whether the Defendant

10   is entitled to payment of nearly $500 for having served

11   electronic .pdfs of Bates-stamped documents that are responsive

12   to Plaintiff's request for production.

13         To be clear, your Honor, Plaintiff has never requested

14   hard photocopies, has never requested any inaccessible

15   electronic records coming anywhere near the type of data that

16   we're talking about here today.

17         The dispute is simply over whether or not Plaintiff has

18   to pay the Defendant in order to receive access to electronic

19   versions of the documents that are responsive to the request.

20         So specifically, your Honor, on a particular day --

21         THE COURT:  But in other words, are you talking about

22   things that you've already received or things that you would

23   receive if they were to fully comply with your request?

24         MR. SOLEIMANI:  Well, briefly, by way of background,

25   your Honor, I think it's in order, because the answer is it's

1    both.  It's both in the past, because we have paid subject to

2    reservation of right, and the future.

3         Mr. Jolly represented to me that, regardless of the

4    manner in which any such documents would be provided to us, for

5    example, if they were sent via email or secure transfer

6    protocol or USB, he would be charging us 25 cents per page.

7         And we did research.  And our view -- I'm unaware of

8    anything in which sending electronic documents that are already

9    in electronic form, because they've Bates-labeled, would

10   require payment on the requesting party.  Normally, it is the

11   obligation of the Defendant to make -- to bear that cost.

12        On a Friday, I think it was April 19th, in the morning,

13   I emailed Mr. Jolly saying that I think this is an improper

14   request.  I had spent the prior two days arranging -- because

15   he wouldn't send them to us at no cost -- arranging for a

16   paralegal, Mr. Oliver Torres at the Southern Poverty Law

17   Center, to drive from Miami to Fort Lauderdale with a USB drive

18   to download the electronic documents.

19        Hours after I sent that email, I received a letter, a

20   package from Mr. Jolly with a USB drive that said that these

21   were being provided pursuant to your agreement to pay something

22   on the order of $450 or something like that.

23        Within an hour or two, I emailed Mr. Jolly, saying that

24   there was no such agreement.  We haven't made an agreement.  We

25   think it's improper to request this kind of payment.  There

1   must be some sort of mistake here, effectively, was the tenor

2   of the email.

3         And in order to just compromise and not waste your

4   Honor's time, we offered to pay half, which still to me is

5   absurd and wrong, but just to resolve the issue and move on,

6   subject to not having to pay in the future.

7         Mr. Jolly didn't respond at all for, I believe, ten

8   days, in any way.

9         And I offered in that email to send Mr. Torres to pick

10  up the documents.

11        No response.

12        And so it has just been -- what we ended up doing weeks

13  later is there was a deposition for Plaintiff scheduled at the

14  time.  We needed the documents before.  So of course we started

15  to review the documents that had been sent to us.

16        Mr. Jolly refused to produce additional --

17        THE COURT:  How much did you pay?

18        MR. SOLEIMANI:  In total, $475 has been paid.

19        THE COURT:  Okay.

20        MR. SOLEIMANI:  And so we paid that full amount only

21  subject to reservation of rights to bring it up here, both to

22  recoup that money and to seek clarity from your Honor regarding

23  whether it's proper to make these payments for electronic

24  documents.

25        We would love, of course, for Defendant to do what we

1   do, which is just email documents for free.  If he wishes to

2   say, "We're going to keep them housed here and you have to

3   drive to Fort Lauderdale and bring a USB drive," of course it's

4   burdensome, but we would be willing to do that.

5        What we will not do is pay for Mr. Jolly's employees to

6   send us via email or USB documents that he already has in

7   electronic form by virtue of having to Bates-label them.

8        MR. JOLLY:  Okay.  This is my favorite.

9        First of all, he did send --

10       THE COURT:  Did you charge him 25 cents a page for a

11  .pdf?

12       MR. JOLLY:  No.

13       THE COURT:  Okay.

14       MR. JOLLY:  Here's what happened:  The Sheriff produced

15  many boxes of documents that we went through.  And then we ran

16  them through our machine, the ones that were responsive.

17  Roughly 2,000 documents have been produced to them.  So we have

18  them in hard-copy fashion with Bates stamps.

19       THE COURT:  Okay.

20       MR. JOLLY:  And I said:  We will charge you for the

21  number of copies referenced in the Bates stamp answers to -- or

22  responses to requests to produce.

23       And I says:  Listen, I'll send you this overnight if

24  you'll agree to pay.

25       He did.

1          And we got it out that night.  He got it the next day.

2          Oh, by the way, the other documents -- because they did

3    a second request to produce, and we responded to that second

4    request to produce, and those are not electronic documents.

5    Those were hard copies which we received from others which we

6    provided to them.  And they paid for those.

7          Now, it's -- I find it interesting that they didn't

8    cite you any cases.  In fact, I would refer you to the *Holzberg*

9    case at 2012 Westlaw -- I didn't bring copies -- at 3985856,

10   Washington District Court, 2012; the *Brasso* case at 2004

11   Westlaw 1385816 -- that's a Southern District of New York in

12   2004; and the *Gross* case, which is in the Southern District,

13   2013 Westlaw 12091159.

14         If the -- the requesting party who receives the

15   documents is obligated to pay for the duplication costs

16   incurred.

17         That's, I would suggest, the legal argument.

18         The real argument is:  How cheesy is it to conduct

19   discovery with all the employers from all of these

20   organizations all over the country and they're objecting

21   [inaudible] to $450 in duplicates in cost?  I'm stunned.  And I

22   particularly didn't like being misled.

23         THE COURT:  Although 25 cents for .pdfs seems a bit

24   high.  No?

25         MR. JOLLY:  No.

```
 1              THE COURT:  No?

 2              MR. JOLLY:  That's what we got -- the public

 3    [inaudible].

 4              THE COURT:  Yes, but the difference is in litigation

 5    there is some cost that the Defendant bears.  Right?

 6              MR. JOLLY:  Yeah.  There's a lot of costs.

 7              THE COURT:  Right.

 8              MR. JOLLY:  You think they want me standing here

 9    defending this case?

10              THE COURT:  Right.

11              MR. JOLLY:  We shouldn't have to pay any more costs.

12              I -- you know, you're going to do what you're going to

13    do.

14              THE COURT:  Well, if you prevail, you will get your

15    costs.  So that's not the issue.

16              So --

17              MR. JOLLY:  Yeah, but that's not a cost I would even --

18    that's not a taxable cost.

19              THE COURT:  Sure it is.

20              MR. JOLLY:  [Inaudible] copies?

21              THE COURT:  Duplication.  Duplication.  Well, that's

22    for your personal copies.  But you're charging him -- what

23    you're saying is you're charging him for the copies you sent

24    him.

25              MR. JOLLY:  And if he wins, he gets it from me.
```

1          THE COURT:  Right.

2          MR. JOLLY:  So that's -- I was -- I've never had a

3   lawyer, I've never had a law firm, say to me:  We're not going

4   to pay to have you duplicate the stuff.

5          And my response [inaudible]:  Hey, no problem.  Come to

6   my office.  You can take as much time as you want.

7          And that's what the rule requires.

8          THE COURT:  Right.  I agree with that.  I generally

9   agree with you.

10          The difference is if you're producing .pdf documents,

11   though --

12          MR. JOLLY:  You know, Judge, really, I'm not sure that

13   that was a .pdf document.  What we did was --

14          THE COURT:  Did you put it on a USB drive?

15          MR. JOLLY:  Yes.

16          THE COURT:  Well, that's probably what it was.

17          MR. JOLLY:  That's what it was.

18          THE COURT:  Yes.

19          MR. JOLLY:  So I absolutely --

20          THE COURT:  I follow the theory that some costs are

21   entirely to the Defendant in that situation, because especially

22   when the Defendant is a public agency, so long as it's

23   reasonable.

24          MR. JOLLY:  You don't think 25 cents was reasonable?

25          THE COURT:  On an electronic production?

1          MR. JOLLY:  Well, that's what we charge everybody when

2     we produce copies to them.  It's not as if we singled them out

3     because we [inaudible] them.

4          THE COURT:  It'd be different -- you know, the day when

5     you were and I were in law school, right, you --

6          MR. JOLLY:  I was there before you.

7          THE COURT:  -- you didn't have to -- you didn't have

8     the ability to send them.  You had to print them out.  You had

9     to make a copy.  So we charged -- our firm charged 30 cents a

10    page.  Right?

11         But today, for .pdf production, that's a little harsh.

12    So I'm going to order that you reimburse him $200.  Okay?

13         MR. JOLLY:  Okay.

14         THE COURT:  All right.

15         MR. JOLLY:  Yes, your Honor.

16         THE COURT:  So you'll get a check back for $200, for

17    half the cost.

18         MR. SOLEIMANI:  Your Honor, may I just correct the

19    record?

20         I did not ever agree to that.  I don't understand.

21         THE COURT:  I heard you.

22         MR. SOLEIMANI:  And we produced --

23         THE COURT:  Anything else?

24         MR. SOLEIMANI:  Your Honor, yeah.  Could we please have

25    clarity for future -- for the future?

1           The focus is not so much on the produced payment, but

2     rather on going forward.

3           Specifically, would we be required to pay every time

4     there's any response to any request?  What is the best

5     approach?  Because we tried in this instance to send a

6     paralegal.  We got caught up in a squabble.  And we were fine

7     with sending a paralegal.

8           THE COURT:  That's -- just so we're clear, if in fact

9     they're sending a paralegal to duplicate things on the spot,

10    there should be no copying cost.

11          MR. JOLLY:  There wouldn't be.

12          THE COURT:  Yes.  Now, he's saying he was prepared to

13    send somebody, but you had already --

14          MR. JOLLY:  That was the second production.  And by

15    that time, we had received the check and we had already made

16    the copies, and they came up and picked up the copies.  Only

17    one was --

18          THE COURT:  Just going forward, just going forward --

19          MR. JOLLY:  Yes, sir.

20          THE COURT:  -- if the production occurs at the place of

21    business and you copy them, basically, through your own --

22    through the --

23          MR. JOLLY:  Device.

24          THE COURT:  -- to the producing party, then there's no

25    cost.

```
 1            MR. JOLLY:  Fair enough.
 2            THE COURT:  The cost is when he assembles materials and
 3   sends them at a reasonable page limit.  So in this case --
 4            MR. JOLLY:  Your Honor, that would be 10 cents.
 5            THE COURT:  There you go.
 6            MR. SOLEIMANI:  So to be clear, for scanning --
 7            THE COURT:  For scanning, it's 10 cents.
 8            MR. SOLEIMANI:  To scan an email --
 9            THE COURT:  10 cents.
10            MR. SOLEIMANI:  -- would be 10 cents.  And does the
11   payment have to occur before he sends?  Because that delays
12   things.
13            THE COURT:  I'm sure he'll get it -- you'll work that
14   out.
15            MR. JOLLY:  If he promises to pay like I did last time,
16   he'll get it.
17            THE COURT:  You'll work it out.  Okay?
18            MR. SOLEIMANI:  Your Honor, we were very diligent about
19   this.  I did not promise, I assure you.  It would not --
20            THE COURT:  I believe you.
21            Anything else?
22            MR. SOLEIMANI:  I don't believe so.  Actually, one
23   other issue.  I'm sorry, your Honor.
24            The Defendant filed a motion on the docket two days ago
25   seeking to depose our client.
```

```
 1              My understanding was that a motion like that was

 2      supposed to be for the regular discovery calendar, not filed on

 3      the docket.  So I'm not sure.

 4              We're resolving those issues.  I just want to make sure

 5      that we would -- do we have to file a response to that?

 6              MR. JOLLY:  Here's my suggestion.

 7              THE COURT:  Oh, is this the one -- oh, I'm sorry.  I

 8      think I did see this.

 9              MR. JOLLY:  Sure.  We filed --

10              THE COURT:  Is this because his client is incarcerated?

11      Is that the motion?

12              MR. SOLEIMANI:  Yes, your Honor.

13              MR. JOLLY:  That's the motion.  But it wasn't scheduled

14      to be heard today.

15              THE COURT:  Right.

16              MR. JOLLY:  I didn't file a notice with you about that.

17              THE COURT:  Right.

18              MR. JOLLY:  It was my plan to speak to them privately

19      after the hearing to say:  Gee whiz, guys, are you actually

20      going to fight this one?

21              THE COURT:  Right.

22              MR. JOLLY:  And if they say no, we'll work out an

23      agreed order --

24              THE COURT:  Right.

25              MR. JOLLY:  -- which we will submit to you.
```

1          If they don't agree, then I'll get it set on a

2     discovery hearing.

3          THE COURT:  Okay.  Fair enough.

4          MR. SOLEIMANI:  Is that --

5          THE COURT:  Just so we're clear, in this case, normal

6     rules would be to follow the discovery calendar and set it for

7     hearing.

8          I thought when I looked at it -- normally, what happens

9     is I strike the motions.  But when I saw his motion, I thought

10    he might have -- I thought the issue may have been because of

11    some order to the jail.  That's why I didn't strike it

12    immediately, because I wanted to find out more about it.

13         MR. JOLLY:  He's in our custody.  That is not going to

14    be an issue.

15         THE COURT:  Oh, okay.

16         MR. JOLLY:  They said we can't take his deposition --

17         THE COURT:  Right.

18         MR. JOLLY:  -- until I get the order.

19         THE COURT:  So you don't have to file a motion going

20    forward.

21         MR. SOLEIMANI:  Your Honor, respectfully, under Federal

22    Rule 30(a)(2)(B), my understanding is that an order of the

23    Court is required.

24         MR. JOLLY:  He's trying to --

25         MR. SOLEIMANI:  Even if we were to stipulate, my

```
 1    understanding -- this is what we've been informed --

 2         THE COURT:  That's fine.  If you have an agreement,

 3    then you'll let him know and I'll grant the motion.

 4         MR. SOLEIMANI:  Understood.  So we'll submit a proposed

 5    order.  Or if there's any dispute, then we'll bring it up on

 6    another calendar here.

 7         THE COURT:  Right.

 8         So since -- so again, going back to the issue of going

 9    forward, my suggestion is we get some depositions in even

10    before any additional discovery documents may be necessary,

11    because I think some of this may color what we're going to need

12    later.

13         So if he's trying to take the Plaintiff's deposition,

14    make the Plaintiff available in a reasonable period of time.

15         And then the same thing:  He's going to need to take

16    depositions of your people to verify the representations you're

17    giving me.

18         MR. JOLLY:  You got it.

19         THE COURT:  And so I want to get that process going.

20         MR. SOLEIMANI:  Your Honor, I don't know that we

21    established a timeline for the production that's been ordered

22    today.

23         THE COURT:  How much time do you need to supplement 8

24    and 9 --

25         MR. JOLLY:  71 and three-point years.  By that time,
```

```
 1   I'll finally be dead.

 2           THE COURT:  How about a week?

 3           MR. JOLLY:  No.

 4           THE COURT:  Ten days?

 5           MR. JOLLY:  I'm going to say -- give me ten days.

 6           THE COURT:  Ten days.  Ten days.

 7           MR. SOLEIMANI:  And so we will not plan to have

 8   depositions before we at a minimum have received those

 9   documents?

10           THE COURT:  Correct.  Correct.  And you need to verify

11   the representations.

12           MR. SOLEIMANI:  Of course.

13           THE COURT:  Okay.  All right.  Thank you all very much.

14           MR. JOLLY:  Thank you, Judge.

15           MR. SOLEIMANI:  Thank you, your Honor.

16           MR. JOLLY:  May we be excused?

17           THE COURT:  Absolutely.

18           (Proceedings concluded.)

19

20

21

22

23

24

25
```

1

2

C E R T I F I C A T E

3          I hereby certify that the foregoing is an

4   accurate transcription of the proceedings in the

5   above-entitled matter to the best of my ability.

6

7

                        /s/Lisa Edwards
8   _____      LISA EDWARDS, RDR, CRR
       DATE             (305) 439-7168
9                       Reporterlisaedwards@gmail.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$200** [2] - 59:12, 59:16
**$450** [2] - 53:22, 56:21
**$475** [1] - 54:18
**$500** [1] - 52:10

## /

**/s/Lisa** [1] - 66:7

## 1

**1** [1] - 1:8
**10** [16] - 8:15, 44:3, 45:19, 45:22, 45:24, 46:2, 46:14, 46:17, 47:16, 47:20, 48:9, 48:19, 61:4, 61:7, 61:9, 61:10
**100** [1] - 35:9
**10th** [1] - 6:16
**11th** [1] - 6:5
**12091159** [1] - 56:13
**1216** [1] - 1:24
**13** [2] - 1:5, 16:22
**1385816** [1] - 56:11
**14** [1] - 18:14
**15,000** [13] - 17:18, 20:1, 21:12, 22:1, 22:12, 22:13, 22:20, 23:5, 24:18, 40:20, 49:25, 50:4
**17th** [2] - 5:3, 6:7
**18-10279** [1] - 3:4
**18-10279-CIVIL-WILLIAMS** [1] - 1:2
**19th** [2] - 52:2, 53:12

## 2

**2,000** [1] - 55:17
**20** [1] - 16:19
**2004** [2] - 56:10, 56:12
**2006** [2] - 46:17, 46:18
**2012** [2] - 56:9, 56:10
**2013** [1] - 56:13
**2014** [1] - 37:18
**2019** [1] - 1:5
**21** [1] - 7:8
**22** [1] - 29:1
**236.6** [1] - 27:16
**2366** [1] - 18:24

## 24

**24** [1] - 16:18
**2455** [1] - 1:23
**25** [4] - 53:6, 55:10, 56:23, 58:24
**26** [1] - 6:1
**26.1(e** [1] - 4:22
**26th** [2] - 5:18, 9:15
**27th** [1] - 9:16
**28th** [2] - 5:19, 7:3

## 3

**3** [1] - 37:1
**30** [3] - 5:18, 25:14, 59:9
**30(a)(2)(B** [1] - 63:22
**30-day** [1] - 4:25
**305** [2] - 2:1, 66:8
**30th** [3] - 5:1, 6:24, 7:2
**33134** [1] - 1:20
**333** [1] - 1:17
**33304** [1] - 1:24
**3985856** [1] - 56:9
**3:44** [1] - 1:6

## 4

**40** [1] - 11:25
**400** [1] - 1:20
**4343** [1] - 1:19
**439-7168** [2] - 2:1, 66:8

## 5

**503** [1] - 21:12
**5th** [1] - 5:25

## 6

**63** [3] - 4:25, 7:2

## 7

**71** [1] - 64:25
**76** [1] - 1:8

## 8

**8** [24] - 8:12, 8:18, 9:24, 10:8, 18:24, 34:25, 35:4, 35:18, 36:17, 42:13, 42:18, 42:19, 43:19, 44:9, 44:10, 44:11, 44:12, 44:20, 46:11, 46:12, 46:16, 50:20, 64:23

## 9

**9** [24] - 8:12, 8:15, 10:2, 34:4, 36:5, 36:13, 36:14, 36:15, 36:19, 37:1, 37:3, 37:17, 38:1, 38:7, 41:11, 44:3, 44:6, 44:12, 45:18, 45:21, 49:9, 49:18, 49:22, 64:24
**9-A** [3] - 41:12, 42:20, 43:23
**9-C** [12] - 41:13, 42:16, 42:17, 42:19, 42:22, 43:8, 43:17, 43:23, 44:25, 45:1, 45:19, 45:23
**90071** [1] - 1:17

## A

**A-1** [4] - 8:1, 36:24, 36:25, 37:1
**ability** [3] - 4:23, 59:8, 66:5
**able** [8] - 19:5, 25:3, 30:7, 30:9, 34:13, 46:19, 47:12
**above-entitled** [1] - 66:5
**absolutely** [3] - 48:6, 58:19, 65:17
**absurd** [1] - 54:5
**accept** [1] - 29:17
**access** [1] - 52:18
**accomplish** [1] - 32:14
**according** [1] - 11:17
**accurate** [1] - 66:4
**ACLU** [2] - 1:19, 3:11
**actual** [3] - 8:3, 17:14, 35:8
**add** [1] - 26:9
**additional** [4] - 23:22, 51:14, 54:16, 64:10
**addressed** [1] - 15:5
**admission** [3] - 15:7, 23:16, 26:22
**admissions** [1] - 29:13
**admitted** [4] - 15:7, 26:25, 29:13, 29:15
**admittedly** [1] - 49:10
**advance** [1] - 18:22
**agency** [3] - 39:2, 41:14, 58:22
**ago** [1] - 61:24
**agree** [9] - 25:9, 26:3, 34:2, 48:22, 55:24, 58:8, 58:9, 59:20, 63:1
**agreed** [1] - 62:23
**agreement** [7] - 35:15, 39:21, 40:17, 53:21, 53:24, 64:2
**ahead** [1] - 38:22
**alien** [1] - 12:9
**allegations** [5] - 11:17, 11:23, 23:18, 24:4, 24:8
**alleged** [1] - 23:24
**alleging** [1] - 26:7
**alleviate** [1] - 27:20
**allowing** [1] - 43:9
**almost** [1] - 27:13
**ameliorate** [1] - 35:23
**amended** [2] - 35:4, 35:18
**American** [1] - 30:10
**amount** [1] - 54:20
**analysis** [3] - 18:7, 33:12, 35:6
**Angeles** [1] - 1:17, 47:7, 47:8
**animal** [1] - 47:9
**answer** [19] - 5:16, 15:22, 17:16, 21:4, 21:10, 22:11, 26:11, 26:19, 34:12, 35:4, 36:22, 36:23, 36:24, 37:12, 37:17, 37:21, 40:6, 43:18, 52:25
**answered** [2] - 28:15, 29:8, 38:15
**answering** [1] - 40:1
**answers** [1] - 55:21
**apologize** [1] - 45:21
**appear** [1] - 3:12
**APPEARANCES** [1] - 1:14
**appearances** [1] - 3:6
**applicable** [1] - 17:19
**application** [1] - 17:4
**appreciate** [1] - 51:14
**approach** [1] - 60:5
**appropriate** [1] - 47:18
**April** [5] - 5:3, 5:25, 6:5, 6:7, 53:12

## B

**background** [2] - 4:2, 52:24
**BARRANCO** [1] - 1:23
**Barranco** [1] - 3:14
**based** [8] - 8:17, 19:3, 22:20, 33:2, 41:5, 43:8, 45:12, 47:15
**basis** [2] - 4:5, 24:3
**Bates** [5] - 52:11, 53:9, 55:7, 55:18, 55:21
**Bates-label** [1] - 55:7

**argue** [4] - 10:7, 27:1, 27:5, 31:19
**argued** [1] - 13:17
**argument** [5] - 7:5, 7:6, 35:23, 56:17, 56:18
**arguments** [1] - 36:21
**arranging** [2] - 53:14, 53:15
**arrested** [2] - 16:10, 16:11
**aside** [2] - 12:8, 15:20
**aspect** [1] - 15:15
**assembled** [1] - 29:25
**assembles** [1] - 61:2
**assert** [1] - 4:23
**asserted** [1] - 16:3
**associate** [1] - 3:8
**assume** [3] - 13:22, 31:8, 50:8
**assuming** [6] - 13:3, 24:14, 24:17, 45:12, 47:2, 48:8
**assumption** [1] - 41:22
**assumptions** [1] - 46:24
**assure** [1] - 61:19
**attempted** [1] - 6:3
**attorneys** [1] - 27:21
**AUDIO** [1] - 1:12
**audio** [1] - 3:1
**August** [2] - 51:22, 52:2
**available** [7] - 11:3, 11:7, 13:25, 30:18, 44:19, 49:17, 64:14
**Avenue** [1] - 1:17
**aware** [2] - 9:2, 12:1

**Bates-labeled** [1] - 53:9

**Bates-stamped** [1] - 52:11

**bear** [1] - 53:11

**bears** [1] - 57:5

**beast** [1] - 47:12

**BEFORE** [1] - 1:11

**began** [1] - 3:2

**begin** [2] - 17:11, 41:15

**behalf** [1] - 3:11

**behind** [1] - 25:2

**best** [3] - 21:10, 60:4, 66:5

**between** [4] - 7:15, 7:24, 25:21, 45:23

**beyond** [4] - 16:20, 22:13, 33:8, 43:19

**binder** [1] - 5:9

**birth** [1] - 9:17

**bit** [1] - 56:23

**black** [1] - 24:14

**black-and-white** [1] - 24:14

**blindly** [1] - 4:4

**BOAZ** [1] - 1:18

**born** [2] - 4:8, 25:20

**Boulevard** [1] - 1:23

**boxes** [1] - 55:15

**Brasso** [1] - 56:10

**breadth** [1] - 30:15

**briefly** [3] - 4:2, 23:23, 52:24

**bring** [6] - 5:12, 35:14, 54:21, 55:3, 56:9, 64:5

**broader** [1] - 18:25

**broadest** [1] - 17:2

**brought** [2] - 36:12, 38:18

**BROWN** [1] - 1:4

**Brown** [1] - 3:12

**brown** [5] - 4:2, 4:6, 4:8, 4:13, 9:1

**brown's** [4] - 4:9, 4:11, 18:18, 27:24

**BRUCE** [1] - 1:22

**Bruce** [1] - 3:13

**bucket** [1] - 8:9

**buckets** [1] - 7:9

**buddy** [1] - 28:20

**burden** [2] - 50:2, 50:7

**burdensome** [2] - 27:7, 55:4

**business** [1] - 60:21

**buzzwords** [1] - 37:22

**BY** [1] - 2:1

## C

**calculate** [1] - 16:22

**calendar** [5] - 31:24, 38:20, 62:2, 63:6, 64:6

**California** [1] - 1:17

**cannot** [3] - 17:17, 21:4, 40:13

**capacity** [1] - 1:7

**care** [1] - 35:17, 40:22

**cares** [4] - 15:10, 35:9, 40:17, 40:21

**case** [44] - 4:5, 8:25, 9:6, 11:1, 13:9, 13:16, 13:20, 13:21, 13:24, 14:1, 14:22, 14:23, 14:25, 15:18, 18:15, 19:7, 21:25, 23:19, 23:20, 25:7, 26:10, 26:13, 26:16, 26:17, 26:25, 27:12, 27:21, 28:7, 28:9, 28:11, 29:6, 42:4, 46:5, 48:20, 52:7, 52:8, 56:9, 56:10, 56:12, 57:9, 61:3, 63:5

**Case** [1] - 3:4

**CASE** [1] - 1:2

**cases** [11] - 4:11, 13:16, 26:4, 26:12, 27:11, 27:18, 32:21, 32:22, 41:25, 46:7, 56:8

**catalog** [2] - 50:11, 50:16

**cataloged** [1] - 42:10

**categories** [1] - 8:11

**categorization** [2] - 20:12, 21:3

**categorize** [2] - 43:14, 44:3

**categorized** [1] - 50:24

**category** [2] - 20:7, 48:15

**caught** [1] - 60:6

**Center** [1] - 53:17

**central** [4] - 3:23, 4:1, 4:12, 4:17

**cents** [9] - 53:6, 55:10, 56:23, 58:24, 59:9, 61:4, 61:7, 61:9, 61:10

**certain** [1] - 11:3

**certainly** [2] - 12:21, 24:22

**certificate** [1] - 9:17

**certify** [1] - 66:3

**CFC** [1] - 26:13

**CFR** [1] - 18:24

**challenge** [1] - 4:3

**change** [1] - 35:5

**changed** [1] - 6:12

**charge** [3] - 55:10, 55:20, 59:1

**charged** [2] - 59:9

**charging** [3] - 53:6, 57:22, 57:23

**check** [2] - 59:16, 60:15

**checkbook** [1] - 29:19

**cheesy** [1] - 56:18

**chose** [1] - 26:10

**chosen** [1] - 29:6

**chronological** [1] - 20:17

**circumstances** [1] - 39:9

**cite** [1] - 56:8

**citing** [1] - 6:1

**citizen** [13] - 4:6, 4:8, 9:4, 9:7, 10:15, 12:1, 14:13, 25:20, 26:6, 28:17, 46:9, 50:9

**citizens** [11] - 4:14, 10:3, 11:20, 14:8, 14:11, 25:16, 30:10, 30:11, 34:21, 39:2, 41:14

**citizenship** [4] - 4:10, 14:1, 28:23, 41:24

**City** [1] - 12:11

**Civil** [1] - 3:5

**Civil-Judge** [1] - 3:5

**claim** [17] - 13:4, 14:9, 15:16, 18:5, 22:7, 24:10, 27:25, 28:2, 28:8, 28:14, 28:15, 28:23, 29:22, 33:3, 40:23, 40:24

**claiming** [1] - 13:3

**claims** [9] - 13:22, 18:18, 18:20, 25:11, 25:18, 26:22, 27:24, 28:5, 28:11

**clarified** [1] - 44:15

**clarify** [2] - 9:8, 13:11

**clarity** [2] - 54:22, 59:25

**clear** [8] - 4:5, 15:22, 34:16, 35:2, 52:13, 60:8, 61:6, 63:5

**clearly** [2] - 12:6, 26:5

**client** [6] - 9:1, 11:25, 29:25, 48:16, 61:25, 62:10

**client's** [2] - 12:17, 23:13

**co** [1] - 3:9

**co-counsel** [1] - 3:9

**collected** [2] - 29:25, 50:5

**color** [1] - 64:11

**comfortable** [2] - 19:10, 19:12

**coming** [1] - 52:15

**commencement** [1] - 3:2

**common** [2] - 4:12, 10:13

**comparable** [1] - 41:25

**compel** [4] - 47:16, 47:20, 48:21, 51:4

**compelled** [2] - 46:11, 50:20

**compelling** [3] - 42:20, 49:19, 51:8

**complaint** [12] - 11:18, 11:24, 11:25, 12:10, 12:16, 12:21, 16:25, 17:1, 19:6, 23:4, 23:16, 30:9

**complaints** [10] - 8:20, 9:24, 10:11, 10:16, 10:17, 15:22, 17:14, 22:15, 23:17, 43:4

**comply** [2] - 43:17, 52:23

**compromise** [1] - 54:3

**concede** [2] - 18:4, 32:3

**concern** [1] - 45:7

**concerns** [1] - 27:20

**concluded** [1] - 65:18

**conduct** [1] - 56:18

**confer** [3] - 6:3, 6:7, 27:3

**confidentiality** [1] - 31:9

**conflict** [1] - 6:13

**connection** [1] - 50:20

**contains** [1] - 49:2

**contempt** [2] - 41:1, 41:4

**context** [2] - 17:2, 20:4

**continue** [1] - 28:21

**copies** [9] - 55:21, 56:5, 56:9, 57:20, 57:22, 57:23, 59:2, 60:16

**copy** [4] - 5:9, 55:18, 59:9, 60:21

**copying** [1] - 60:10

**correct** [4] - 22:9, 59:18, 65:10

**cost** [10] - 53:11, 53:15, 56:21, 57:5, 57:17, 57:18, 59:17, 60:10, 60:25, 61:2

**costs** [5] - 56:15, 57:6, 57:11, 57:15, 58:20

**counsel** [3] - 3:6, 3:9, 22:21, 30:19, 34:13, 36:12, 42:9, 48:1

**counties** [1] - 44:17

**country** [2] - 18:21, 56:20

**county** [1] - 9:5

**County** [16] - 10:21, 11:10, 12:2, 12:11, 14:15, 14:16, 14:19, 20:25, 21:15, 26:14, 32:7, 38:24, 43:3, 47:4, 48:25, 50:24

**County's** [2] - 8:24, 30:4

**couple** [1] - 6:12

**coupled** [2] - 22:2, 24:17

**course** [13] - 9:4, 20:23, 25:16, 27:3, 28:25, 32:12, 32:19, 46:22, 51:18, 54:14, 54:25, 55:3, 65:12

**Court** [8] - 5:15, 6:11, 7:1, 7:10, 40:7, 56:10, 63:23

**COURT** [239] - 1:1, 3:16, 3:21, 5:4, 5:11, 5:13, 6:9, 6:18, 6:20, 7:4, 7:13, 7:16, 7:19, 7:22, 8:2, 8:6, 8:13, 8:18, 8:20, 9:11, 9:19, 9:22, 10:8, 10:10, 10:16, 10:23, 11:2, 11:5, 11:15, 11:20, 12:5, 12:8, 12:15, 12:20, 12:22, 13:1, 13:9, 13:14, 14:18, 14:24, 15:2, 15:8, 15:13, 15:15, 15:20, 15:25, 16:4, 16:8, 16:15, 16:20, 16:23,

3

17:3, 17:13, 17:21, 17:24, 18:2, 18:13, 19:2, 19:9, 19:14, 19:17, 19:19, 19:23, 20:5, 20:8, 20:11, 20:18, 20:20, 21:1, 21:5, 21:9, 21:13, 21:21, 21:24, 22:6, 22:11, 23:1, 23:11, 24:12, 24:16, 24:24, 29:7, 29:23, 30:6, 30:14, 31:1, 31:5, 31:7, 31:14, 31:17, 31:19, 31:22, 31:25, 32:10, 32:14, 32:24, 33:6, 34:24, 35:11, 35:16, 35:18, 35:20, 35:25, 36:7, 36:10, 36:14, 36:22, 36:25, 37:2, 37:6, 37:11, 37:13, 37:20, 37:25, 38:5, 38:7, 38:12, 38:14, 38:17, 38:19, 38:23, 39:1, 39:5, 39:13, 39:16, 39:18, 39:23, 39:25, 40:4, 40:10, 40:12, 40:15, 40:19, 40:22, 41:3, 41:9, 41:11, 42:1, 42:6, 42:16, 43:7, 43:13, 43:22, 44:1, 44:8, 44:11, 44:24, 45:5, 45:9, 45:12, 45:16, 45:19, 45:23, 46:10, 46:17, 47:4, 47:6, 47:8, 47:14, 47:23, 48:4, 48:6, 48:11, 48:14, 49:1, 49:4, 49:8, 49:11, 49:14, 49:18, 49:22, 50:11, 50:15, 50:22, 51:11, 51:19, 51:24, 52:3, 52:6, 52:21, 54:17, 54:19, 55:10, 55:13, 55:19, 56:23, 57:1, 57:4, 57:7, 57:10, 57:14, 57:19, 57:21, 58:1, 58:8, 58:14, 58:16, 58:18, 58:20, 58:25, 59:4, 59:7, 59:14, 59:16, 59:21, 59:23, 60:8, 60:12, 60:18, 60:20, 60:24, 61:2, 61:5, 61:7, 61:9, 61:13, 61:17, 61:20, 62:7, 62:10, 62:15, 62:17, 62:21, 62:24, 63:3, 63:5, 63:15, 63:17, 63:19, 64:2, 64:7, 64:19, 64:23, 65:2,

65:4, 65:6, 65:10, 65:13, 65:17
**COURTROOM** [1] - 3:4
  **crazy** [1] - 15:9
  **create** [1] - 33:8
  **creating** [2] - 48:5, 48:6
  **Creedle** [1] - 26:13
  **CRR** [2] - 2:1, 66:8
  **Crutcher** [1] - 3:8
  **CRUTCHER** [1] - 1:16
  **curious** [1] - 22:17
  **custody** [1] - 63:13
  **custom** [2] - 14:25, 15:19, 24:9
  **custom/practice** [1] - 28:8
  **cut** [1] - 28:25
  **cutoff** [2] - 51:20, 51:22
  **cynic** [1] - 18:12

## D

  **Dade** [9] - 26:13, 27:11, 27:13, 28:7, 28:9, 32:7, 32:8, 34:16, 48:25
  **Daniel** [1] - 3:10
  **DANIEL** [1] - 1:18
  **data** [17] - 10:2, 27:9, 34:17, 34:20, 40:4, 40:5, 40:13, 41:6, 41:7, 41:24, 43:6, 44:13, 44:22, 46:19, 47:23, 51:4, 52:15
  **database** [2] - 45:4, 47:1
  **databases** [3] - 34:5, 34:6, 44:13
  **DATE** [1] - 66:8
  **date** [3] - 6:8, 6:12, 39:13
  **days** [19] - 4:25, 5:19, 7:2, 7:8, 9:13, 9:19, 9:21, 16:18, 16:19, 29:1, 53:14, 54:8, 61:24, 65:4, 65:5, 65:6
  **dead** [1] - 65:1
  **deadline** [1] - 4:25
  **deadlines** [1] - 51:10
  **dealing** [2] - 38:1, 41:17
  **December** [1] - 31:24
  **decline** [1] - 39:20

**declined** [4] - 38:2, 38:20, 38:21, 38:23
**declines** [1] - 10:4
**Defendant** [39] - 3:25, 4:6, 4:19, 4:22, 5:7, 6:3, 10:3, 10:5, 22:17, 23:25, 24:5, 25:8, 25:18, 26:3, 26:9, 26:10, 26:13, 26:17, 26:18, 26:19, 26:23, 26:24, 27:4, 27:13, 28:13, 28:18, 44:15, 44:22, 44:23, 49:24, 52:9, 52:18, 53:11, 54:25, 57:5, 58:21, 58:22, 61:24
  **defendant** [2] - 1:8, 28:11
  **DEFENDANT** [1] - 1:22
  **Defendant's** [3] - 4:3, 4:7, 22:3
  **defending** [1] - 57:9
  **defense** [10] - 13:4, 16:4, 16:6, 16:15, 16:17, 22:21, 28:19, 29:14, 34:13, 36:12
  **defined** [1] - 16:7
  **defining** [1] - 30:12
  **degree** [1] - 46:23
  **delayed** [1] - 28:3
  **delays** [1] - 61:11
  **demonstrate** [2] - 25:1, 32:20
  **denied** [2] - 26:19, 26:24
  **denying** [2] - 14:22, 49:4
  **Department** [1] - 43:3
  **departments** [1] - 47:3
  **depose** [3] - 28:2, 49:16, 61:25
  **deposed** [1] - 28:19
  **deposition** [6] - 18:19, 45:6, 51:18, 54:13, 63:16, 64:13
  **depositions** [5] - 51:11, 51:21, 64:9, 64:16, 65:8
  **deputies** [2] - 28:18, 28:19
  **DEPUTY** [1] - 3:4
  **deputy** [1] - 28:17
  **described** [2] - 6:4, 29:16
  **despite** [2] - 4:9, 24:2
  **detail** [1] - 24:25

**detain** [1] - 38:2
**detained** [18] - 4:6, 9:1, 9:15, 10:17, 10:21, 12:2, 12:6, 20:24, 24:18, 29:15, 30:1, 31:24, 33:18, 35:7, 35:12, 40:17, 48:14, 48:15
  **detainee** [2] - 17:8, 17:10
  **detainees** [3] - 17:18, 30:3, 37:24
  **detainer** [18] - 4:4, 4:7, 9:3, 9:8, 12:25, 13:2, 13:13, 13:23, 16:7, 16:21, 24:1, 25:14, 25:22, 26:6, 29:1, 43:18, 46:18
  **detainers** [24] - 4:19, 8:21, 9:25, 10:14, 13:17, 14:5, 14:6, 14:7, 21:19, 22:14, 22:16, 22:23, 38:2, 38:19, 38:20, 38:21, 39:8, 40:20, 41:23, 42:22, 43:1, 43:2, 43:5, 44:22
  **detaining** [1] - 11:20
  **detention** [3] - 8:24, 9:11, 28:16
  **determination** [3] - 13:25, 14:17, 25:5
  **determine** [1] - 41:15
  **develop** [1] - 27:24
  **device** [1] - 60:23
  **difference** [3] - 45:23, 57:4, 58:10
  **different** [23] - 3:24, 4:18, 7:24, 8:15, 13:15, 20:25, 28:6, 28:11, 34:7, 36:9, 37:16, 39:15, 41:16, 43:6, 45:2, 45:15, 45:18, 45:25, 46:2, 47:9, 48:2, 50:25, 59:4
  **difficult** [2] - 23:7, 34:3
  **DIGITAL** [1] - 1:12
  **digital** [1] - 3:1
  **diligent** [1] - 61:18
  **diminish** [1] - 18:18
  **direct** [1] - 41:1
  **directing** [1] - 40:7
  **direction** [1] - 40:7
  **directly** [1] - 13:21
  **disagree** [1] - 33:2
  **disagreeing** [1] - 51:2
  **disclose** [2] - 17:8,

30:23
  **discovery** [12] - 3:17, 15:5, 33:11, 51:10, 51:20, 51:22, 52:8, 56:19, 62:2, 63:2, 63:6, 64:10
  **DISCOVERY** [1] - 1:11
  **Discovery** [1] - 3:2
  **discrepancy** [1] - 25:21
  **discussion** [1] - 37:7
  **dismiss** [5] - 26:10, 26:14, 26:18, 26:24, 29:2, 29:5, 29:6
  **dispute** [3] - 33:14, 52:17, 64:5
  **DISTRICT** [2] - 1:1, 1:1
  **District** [3] - 56:10, 56:11, 56:12
  **DIVISION** [1] - 1:2
  **docket** [2] - 61:24, 62:3
  **document** [4] - 7:11, 27:10, 48:24, 58:13
  **documentation** [1] - 40:18
  **documents** [38] - 11:1, 11:3, 11:6, 11:7, 11:8, 13:6, 14:4, 16:7, 16:12, 17:6, 21:2, 29:16, 30:21, 39:2, 41:14, 50:1, 50:2, 52:19, 53:4, 53:8, 53:18, 54:10, 54:14, 54:15, 54:24, 55:1, 55:6, 55:15, 55:17, 56:2, 56:4, 56:15, 58:10, 64:10, 65:9
  **done** [10] - 15:1, 15:9, 15:10, 15:12, 17:16, 18:5, 18:6, 32:5, 38:10
  **down** [2] - 37:15, 43:3
  **download** [1] - 53:18
  **draft** [1] - 6:4
  **dragging** [1] - 34:11
  **drive** [6] - 53:17, 53:20, 55:3, 58:14
  **drives** [1] - 51:21
  **dropping** [1] - 34:12
  **due** [4] - 5:18, 5:20, 5:21, 7:3
  **Dunn** [1] - 3:8
  **DUNN** [1] - 1:16
  **duplicate** [2] - 58:4, 60:9

**duplicates** [1] - 56:21
**duplication** [3] - 56:15, 57:21
**during** [6] - 9:2, 22:1, 24:18, 24:24, 33:7, 33:9

## E

**easier** [5] - 7:12, 31:1, 36:4, 36:5, 50:13
**easily** [2] - 19:5, 19:25
**East** [1] - 1:23
**easy** [8] - 19:11, 19:20, 34:11, 39:7, 42:3, 42:9, 43:12, 50:12
**Edwards** [1] - 66:7
**EDWARDS** [2] - 2:1, 66:8
**EDWIN** [1] - 1:11
**effect** [1] - 35:8
**effectively** [1] - 54:1
**effectuate** [1] - 26:6
**effectuating** [1] - 4:4
**efficient** [2] - 21:7, 21:8
**either** [1] - 12:9
**electronic** [11] - 52:8, 52:11, 52:15, 52:18, 53:8, 53:9, 53:18, 54:23, 55:7, 56:4, 58:25
**email** [8] - 5:24, 53:5, 53:19, 54:2, 54:9, 55:1, 55:6, 61:8
**emailed** [2] - 53:13, 53:23
**employees** [1] - 55:5
**employers** [1] - 56:19
**encompasses** [1] - 24:22
**encompassing** [1] - 17:25
**end** [4] - 6:19, 9:13, 9:14, 39:18
**ended** [1] - 54:12
**enforce** [1] - 10:4
**entail** [1] - 51:6
**enter** [1] - 27:19
**entire** [1] - 36:16
**entirely** [1] - 58:21
**entirety** [1] - 18:21
**entities** [1] - 18:16
**entitled** [8] - 4:13,

15:22, 19:15, 19:18, 27:2, 51:3, 52:10, 66:5
**entry** [1] - 27:14
**equally** [1] - 26:17
**equivalent** [1] - 25:22
**error** [1] - 9:18
**especially** [2] - 33:12, 58:21
**ESQ** [3] - 1:16, 1:18, 1:22
**essentially** [6] - 9:17, 10:19, 23:25, 26:7, 36:21
**establish** [1] - 4:14
**established** [2] - 23:20, 64:21
**evidence** [7] - 4:5, 13:25, 14:1, 24:2, 26:4, 27:15, 34:20
**example** [8] - 8:25, 12:8, 14:8, 14:12, 25:3, 25:12, 27:11, 32:24, 46:8, 49:25, 50:8, 53:5
**excuse** [6] - 9:14, 11:18, 12:11, 16:9, 22:2, 36:5
**excused** [1] - 65:16
**executed** [3] - 4:24, 8:1, 39:14
**exist** [3] - 44:14, 46:24, 46:25
**existence** [1] - 15:3
**exists** [2] - 47:1, 48:3
**expedition** [1] - 18:9
**explain** [2] - 14:19, 20:8
**extension** [1] - 5:7
**extent** [12] - 23:3, 32:16, 37:9, 42:17, 44:14, 45:5, 47:1, 48:23, 49:24, 50:18, 51:13, 51:17
**extracting** [1] - 41:16
**extraneously** [1] - 23:22

## F

**facilitate** [1] - 7:10
**fact** [11] - 9:2, 10:11, 18:16, 22:3, 23:12, 23:22, 25:6, 39:19, 49:20, 56:8, 60:8
**facts** [1] - 29:22
**fair** [3] - 32:8, 61:1, 63:3

**fall** [1] - 50:18
**falls** [1] - 23:3
**far** [3] - 28:3, 33:12, 33:23
**fashion** [1] - 55:18
**favorite** [1] - 55:8
**February** [1] - 5:18
**Fed's** [2] - 28:24
**federal** [8] - 5:1, 5:18, 8:16, 16:2, 17:4, 18:23, 26:15, 30:3
**Federal** [5] - 16:13, 28:10, 30:22, 63:21
**Feds** [4] - 28:20, 28:21, 39:22, 40:18
**few** [2] - 6:11, 46:20
**fight** [1] - 62:20
**figure** [3] - 39:8, 39:25, 41:20
**file** [10] - 12:10, 20:24, 27:10, 29:4, 30:9, 34:12, 49:2, 62:5, 62:16, 63:19
**filed** [13] - 4:3, 8:23, 9:5, 16:24, 19:20, 20:9, 26:10, 26:19, 33:7, 46:15, 61:24, 62:2, 62:9
**filings** [1] - 4:9
**finally** [4] - 5:1, 6:23, 9:16, 65:1
**findable** [2] - 50:19
**fine** [3] - 38:7, 60:6, 64:2
**firm** [3] - 3:14, 58:3, 59:9
**firmly** [1] - 23:20
**firms** [2] - 18:15, 18:21
**first** [9] - 3:22, 14:21, 16:19, 22:11, 22:12, 32:18, 34:1, 46:22, 55:9
**fishing** [1] - 18:9
**fit** [1] - 48:15
**five** [1] - 50:4
**Flagler** [1] - 1:19
**flip** [2] - 7:24, 8:4
**flipping** [1] - 7:15
**FLORIDA** [2] - 1:1, 1:19
**Florida** [4] - 1:4, 1:20, 1:24, 3:11
**focus** [4] - 7:9, 10:8, 13:21, 60:1
**focused** [1] - 27:6
**focusing** [1] - 13:19
**folks** [1] - 13:16
**follow** [2] - 58:20, 63:6

**follows** [1] - 3:3
**followup** [1] - 5:25
**FOR** [2] - 1:16, 1:22
**force** [1] - 25:2
**foregoing** [1] - 66:3
**form** [5] - 13:13, 25:22, 47:2, 53:9, 55:7
**format** [1] - 44:13
**Fort** [4] - 1:24, 3:15, 53:17, 55:3
**forth** [2] - 14:2, 46:3
**forward** [5] - 60:2, 60:18, 63:20, 64:9
**FOUNDATION** [1] - 1:19
**four** [9] - 3:24, 4:16, 16:12, 17:23, 17:24, 22:18, 29:16, 39:20, 41:20
**fourth** [1] - 52:4
**frankly** [4] - 11:7, 16:10, 25:6, 31:19
**free** [1] - 55:1
**Friday** [1] - 53:12
**FROM** [1] - 1:12
**front** [3] - 24:9, 29:5, 37:3
**full** [1] - 54:20
**fully** [1] - 52:23
**fundamental** [2] - 40:2, 51:3
**future** [5] - 51:10, 53:2, 54:6, 59:25

## G

**gain** [1] - 14:3
**gee** [3] - 28:10, 38:10, 62:19
**generally** [1] - 58:8
**GIBSON** [1] - 1:16
**Gibson** [1] - 3:8
**GISA** [1] - 1:23
**Gisa** [1] - 3:14
**GIUFFREDA** [1] - 1:22
**Giuffreda** [1] - 3:14
**given** [8] - 18:14, 23:11, 28:1, 33:12, 48:20
**Government** [3] - 16:13, 28:10, 30:22
**government** [1] - 17:7
**Government's** [1] - 28:10
**Grand** [1] - 1:17
**grandmother** [1] -

6:14
**grant** [4] - 5:4, 35:1, 42:16, 64:3
**granted** [4] - 34:24, 35:25, 41:12, 43:23
**great** [1] - 5:11
**grievance** [7] - 14:13, 16:25, 19:6, 20:3, 20:12, 34:14, 46:15
**grievances** [33] - 4:9, 8:23, 9:5, 10:19, 10:20, 10:21, 11:9, 11:12, 11:16, 14:4, 14:7, 14:10, 15:23, 17:14, 19:22, 19:23, 20:9, 20:24, 21:14, 22:15, 22:22, 22:25, 23:5, 25:4, 30:18, 34:7, 34:18, 42:12, 42:23, 43:1, 44:21, 46:13
**Gross** [1] - 56:12
**grounds** [2] - 10:6
**guess** [5] - 24:12, 28:9, 28:24, 29:17, 30:25
**guessed** [1] - 29:3
**guy** [2] - 16:14, 40:17
**guys** [1] - 62:19

## H

**half** [3] - 22:18, 54:4, 59:17
**handful** [1] - 32:21
**handy** [1] - 37:15
**happy** [4] - 27:3, 27:8, 27:16, 32:12
**hard** [4] - 23:12, 52:14, 55:18, 56:5
**hard-copy** [1] - 55:18
**harder** [1] - 19:21
**harsh** [1] - 59:11
**hear** [1] - 14:18
**heard** [4] - 12:1, 22:21, 59:21, 62:14
**HEARING** [1] - 1:11
**hearing** [12] - 3:17, 4:1, 4:12, 5:2, 6:7, 6:9, 6:10, 6:15, 6:24, 62:19, 63:2, 63:7
**Hearing** [1] - 3:2
**held** [7] - 9:20, 16:16, 16:20, 21:18, 41:1, 41:3, 43:5
**help** [3] - 13:7, 14:5,

14:8
**helps** [1] - 8:16
**hereby** [1] - 66:3
**high** [1] - 56:24
**highly** [1] - 10:7
**hold** [8] - 16:14, 23:13, 24:16, 28:21, 30:6, 36:22, 49:11
**holding** [1] - 28:22
**holds** [4] - 17:8, 21:19, 22:1
**Holzberg** [1] - 56:8
**Honor** [67] - 3:7, 3:13, 3:20, 3:23, 4:2, 4:11, 4:21, 5:9, 5:16, 7:8, 8:8, 8:9, 9:23, 10:7, 12:4, 13:7, 14:12, 22:5, 23:9, 23:14, 23:19, 23:23, 25:12, 26:9, 27:1, 27:5, 32:11, 32:20, 33:2, 33:23, 34:1, 34:23, 36:4, 36:6, 41:18, 42:22, 44:6, 44:10, 44:20, 45:17, 45:21, 46:1, 46:12, 46:20, 47:5, 48:22, 49:7, 49:16, 49:23, 50:6, 50:21, 51:9, 52:1, 52:13, 52:20, 52:25, 54:22, 59:15, 59:18, 59:24, 61:4, 61:18, 61:23, 62:12, 63:21, 64:20, 65:15
**Honor's** [1] - 54:4
**HONORABLE** [1] - 1:11
**honored** [1] - 4:19
**honors** [1] - 23:25
**hop** [1] - 27:12
**hope** [1] - 9:10
**hoping** [2] - 7:25, 8:8
**hour** [1] - 53:23
**hours** [3] - 16:18, 16:22, 53:19
**housed** [1] - 55:2
**houses** [1] - 17:7

## I

**I-200** [1] - 16:12
**I-203** [1] - 16:12
**I-205** [1] - 16:12
**I-247** [3] - 13:13, 16:12, 25:21
**ICE** [11] - 4:4, 4:7, 9:3, 9:8, 9:16, 10:3, 16:13, 24:1, 25:14, 34:20, 43:3

**ICE's** [1] - 4:19
**idea** [1] - 20:13
**identical** [2] - 5:14, 27:13
**identify** [3] - 30:9, 35:11, 35:12
**identifying** [2] - 30:21, 46:2
**immediately** [1] - 63:12
**important** [3] - 3:21, 34:15, 51:13
**improper** [2] - 53:13, 53:25
**inaccessible** [1] - 52:14
**inaudible** [22] - 8:7, 15:14, 16:1, 16:17, 17:6, 17:7, 21:22, 28:16, 29:14, 29:20, 30:19, 32:10, 37:23, 39:3, 39:13, 46:17, 51:24, 52:9, 56:21, 57:20, 58:5, 59:3
**inaudible]** [2] - 39:12, 57:3
**INC** [1] - 1:19
**incarcerated** [1] - 62:10
**incidents** [1] - 33:4
**include** [1] - 38:4
**included** [1] - 35:4
**including** [3] - 9:25, 14:6, 17:6
**incorrect** [1] - 50:22
**incurred** [1] - 56:16
**indeed** [1] - 12:13
**independent** [1] - 36:2
**indicating** [1] - 4:9
**individual** [12] - 11:8, 11:11, 12:1, 16:10, 25:14, 29:15, 33:18, 33:20, 34:7, 46:7, 46:8, 46:9
**individually** [1] - 43:18
**individuals** [10] - 8:23, 10:20, 12:23, 13:11, 14:7, 25:14, 28:3, 41:23, 46:3, 49:16
**individuals'** [1] - 46:6
**information** [40] - 4:13, 4:18, 9:16, 17:9, 22:1, 23:9, 24:2, 24:3, 27:2, 27:17, 27:22, 27:23, 28:24, 30:21, 30:23, 32:17, 33:7,

37:8, 37:15, 39:21, 41:5, 41:19, 42:8, 42:10, 42:11, 42:17, 43:2, 43:11, 43:14, 44:9, 44:18, 46:4, 46:11, 48:18, 49:3, 49:17, 49:19, 50:17, 51:14, 51:17
**informed** [1] - 64:1
**informing** [1] - 5:21
**initial** [1] - 4:21
**injury** [1] - 9:19
**inmate** [4] - 20:10, 20:11, 20:17
**inmates** [2] - 20:23, 21:18
**instance** [1] - 11:24, 15:11, 60:5
**instances** [2] - 4:14, 25:13
**insufficient** [2] - 24:23, 33:24
**interest** [2] - 18:15, 18:21
**interesting** [2] - 30:4, 56:7
**interim** [2] - 6:20, 6:22
**interpret** [1] - 42:17
**interrogatories** [4] - 6:21, 8:4, 8:5, 37:20
**interrogatory** [8] - 36:14, 37:5, 37:16, 37:17, 37:21, 38:4, 45:19, 47:25
**Interrogatory** [5] - 36:15, 43:19, 45:22, 45:23, 45:24
**investigate** [4] - 24:8, 28:14, 28:15, 28:23
**investigated** [1] - 25:18
**involve** [2] - 44:4, 44:20
**involves** [1] - 52:7
**involving** [3] - 4:14, 13:2, 15:23
**irrelevant** [2] - 18:6, 42:4
**issue** [19] - 3:21, 3:23, 4:1, 4:12, 4:18, 6:6, 20:21, 29:9, 37:23, 41:17, 42:7, 50:17, 52:7, 54:5, 57:15, 61:23, 63:10, 63:14, 64:8
**issued** [3] - 10:15, 16:6, 25:15
**issues** [3] - 10:11,

29:8, 62:4
**it'd** [3] - 42:9, 50:12, 59:4
**it'll** [3] - 32:5, 43:12, 49:12

## J

**Jail** [1] - 20:25
**jail** [2] - 21:18, 63:11
**January** [2] - 31:24, 37:18
**job** [2] - 28:20, 28:24
**joined** [1] - 3:9
**JOLLY** [145] - 1:22, 1:22, 3:13, 14:23, 14:25, 15:4, 15:9, 15:14, 15:17, 15:24, 16:1, 16:5, 16:9, 16:17, 16:22, 17:2, 17:4, 17:16, 17:22, 17:25, 18:3, 18:14, 19:8, 19:10, 19:15, 19:18, 19:22, 20:2, 20:7, 20:10, 20:14, 20:19, 20:22, 21:4, 21:6, 21:12, 21:17, 21:22, 22:24, 24:15, 24:21, 28:5, 29:10, 30:2, 30:12, 30:20, 31:3, 31:6, 31:13, 31:16, 31:18, 31:21, 31:23, 32:2, 35:7, 35:14, 35:17, 35:19, 35:24, 37:4, 37:10, 37:12, 37:19, 37:21, 38:6, 38:10, 38:13, 38:16, 38:18, 38:22, 38:25, 39:3, 39:6, 39:15, 39:17, 39:19, 39:24, 40:2, 40:6, 40:11, 40:13, 40:16, 40:21, 40:23, 41:7, 41:10, 42:2, 42:15, 43:12, 43:21, 43:25, 45:3, 45:8, 45:11, 45:15, 48:3, 48:5, 49:21, 51:22, 55:8, 55:12, 55:14, 55:20, 56:25, 57:2, 57:6, 57:8, 57:11, 57:17, 57:20, 57:25, 58:2, 58:12, 58:15, 58:17, 58:19, 58:24, 59:1, 59:6, 59:13, 59:15, 60:11, 60:14, 60:19, 60:23, 61:1, 61:4, 61:15, 62:6, 62:9, 62:13, 62:16, 62:18, 62:22, 62:25, 63:13,

63:16, 63:18, 63:24, 64:18, 64:25, 65:3, 65:5, 65:14, 65:16
**Jolly** [12] - 3:13, 3:14, 5:21, 6:12, 33:17, 37:3, 53:3, 53:13, 53:20, 53:23, 54:7, 54:16
**Jolly's** [4] - 27:20, 38:3, 41:20, 55:5
**JONATHAN** [1] - 1:16
**Jonathan** [2] - 3:8, 18:4
**Judge** [9] - 3:5, 18:12, 19:10, 26:12, 26:14, 40:25, 45:3, 58:12, 65:14
**JUDGE** [1] - 1:12
**judge** [1] - 29:5
**June** [1] - 1:5
**jury** [2] - 40:19, 40:22

## K

**keep** [6] - 34:6, 41:19, 44:18, 47:3, 47:23, 55:2
**kept** [2] - 21:2, 42:8
**KEY** [1] - 1:2
**Key** [1] - 12:11
**kind** [11] - 5:7, 5:17, 5:23, 12:21, 21:16, 23:15, 29:3, 30:4, 34:6, 45:6, 53:25
**kinds** [1] - 15:9
**knowledge** [3] - 24:17, 47:18, 47:25

## L

**label** [1] - 55:7
**labeled** [1] - 53:9
**large** [1] - 43:1
**last** [7] - 11:2, 16:18, 25:17, 31:23, 39:20, 51:20, 61:15
**late** [2] - 7:2, 7:8
**Lauderdale** [4] - 1:24, 3:15, 53:17, 55:3
**law** [5] - 3:14, 18:15, 18:21, 58:3, 59:5
**Law** [1] - 53:16
**lawsuit** [3] - 19:20, 27:24, 37:23
**lawyer** [1] - 58:3
**lawyers** [1] - 18:14

**learn** [2] - 27:11, 47:11
**learned** [2] - 29:3, 29:4
**learns** [1] - 24:4
**least** [3] - 11:24, 48:21, 51:8
**leave** [1] - 9:18
**legal** [2] - 31:9, 56:17
**less** [1] - 16:18
**letter** [1] - 5:20, 53:19
**leveled** [2] - 11:9, 11:18
**liability** [7] - 4:15, 18:7, 25:7, 25:10, 25:11, 25:24, 33:3
**likely** [3] - 12:16, 12:18, 14:13
**limit** [1] - 61:3
**limited** [3] - 36:1, 48:10, 48:11
**line** [1] - 41:23
**lines** [1] - 26:3
**LISA** [2] - 2:1, 66:8
**listed** [5] - 4:8, 25:19, 25:20, 39:2, 41:13
**listen** [1] - 55:23
**listened** [1] - 18:3
**listing** [1] - 41:22
**litigating** [1] - 18:16
**litigation** [1] - 57:4
**live** [3] - 26:16, 26:17, 26:22
**LLP** [1] - 1:16
**loath** [1] - 51:4
**local** [2] - 6:1, 17:7
**logs** [1] - 9:25
**look** [9] - 8:3, 19:4, 20:13, 21:3, 23:5, 23:16, 26:1, 34:4
**looked** [2] - 17:13, 63:8
**looking** [6] - 18:17, 33:18, 34:7, 45:20, 50:7, 51:5
**loose** [1] - 28:25
**Los** [3] - 1:17, 47:7, 47:8
**lost** [1] - 26:14
**love** [1] - 54:25
**lumped** [1] - 32:7

**M**

**machine** [1] - 55:16
**MAGISTRATE** [1] - 1:12

**main** [1] - 42:3
**maintain** [1] - 45:13
**maintains** [1] - 4:22
**major** [1] - 19:13
**manageable** [1] - 30:17
**manner** [3] - 42:8, 43:15, 53:4
**manually** [1] - 44:21
**March** [2] - 5:19, 7:3
**marshal** [1] - 21:19
**materials** [3] - 5:9, 24:22, 61:2
**matter** [8] - 4:21, 15:11, 24:1, 24:3, 26:4, 41:8, 47:8, 66:5
**MCSO** [2] - 39:2, 41:14
**mean** [12] - 8:21, 10:12, 10:16, 10:18, 10:19, 11:21, 18:4, 19:8, 30:12, 44:25, 51:4
**means** [1] - 8:22
**meet** [3] - 6:3, 6:7, 27:3
**memory** [1] - 24:21
**mentioned** [3] - 7:1, 28:12, 34:16
**mentioning** [1] - 36:17
**merits** [4] - 4:24, 7:6, 7:8, 9:23
**Miami** [13] - 1:4, 1:20, 26:13, 27:11, 27:13, 28:7, 28:9, 32:7, 32:8, 34:16, 47:8, 48:25, 53:17
**Miami-Dade** [9] - 26:13, 27:11, 27:13, 28:7, 28:9, 32:7, 32:8, 34:16, 48:25
**might** [10] - 12:24, 20:16, 22:20, 29:3, 36:4, 40:22, 41:7, 42:25, 51:6, 63:10
**mind** [1] - 36:6
**minimum** [1] - 65:8
**mischaracterizatio n** [1] - 40:3
**misled** [1] - 56:22
**mistake** [2] - 12:25, 54:1
**mistakes** [1] - 10:14
**modeled** [1] - 46:23
**moment** [2] - 4:24, 44:6
**Monell** [2] - 4:15, 14:23, 15:19, 18:4, 18:5, 22:7, 25:7, 25:9,

25:24, 32:21, 33:2, 40:23
**money** [1] - 54:22
**monitored** [1] - 19:25
**Monroe** [11] - 10:21, 11:9, 12:2, 12:11, 20:24, 21:15, 30:4, 32:7, 43:3, 47:4, 48:25
**month** [1] - 33:9
**months** [10] - 22:18, 31:25, 32:25, 33:5, 35:22, 41:20
**morning** [2] - 6:23, 53:12
**most** [6] - 3:21, 12:18, 27:6, 44:17, 47:25, 48:12
**motion** [10] - 29:4, 34:24, 35:25, 61:24, 62:1, 62:11, 62:13, 63:9, 63:19, 64:3
**motions** [1] - 63:9
**move** [7] - 6:13, 6:14, 26:10, 26:18, 29:2, 51:24, 54:5
**moved** [4] - 6:11, 6:16, 26:14, 26:24
**moving** [1] - 25:2
**MR** [251] - 3:7, 3:10, 3:11, 3:13, 3:20, 3:23, 5:6, 5:12, 5:14, 6:10, 6:19, 6:22, 7:6, 7:14, 7:17, 7:20, 7:23, 8:3, 8:8, 8:14, 8:19, 8:22, 9:13, 9:21, 9:23, 10:9, 10:12, 10:19, 10:24, 11:4, 11:6, 11:17, 11:22, 12:7, 12:13, 12:18, 12:21, 12:23, 13:6, 13:10, 13:15, 14:23, 14:25, 15:4, 15:9, 15:14, 15:17, 15:24, 16:1, 16:5, 16:9, 16:17, 16:22, 17:2, 17:4, 17:16, 17:22, 17:25, 18:3, 18:14, 19:8, 19:10, 19:15, 19:18, 19:22, 20:2, 20:7, 20:10, 20:14, 20:19, 20:22, 21:4, 21:6, 21:12, 21:17, 21:22, 22:5, 22:8, 22:12, 22:24, 23:6, 23:14, 24:15, 24:21, 25:1, 28:5, 29:10, 30:2, 30:12, 30:20, 31:3, 31:6, 31:13, 31:16, 31:18,

21:21, 31:23, 32:2, 32:11, 32:18, 33:2, 33:14, 35:7, 35:10, 35:14, 35:17, 35:19, 35:24, 36:4, 36:8, 36:11, 36:15, 36:24, 37:1, 37:4, 37:10, 37:12, 37:19, 37:21, 38:3, 38:6, 38:10, 38:13, 38:16, 38:18, 38:22, 38:25, 39:3, 39:6, 39:15, 39:17, 39:19, 39:24, 40:2, 40:6, 40:11, 40:13, 40:16, 40:21, 40:23, 41:7, 41:10, 41:18, 42:2, 42:15, 42:22, 43:12, 43:21, 43:25, 44:2, 44:10, 44:12, 45:3, 45:8, 45:11, 45:15, 45:17, 45:20, 46:1, 46:12, 46:20, 47:5, 47:7, 47:10, 47:21, 48:3, 48:5, 48:10, 48:12, 48:22, 49:2, 49:7, 49:9, 49:12, 49:15, 49:21, 49:23, 50:14, 50:21, 51:9, 51:16, 51:22, 52:1, 52:4, 52:7, 52:24, 54:18, 54:20, 55:8, 55:12, 55:14, 55:20, 56:25, 57:2, 57:6, 57:8, 57:11, 57:17, 57:20, 57:25, 58:2, 58:12, 58:15, 58:17, 58:19, 58:24, 59:1, 59:6, 59:13, 59:15, 59:18, 59:22, 59:24, 60:11, 60:14, 60:19, 60:23, 61:1, 61:4, 61:6, 61:8, 61:10, 61:15, 61:18, 61:22, 62:6, 62:9, 62:12, 62:13, 62:16, 62:18, 62:22, 62:25, 63:4, 63:13, 63:16, 63:18, 63:21, 63:24, 63:25, 64:4, 64:18, 64:20, 64:25, 65:3, 65:5, 65:7, 65:12, 65:14, 65:15, 65:16
**must** [1] - 54:1

**N**

**name** [6] - 3:7, 3:13, 9:3, 9:8, 17:9, 25:15
**names** [1] - 30:20, 34:20, 46:3

**narrow** [2] - 29:24, 30:16
**native** [1] - 47:1
**nature** [2] - 47:11, 48:20
**near** [1] - 52:15
**nearly** [1] - 52:10
**necessarily** [1] - 24:12
**necessary** [1] - 64:10
**necessity** [1] - 24:25
**need** [11] - 18:20, 25:1, 33:12, 35:11, 35:12, 43:19, 49:5, 64:11, 64:15, 64:23, 65:10
**needed** [1] - 54:14
**never** [7] - 12:10, 15:11, 38:10, 52:13, 52:14, 58:2, 58:3
**New** [2] - 47:6, 56:11
**next** [6] - 31:3, 44:1, 44:2, 44:3, 52:3, 56:1
**night** [1] - 56:1
**NO** [1] - 1:2
**noncitizen** [1] - 12:5
**normal** [1] - 63:5
**normally** [3] - 47:24, 53:10, 63:8
**note** [3] - 4:21, 12:4, 36:16
**NOTE** [1] - 3:1
**nothing** [2] - 10:24, 18:9
**notice** [1] - 62:16
**number** [23] - 10:3, 16:1, 21:17, 21:20, 21:22, 22:19, 27:21, 28:5, 38:1, 38:19, 39:1, 39:14, 39:18, 41:13, 41:16, 41:23, 42:25, 43:1, 46:14, 50:23, 50:24, 55:21
**numbers** [2] - 34:22, 38:18
**numerous** [1] - 4:9
**nuts** [1] - 51:21

**O**

**objected** [1] - 10:5
**objecting** [1] - 56:20
**objection** [23] - 8:17, 10:25, 14:20, 16:3, 18:23, 18:24, 18:25, 27:15, 27:18, 31:9, 36:11, 36:13, 36:18, 36:19, 36:20, 37:14,

37:21, 39:3, 39:4, 42:3, 44:5, 49:12
**objections** [9] - 3:25, 4:23, 7:9, 8:10, 8:11, 8:12, 8:15, 9:24, 36:9
**obligated** [1] - 56:15
**obligation** [1] - 53:11
**obvious** [2] - 14:15, 14:16
**obviously** [6] - 19:19, 25:5, 43:11, 43:15, 45:6, 45:9
**occur** [2] - 10:14, 61:11
**occurred** [1] - 15:23
**occurs** [1] - 60:20
**OF** [2] - 1:1, 1:19
**offered** [2] - 54:4, 54:9
**office** [1] - 58:6
**Office** [5] - 10:22, 11:10, 12:3, 12:12, 19:8
**official** [1] - 1:7
**often** [4] - 11:21, 13:8, 14:10, 32:19
**old** [1] - 29:3
**Oliver** [1] - 53:16
**once** [1] - 9:16
**one** [31] - 7:11, 11:22, 11:24, 16:1, 21:3, 27:6, 28:5, 28:12, 29:1, 33:9, 33:10, 33:24, 34:2, 41:15, 42:20, 42:23, 43:23, 44:1, 44:2, 44:3, 48:5, 48:7, 49:23, 50:23, 51:9, 52:3, 60:17, 61:22, 62:7, 62:20
**one-year** [2] - 33:9, 33:10
**ones** [4] - 7:24, 17:20, 34:19, 55:16
**opportunity** [1] - 26:18
**order** [24] - 4:14, 11:13, 27:14, 27:19, 27:20, 31:1, 31:2, 32:4, 33:3, 40:8, 43:8, 43:17, 43:18, 47:24, 52:18, 52:25, 53:22, 54:3, 59:12, 62:23, 63:11, 63:18, 63:22, 64:5
**ordered** [4] - 31:8, 42:12, 42:18, 64:21
**ordering** [2] - 42:19, 48:18
**organizations** [1] -

56:20
**original** [1] - 44:13
**originally** [1] - 6:15
**otherwise** [3] - 7:14, 17:8
**overbroad** [2] - 48:9, 48:19
**overnight** [1] - 55:23
**overruled** [1] - 31:8
**own** [3] - 4:7, 25:19, 60:21

## P

**P.A** [1] - 1:23
**p.m** [1] - 1:6
**package** [1] - 53:20
**Page** [1] - 37:1
**page** [5] - 7:25, 53:6, 55:10, 59:10, 61:3
**Pages** [1] - 1:8
**pages** [1] - 7:14
**paid** [3] - 53:1, 54:18, 54:20, 56:6
**pain** [1] - 19:13
**paragraph** [1] - 11:2
**Paragraph** [1] - 11:25
**paralegal** [3] - 53:16, 60:6, 60:7, 60:9
**part** [7] - 14:8, 30:15, 34:24, 36:1, 41:11, 42:16, 47:12
**particular** [3] - 27:6, 30:21, 52:20
**particularly** [1] - 56:22
**parties** [1] - 51:20
**party** [3] - 53:10, 56:14, 60:24
**passed** [1] - 6:14
**past** [1] - 53:1
**pattern** [10] - 4:15, 11:18, 14:9, 25:2, 26:16, 26:19, 27:24, 33:3, 33:16, 33:22
**pay** [12] - 52:18, 53:21, 54:4, 54:6, 54:17, 55:5, 55:24, 56:15, 57:11, 58:4, 60:3, 61:15
**payment** [4] - 52:8, 52:10, 53:10, 53:25, 60:1, 61:11
**payments** [1] - 54:23
**pdf** [4] - 55:11, 58:10, 58:13, 59:11
**pdfs** [2] - 52:11, 56:23

**people** [13] - 21:7, 23:13, 24:18, 29:18, 29:25, 30:8, 30:23, 32:8, 39:1, 41:13, 48:14, 48:15, 64:16
**per** [1] - 53:6
**percentages** [1] - 13:7
**period** [36] - 6:20, 6:22, 9:1, 9:14, 17:19, 17:21, 17:22, 21:15, 21:18, 22:2, 24:19, 24:23, 24:24, 30:1, 30:16, 30:17, 31:17, 32:12, 32:17, 32:20, 33:7, 33:9, 33:10, 33:23, 35:21, 37:18, 43:21, 43:22, 46:23, 48:10, 48:11, 64:14
**permit** [1] - 17:9
**person** [12] - 10:17, 12:10, 13:3, 24:2, 25:19, 25:20, 26:5, 46:14, 47:25, 48:15, 50:9, 50:10
**personal** [2] - 18:18, 57:22
**persons** [1] - 47:18
**Peter** [1] - 3:12
**PETER** [1] - 1:4
**Philadelphia** [2] - 4:8, 25:20
**phone** [1] - 6:2
**photocopies** [1] - 52:14
**pick** [1] - 54:9
**picked** [1] - 60:16
**place** [7] - 6:10, 7:11, 16:10, 16:11, 25:17, 30:4, 60:20
**places** [1] - 29:21
**Plaintiff** [20] - 1:5, 3:12, 3:18, 4:22, 11:8, 11:9, 15:6, 15:21, 17:15, 21:24, 25:16, 25:19, 29:15, 40:16, 50:2, 50:6, 52:13, 52:17, 54:13, 64:14
**PLAINTIFF** [1] - 1:16
**Plaintiff's** [7] - 11:12, 17:1, 22:2, 25:13, 28:14, 30:19, 42:9, 52:12, 64:13
**plaintiffs** [1] - 18:10
**plan** [2] - 62:18, 65:7
**pleaded** [4] - 11:24, 24:9, 26:23, 28:2
**point** [14] - 9:12, 10:10, 29:7, 29:8, 29:9, 33:17, 33:20,

34:23, 36:1, 39:20, 43:7, 47:20, 48:21, 64:25
**policy** [18] - 4:3, 11:19, 15:3, 15:18, 22:4, 23:13, 23:19, 23:24, 24:6, 26:7, 28:7, 30:1, 30:2, 33:21, 35:8, 35:10, 35:11, 35:13
**policy/practice** [1] - 15:18
**posed** [1] - 23:8
**position** [3] - 14:19, 23:13, 31:10
**possession** [1] - 49:25
**possibility** [1] - 25:24
**Poverty** [1] - 53:16
**practice** [17] - 4:3, 4:15, 11:18, 14:9, 14:25, 15:18, 23:24, 24:10, 25:2, 26:7, 26:16, 26:20, 27:25, 33:3, 33:16, 33:21, 33:22
**precise** [1] - 32:4
**prepared** [3] - 28:13, 29:12, 60:12
**prescribed** [1] - 4:25
**presented** [1] - 37:14
**preserve** [1] - 31:9
**presume** [1] - 34:6
**presumption** [1] - 48:17
**pretty** [1] - 18:20
**prevail** [1] - 57:14
**prevalent** [1] - 14:9
**previous** [2] - 6:23, 43:4
**previously** [2] - 6:24, 42:23
**print** [1] - 59:8
**privately** [1] - 62:18
**probable** [6] - 13:18, 13:23, 14:17, 25:4, 25:5, 26:5
**probation** [2] - 9:14, 16:11
**probative** [3] - 25:6, 25:10, 25:23
**problem** [7] - 30:16, 40:1, 40:9, 45:24, 49:14, 49:15, 58:5
**problems** [1] - 44:24
**proceedings** [3] - 3:3, 65:18, 66:4
**process** [1] - 64:19
**produce** [9] - 6:20,

27:10, 45:10, 50:12, 54:16, 55:22, 56:3, 56:4, 59:2
**produced** [10] - 9:6, 11:10, 11:13, 27:14, 41:24, 48:24, 55:14, 55:17, 59:22, 60:1
**producing** [4] - 42:17, 44:9, 58:10, 60:24
**production** [13] - 4:17, 7:7, 8:7, 17:23, 36:2, 46:11, 48:17, 52:12, 58:25, 59:11, 60:14, 60:20, 64:21
**Production** [2] - 42:18, 42:19
**promise** [1] - 61:19
**promises** [1] - 61:15
**proper** [2] - 13:13, 54:23
**proportionality** [9] - 8:10, 8:12, 10:6, 33:11, 33:25, 35:5, 35:23, 36:13, 49:24
**proposed** [1] - 64:4
**prosecuted** [1] - 29:22
**protective** [3] - 27:14, 27:19, 27:20
**protocol** [1] - 53:6
**prove** [2] - 11:13, 24:9
**provide** [3] - 7:25, 17:5, 34:19
**provided** [5] - 5:14, 27:18, 53:4, 53:21, 56:6
**provides** [2] - 16:13, 17:7
**public** [5] - 17:9, 18:15, 18:21, 57:2, 58:22
**public-interest** [2] - 18:15, 18:21
**published** [1] - 26:15
**pull** [3] - 20:19, 39:8, 44:6
**pulled** [1] - 50:1
**pulling** [1] - 20:1
**Purdy** [1] - 3:14
**PURDY** [1] - 1:22
**purpose** [1] - 27:23
**purposes** [5] - 21:25, 22:6, 32:15, 33:11, 33:15
**pursuant** [8] - 4:7, 4:19, 35:8, 35:12, 35:20, 40:18, 43:5, 53:21

**pursue** [1] - 46:5
**put** [7] - 7:10, 12:8, 24:13, 33:6, 35:16, 37:14, 58:14
**putting** [1] - 15:20

### Q

**qualification** [1] - 31:3
**quite** [1] - 10:13

### R

**raise** [2] - 27:15, 36:18
**raised** [1] - 14:11
**Ramsay** [1] - 3:15
**RAMSAY** [1] - 1:7
**Ramsey** [1] - 25:17
**ran** [1] - 55:15
**rather** [4] - 36:2, 51:12, 51:25, 60:2
**RDR** [2] - 2:1, 66:8
**reach** [1] - 39:10
**read** [1] - 14:21
**readily** [1] - 44:18
**reading** [1] - 22:25
**real** [1] - 56:18
**realized** [1] - 9:18
**really** [6] - 3:23, 4:1, 34:19, 42:20, 45:3, 58:12
**reams** [1] - 27:14
**reason** [8] - 5:22, 11:13, 13:24, 14:5, 14:16, 38:23, 46:1, 46:4
**reasonable** [4] - 58:23, 58:24, 61:3, 64:14
**reasonably** [2] - 32:4, 50:19
**reasons** [2] - 6:16, 20:25
**receive** [3] - 24:2, 52:18, 52:23
**received** [15] - 6:2, 9:16, 10:11, 10:24, 10:25, 21:15, 24:1, 26:4, 34:21, 44:23, 52:22, 53:19, 56:5, 60:15, 65:8
**receives** [2] - 10:3, 56:14
**recently** [1] - 17:17
**recognize** [2] - 33:25, 34:8

**recognizing** [1] - 48:25
**record** [6] - 3:6, 5:8, 5:21, 20:8, 22:10, 59:19
**RECORDING** [1] - 1:12
**recording** [1] - 3:1
**records** [5] - 4:7, 14:2, 25:19, 49:25, 52:15
**recoup** [1] - 54:22
**redact** [1] - 30:20
**reduce** [2] - 32:12, 35:21
**reduced** [1] - 32:4
**refer** [1] - 56:8
**reference** [1] - 51:23
**referenced** [1] - 55:21
**refused** [1] - 54:16
**regarding** [6] - 4:13, 10:2, 27:4, 44:22, 51:9, 54:22
**regardless** [1] - 53:3
**regular** [1] - 62:2
**regulation** [9] - 16:2, 17:5, 18:24, 27:16, 30:22, 36:16, 36:18, 36:20
**regulations** [1] - 8:16
**reimburse** [1] - 59:12
**relate** [3] - 4:17, 13:4, 21:15
**related** [16] - 4:18, 8:20, 9:19, 9:25, 10:11, 11:8, 12:1, 12:25, 13:16, 14:4, 14:7, 22:14, 22:15, 22:23, 26:12, 43:4
**relates** [6] - 3:24, 12:10, 29:1, 33:21, 33:22, 46:13
**relating** [1] - 17:10
**released** [1] - 9:13
**relevance** [3] - 8:10, 10:5, 36:12
**relevance/ proportionality** [1] - 37:22
**relevancy** [1] - 8:11
**relevant** [25] - 6:1, 10:7, 11:1, 13:9, 13:22, 14:14, 16:25, 17:12, 21:18, 22:1, 23:4, 23:9, 24:19, 24:24, 25:11, 31:17, 32:16, 36:20, 38:8,

40:24, 42:6, 42:12, 42:18, 46:4, 48:12
**relied** [1] - 16:3
**rely** [3] - 35:5, 47:14, 51:7
**relying** [1] - 45:7, 45:14, 50:15
**remedy** [1] - 32:10
**remember** [1] - 48:12
**repeated** [1] - 9:5
Reporterlisaedwards@gmail.com [2] - 2:2, 66:9
**represent** [2] - 3:15, 32:8
**representation** [9] - 43:10, 45:7, 45:14, 47:14, 47:15, 47:17, 47:21, 50:15, 51:7
**representations** [2] - 64:16, 65:11
**represented** [2] - 7:1, 53:3
**request** [27] - 4:20, 5:17, 5:24, 5:25, 7:20, 17:22, 22:22, 23:16, 24:1, 27:4, 28:4, 29:12, 29:14, 32:11, 36:3, 37:25, 42:8, 43:4, 42:5, 52:12, 52:19, 52:23, 53:14, 53:25, 56:3, 56:4, 60:4
**Request** [4] - 42:18, 42:19, 46:11, 50:20
**requested** [4] - 3:17, 32:13, 52:13, 52:14
**requesting** [2] - 53:10, 56:14
**requests** [15] - 3:24, 4:4, 4:16, 4:17, 5:6, 7:7, 8:15, 10:3, 15:7, 25:14, 27:13, 34:10, 34:20, 38:20, 55:22
**require** [2] - 35:2, 46:14, 53:10
**required** [2] - 60:3, 63:23
**requires** [1] - 58:7
**reread** [1] - 38:14
**research** [2] - 21:23, 53:7
**reservation** [2] - 53:2, 54:21
**resident** [1] - 12:9
**resolve** [3] - 6:6, 24:25, 54:5
**resolving** [1] - 62:4
**respect** [4] - 7:5, 16:24, 18:12, 42:13

**respectfully** [5] - 23:14, 27:1, 32:11, 50:6, 63:21
**respond** [3] - 42:7, 43:8, 54:7
**responded** [1] - 56:3
**response** [17] - 5:23, 6:2, 7:21, 10:23, 10:24, 27:13, 28:4, 29:12, 29:13, 29:14, 34:18, 37:4, 37:7, 54:11, 58:5, 60:4, 62:5
**responses** [9] - 4:25, 6:4, 7:24, 8:1, 9:25, 15:5, 38:4, 55:22
**responsive** [3] - 52:11, 52:19, 55:16
**rest** [1] - 27:7
**review** [9] - 11:3, 11:7, 36:1, 41:15, 43:18, 46:18, 50:2, 51:5, 54:15
**revisit** [5] - 47:19, 49:4, 49:5, 50:23, 51:1
**RFAs** [1] - 26:21
**RFP** [13] - 8:12, 8:15, 9:24, 34:4, 36:5, 36:17, 36:18, 44:3, 44:6, 44:8, 45:18, 45:21, 49:9
**RFPs** [3] - 7:17, 24:8, 28:2
**RICHARD** [1] - 1:7
**rights** [1] - 54:21
**Rog** [10] - 8:12, 8:15, 10:2, 36:13, 36:19, 37:1, 44:3, 45:18, 46:2, 46:14
**rog** [1] - 4:25
**rogs** [5] - 4:16, 5:17, 7:23, 28:2, 37:1
**room** [1] - 31:11
**root** [1] - 39:6
**roughly** [2] - 17:18, 55:17
**routine** [1] - 51:19
**rule** [1] - 58:7
**Rule** [3] - 4:22, 6:1, 63:22
**rules** [4] - 5:1, 5:18, 6:1, 63:6
**ruling** [1] - 49:18

### S

**sadly** [1] - 4:11
**sample** [2] - 33:24,

48:24
**saw** [1] - 63:9
**scan** [1] - 61:8
**scanning** [2] - 61:6, 61:7
**scheduled** [5] - 5:3, 6:15, 6:24, 54:13, 62:13
**school** [1] - 59:5
**scope** [1] - 27:4
**SEAN** [1] - 1:4
**Sean** [1] - 3:12
**second** [4] - 29:13, 56:3, 60:14
**secure** [1] - 53:5
**see** [14] - 6:18, 7:11, 7:20, 16:23, 17:19, 17:24, 20:3, 20:20, 30:6, 38:8, 49:5, 50:11, 62:8
**seek** [2] - 28:2, 54:22
**seeking** [7] - 5:22, 22:23, 23:22, 26:22, 27:17, 50:7, 61:25
**seeks** [2] - 9:24, 10:2
**seem** [6] - 12:17, 37:15, 38:7, 40:5, 41:5, 41:6
**seemingly** [1] - 27:20
**self** [1] - 6:4
**self-described** [1] - 6:4
**send** [8] - 53:15, 54:9, 55:6, 55:9, 55:23, 59:8, 60:5, 60:13
**sending** [2] - 53:8, 60:7, 60:9
**sends** [2] - 61:3, 61:11
**sense** [2] - 22:19, 43:20
**sent** [6] - 5:20, 5:25, 53:5, 53:19, 54:15, 57:23
**separate** [3] - 42:24, 44:21, 52:7
**separately** [2] - 8:14, 42:10
**served** [8] - 5:2, 5:17, 5:22, 6:4, 6:23, 6:25, 22:18, 52:10
**services** [2] - 17:7, 52:8
**serving** [1] - 4:24
**set** [4] - 6:7, 23:21, 63:1, 63:6
**sets** [2] - 37:20, 43:6
**seven** [1] - 25:17

9

**shall** [1] - 17:8
**shalt** [1] - 17:5
**Sheriff** [9] - 3:15, 13:24, 16:13, 17:17, 19:19, 22:4, 25:17, 46:8, 55:19
**SHERIFF** [1] - 1:7
**sheriff's** [2] - 9:5, 47:3
**Sheriff's** [9] - 10:22, 11:10, 12:2, 12:12, 14:2, 19:8, 25:19, 31:9, 43:3
**short** [1] - 5:16
**show** [3] - 25:3, 33:3, 33:4
**shows** [1] - 49:19
**significantly** [2] - 25:23, 48:23
**similar** [10] - 4:13, 9:10, 11:12, 11:16, 11:24, 29:6, 49:12, 49:14, 49:15, 49:22
**similarly** [7] - 5:25, 7:7, 10:2, 12:2, 17:15, 19:7, 36:19
**simply** [2] - 27:10, 52:17
**single** [2] - 41:15, 43:18
**singled** [1] - 59:2
**situated** [2] - 17:15, 19:7
**situation** [4] - 12:17, 12:19, 15:23, 58:21
**six** [10] - 5:2, 31:25, 32:24, 32:25, 33:4, 33:5, 33:9, 35:22
**six-month** [1] - 33:9
**size** [1] - 33:24
**skeptical** [1] - 25:8
**skip** [1] - 36:7
**small** [1] - 42:25
**smaller** [3] - 22:21, 46:16, 46:23
**SOLEIMANI** [108] - 1:16, 3:7, 3:11, 3:20, 3:23, 5:6, 5:12, 5:14, 6:10, 6:19, 6:22, 7:6, 7:14, 7:17, 7:20, 7:23, 8:3, 8:8, 8:14, 8:19, 8:22, 9:13, 9:21, 9:23, 10:9, 10:12, 10:19, 10:24, 11:4, 11:6, 11:17, 11:22, 12:7, 12:13, 12:18, 12:21, 12:23, 13:6, 13:10, 13:15, 12:5, 22:8, 22:12, 23:6, 23:14, 25:1, 32:11, 32:18,

33:2, 33:14, 35:10, 36:4, 36:8, 36:11, 36:15, 36:24, 37:1, 38:3, 41:18, 42:22, 44:2, 44:10, 44:12, 45:17, 45:20, 46:1, 46:12, 46:20, 47:5, 47:7, 47:10, 47:21, 48:10, 48:12, 48:22, 49:2, 49:7, 49:9, 49:12, 49:15, 49:23, 50:14, 50:21, 51:9, 51:16, 52:1, 52:4, 52:7, 52:24, 54:18, 54:20, 59:18, 59:22, 59:24, 61:6, 61:8, 61:10, 61:18, 61:22, 62:12, 63:4, 63:21, 63:25, 64:4, 64:20, 65:7, 65:12, 65:15
**Soleimani** [2] - 3:8, 32:6
**someone** [1] - 19:8
**sooner** [2] - 51:12, 51:24
**sorry** [4] - 19:10, 45:20, 61:23, 62:7
**sort** [10] - 6:19, 7:9, 8:9, 13:16, 14:16, 23:21, 25:7, 25:24, 46:16, 54:1
**sounded** [1] - 22:13
**South** [1] - 1:17
**Southern** [3] - 53:16, 56:11, 56:12
**SOUTHERN** [1] - 1:1
**speaking** [1] - 26:21
**specific** [4] - 25:4, 25:13, 34:22, 51:4
**specifically** [5] - 5:17, 46:7, 52:9, 52:20, 60:3
**spent** [1] - 53:14
**sponte** [1] - 6:11
**spot** [1] - 60:9
**spreadsheet** [2] - 45:4, 45:9
**spreadsheets** [2] - 44:13, 44:14
**squabble** [1] - 60:6
**stamp** [1] - 55:21
**stamped** [1] - 52:11
**stamps** [1] - 55:18
**standing** [1] - 57:8
**start** [4] - 8:6, 8:9, 8:18, 52:4
**started** [3] - 34:2, 34:14, 54:14
**state** [2] - 3:6, 17:6
**States** [2] - 9:7,

25:16
**STATES** [2] - 1:1, 1:12
**status** [2] - 12:9, 13:2
**statute** [1] - 16:9
**statutorily** [1] - 16:7
**still** [9] - 15:21, 22:19, 25:25, 26:6, 26:22, 46:24, 49:9, 50:18, 54:4
**stipulate** [7] - 15:2, 15:4, 27:19, 28:13, 33:18, 46:22, 63:25
**stipulated** [1] - 23:17
**stipulating** [1] - 15:15
**stipulation** [14] - 15:21, 22:2, 22:3, 23:11, 23:15, 25:8, 25:25, 26:2, 33:13, 33:15, 35:3, 35:5, 35:7, 35:21
**stop** [1] - 28:22
**stories** [1] - 46:6
**straightforward** [2] - 18:20, 27:7
**Street** [1] - 1:19
**strictly** [1] - 22:13
**strike** [2] - 63:9, 63:11
**stuff** [2] - 45:15, 58:4
**stunned** [1] - 56:21
**stupid** [1] - 29:4
**sua** [1] - 6:11
**subject** [4] - 36:1, 53:1, 54:6, 54:21
**submit** [2] - 62:25, 64:4
**submitted** [3] - 10:20, 10:21, 24:5
**subsequent** [1] - 3:2
**subsequently** [2] - 9:16, 24:4
**subset** [2] - 29:25, 46:16
**substance** [2] - 8:17, 45:17
**substantive** [4] - 7:5, 7:6, 36:8, 44:4
**substantively** [1] - 8:16
**successfully** [1] - 29:21
**sued** [1] - 28:9
**sufficient** [4] - 22:6, 25:9, 32:23, 33:15
**sufficiently** [4] - 13:18, 24:9, 26:23, 28:1

**suggest** [1] - 56:17
**suggested** [4] - 14:12, 32:6, 44:20, 49:16
**suggesting** [2] - 29:11, 43:15
**suggestion** [2] - 62:6, 64:9
**suggests** [2] - 42:9, 50:12
**suit** [1] - 4:3
**Suite** [2] - 1:20, 1:24
**summary** [4] - 10:2, 34:15, 34:17, 34:20
**Sunrise** [1] - 1:23
**supplement** [2] - 26:15, 64:23
**supported** [1] - 13:17
**supposed** [3] - 30:22, 32:9, 62:2
**surprise** [1] - 21:7
**surprised** [1] - 21:6

**T**

**tab** [1] - 7:16
**Tab** [1] - 7:18
**tabs** [1] - 7:17
**tackle** [1] - 3:22
**Tallahassee** [1] - 29:18
**taxable** [1] - 57:18
**technical** [1] - 18:23
**telephonically** [1] - 5:23
**ten** [7] - 34:12, 50:4, 54:7, 65:4, 65:5, 65:6
**tenor** [1] - 54:1
**terms** [13] - 11:23, 13:7, 13:8, 13:21, 15:20, 19:23, 21:14, 23:8, 24:14, 45:7, 45:17, 46:3, 51:10
**that'll** [2] - 32:2, 35:19
**THE** [243] - 1:11, 1:12, 1:16, 1:22, 3:4, 3:16, 3:21, 5:4, 5:11, 5:13, 6:9, 6:18, 6:20, 7:4, 7:13, 7:16, 7:19, 7:22, 8:2, 8:6, 8:13, 8:18, 8:20, 9:11, 9:19, 9:22, 10:8, 10:10, 10:16, 10:23, 11:2, 11:5, 11:15, 11:20, 12:5, 12:8, 12:15, 12:20, 12:22, 13:1, 13:9, 13:14, 14:18,

14:24, 15:2, 15:8, 15:13, 15:15, 15:20, 15:25, 16:4, 16:8, 16:15, 16:20, 16:23, 17:3, 17:13, 17:21, 17:24, 18:2, 18:13, 19:2, 19:9, 19:14, 19:17, 19:19, 19:23, 20:5, 20:8, 20:11, 20:18, 20:20, 21:1, 21:5, 21:9, 21:13, 21:21, 21:24, 22:6, 22:11, 23:1, 23:11, 24:12, 24:16, 24:24, 29:7, 29:23, 30:6, 30:14, 31:1, 31:5, 31:7, 31:14, 31:17, 31:19, 31:22, 31:25, 32:10, 32:14, 32:24, 33:6, 34:24, 35:11, 35:16, 35:18, 35:20, 35:25, 36:7, 36:10, 36:14, 36:22, 36:25, 37:2, 37:6, 37:11, 37:13, 37:20, 37:25, 38:5, 38:7, 38:12, 38:14, 38:17, 38:19, 38:23, 39:1, 39:5, 39:13, 39:16, 39:18, 39:23, 39:25, 40:4, 40:10, 40:12, 40:15, 40:19, 40:22, 41:3, 41:9, 41:11, 42:1, 42:6, 42:16, 43:7, 43:13, 43:22, 44:1, 44:8, 44:11, 44:24, 45:5, 45:9, 45:12, 45:16, 45:19, 45:23, 46:10, 46:17, 47:4, 47:6, 47:8, 47:14, 47:23, 48:4, 48:6, 48:11, 48:14, 49:1, 49:4, 49:8, 49:11, 49:14, 49:18, 49:22, 50:11, 50:15, 50:22, 51:11, 51:19, 51:24, 52:3, 52:6, 52:21, 54:17, 54:19, 55:10, 55:13, 55:19, 56:23, 57:1, 57:4, 57:7, 57:10, 57:14, 57:19, 57:21, 58:1, 58:8, 58:14, 58:16, 58:18, 58:20, 58:25, 59:4, 59:7, 59:14, 59:16, 59:21, 59:23, 60:8, 60:12, 60:18, 60:20, 60:24, 61:2, 61:5, 61:7, 61:9, 61:13, 61:17, 61:20, 62:7, 62:10, 62:15, 62:17,

62:21, 62:24, 63:3, 63:5, 63:15, 63:17, 63:19, 64:2, 64:7, 64:19, 64:23, 65:2, 65:4, 65:6, 65:10, 65:13, 65:17

**themselves** [1] - 42:12

**theoretical** [1] - 17:18

**theoretically** [1] - 18:10

**theories** [2] - 13:15, 26:16

**theory** [4] - 4:15, 13:19, 33:1, 58:20

**therefore** [2] - 23:3, 48:16

**thereof** [1] - 9:25

**thereto** [1] - 10:1

**they've** [6] - 11:6, 24:18, 38:18, 39:10, 50:5, 53:9

**thinks** [1] - 30:15

**Thou** [1] - 17:5

**thousands** [2] - 34:17, 34:18

**three** [3] - 9:1, 22:18, 64:25

**three-point** [1] - 64:25

**three-week** [1] - 9:1

**TILLEY** [2] - 1:18, 3:10

**Tilley** [1] - 3:10

**timeline** [1] - 64:21

**today** [6] - 6:16, 18:4, 52:16, 59:11, 62:14, 64:22

**together** [2] - 44:4, 50:1

**TORRES** [1] - 1:11

**Torres** [3] - 18:12, 53:16, 54:9

**total** [1] - 54:18

**totally** [1] - 7:15

**toto** [1] - 43:23

**track** [3] - 42:1, 44:18, 47:3

**tracked** [1] - 19:25

**tracks** [1] - 23:2

**TRANSCRIBED** [2] - 1:12, 2:1

**TRANSCRIBER'S** [1] - 3:1

**transcription** [1] - 66:4

**transfer** [1] - 53:5

**tried** [2] - 42:15, 60:5

**true** [1] - 12:13

**trying** [3] - 39:25, 63:24, 64:13

**turn** [2] - 14:19, 42:9

**turned** [1] - 43:16

**turns** [3] - 43:14, 47:18, 50:22

**two** [24] - 4:16, 6:14, 7:9, 7:14, 7:24, 8:11, 8:15, 9:13, 9:19, 9:21, 9:23, 13:2, 16:18, 24:19, 24:20, 24:25, 26:12, 37:20, 50:24, 53:14, 53:23, 61:24

**two-day** [1] - 13:2

**type** [7] - 13:8, 23:4, 44:18, 47:23, 49:17, 51:5, 52:15

**types** [4] - 4:18, 10:13, 14:10

## U

**ultimate** [1] - 6:19

**ultimately** [3] - 6:3, 6:11, 18:5

**unambiguous** [1] - 35:3

**unaware** [1] - 53:7

**under** [16] - 4:15, 4:22, 5:18, 8:15, 15:19, 16:20, 21:19, 27:15, 29:6, 30:1, 30:22, 33:11, 35:18, 36:19, 40:17, 63:21

**underlying** [3] - 13:23, 18:6, 33:1

**undermine** [2] - 14:1, 32:25

**undermined** [2] - 25:5, 26:5

**undermining** [2] - 4:5, 24:3

**understood** [6] - 23:6, 38:25, 47:5, 47:10, 52:1, 64:4

**unexecuted** [2] - 6:4

**unfortunately** [4] - 6:13, 6:17, 7:24, 34:1

**unit** [1] - 31:16

**United** [2] - 9:7, 25:15

**UNITED** [2] - 1:1, 1:12

**unlawfully** [2] - 11:21, 13:12

**unless** [4] - 41:11, 48:1, 49:19

**up** [11] - 5:12, 7:15, 14:13, 44:7, 54:10,

54:12, 54:21, 60:6, 60:16, 64:5

**US** [21] - 4:6, 4:8, 4:14, 9:4, 10:3, 10:15, 12:1, 14:1, 14:7, 14:11, 14:13, 25:20, 26:5, 28:17, 30:10, 34:21, 39:2, 41:13, 46:9, 50:8, 50:9

**USB** [6] - 53:6, 53:17, 53:20, 55:3, 55:6, 58:14

**usual** [2] - 51:19

## V

**valid** [1] - 43:7

**various** [3] - 6:16, 29:20, 33:19

**verify** [5] - 45:6, 47:17, 48:1, 64:16, 65:10

**versions** [1] - 52:19

**versus** [2] - 45:19, 45:20

**via** [3] - 5:24, 53:5, 55:6

**viable** [1] - 13:16

**view** [3] - 14:3, 14:14, 53:7

**violation** [2] - 16:11, 25:2

**virtue** [1] - 55:7

**vitals** [1] - 20:19

**vs** [1] - 1:6

## W

**waiting** [1] - 51:20

**waived** [1] - 4:23

**walk** [1] - 8:16

**WALLACE** [1] - 1:22

**warrant** [1] - 16:6

**Washington** [1] - 56:10

**waste** [1] - 54:3

**week** [3] - 9:1, 51:20, 65:2

**weeks** [3] - 5:2, 6:14, 54:12

**West** [2] - 1:19, 12:11

**WEST** [1] - 1:2

**Westlaw** [3] - 56:9, 56:11, 56:13

**white** [1] - 24:14

**whiz** [1] - 62:19

**whole** [1] - 33:20

**Williams** [3] - 3:5, 26:12, 26:14

**willing** [1] - 55:4

**window** [1] - 29:24

**wins** [1] - 57:25

**wish** [1] - 18:18

**wishes** [1] - 55:1

**without-status** [2] - 12:9, 13:2

**words** [12] - 10:14, 10:22, 13:23, 14:6, 19:3, 20:5, 23:1, 32:15, 40:5, 43:2, 50:3, 52:21

**writing** [1] - 35:16

**written** [1] - 6:2

**wrongfully** [2] - 10:14, 10:17

## Y

**year** [11] - 31:20, 31:21, 31:22, 31:23, 31:24, 32:17, 33:9, 33:10, 33:24, 38:20

**years** [13] - 17:23, 17:24, 24:19, 24:20, 25:17, 29:4, 34:12, 39:20, 40:25, 50:4, 64:25

**York** [2] - 47:6, 56:11

**yourself** [1] - 51:15

## Z

**zero** [2] - 39:14, 39:18