UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-10279-CIV-KMW

PETER SEAN BROWN,

    Plaintiff,

v.

RICHARD A. RAMSAY, in his official
capacity as Sheriff of Monroe County,

    Defendant.
_____/

## DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT (AND MEMORANDUM OF LAW)

The Defendant, RICHARD A. RAMSAY, in his official capacity as Sheriff of Monroe County, files this Motion for Final Summary Judgment and as grounds therefore would state as follows:

1. Plaintiff brings two (2) claims against Sheriff Ramsay, in his official capacity as Sheriff of Monroe County, alleging as follows: Count I - Section 1983 claim for violation of Plaintiff's 4th Amendment right (unconstitutional seizure); and Count II - False Imprisonment pursuant to Florida Law. [See, DE 1].

2. Plaintiff's allegations are premised upon an incident (factual statement filed separately pursuant to Local Rule 56.1(a)) beginning April 26, 2018, wherein Plaintiff had resolved his criminal charges/violation of probation and had his probation reinstated. However, after Plaintiff's arrest Immigration and Customs Enforcement ("ICE") issued a detainer and warrant requesting that Plaintiff be held by the Defendant for an additional 48 hours pursuant to the I-203, I-205, and I-247 forms.

1

3. Each document submitted to the Defendant by DHS/ICE appeared to have facial validity as evidenced by the administrative warrant and detainer which indicate that probable cause existed for the continued detention of the Plaintiff. Moreover, DHS/ICE prepared the warrant and detainer based upon information from various state and federal agencies which the Monroe County Jail did not have access to.

4. As has been the case with all facially valid detainers (accompanied by an appropriate warrant), the Defendant honored the ICE Hold, pursuant to the Basic Ordering Agreement ("BOA") which requested that Plaintiff be held until an ICE agent could interview Plaintiff. [See, DE 1].

5. Based upon the pleadings and record evidence, it is shown that there are no genuine disputes as to any material facts and that Defendant is entitled to summary judgment as a matter of law.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Defendant's Motion for Final Summary Judgment as to both counts.

FURTHER, and in support of this Motion, Defendant would refer this Honorable Court to the Factual Statement (filed concurrently with this Motion and pursuant to Local Rule 56.1) and the Memorandum of Law attached hereto and by reference made a part hereof.

## MEMORANDUM OF LAW

**I.   STANDARD OF REVIEW**

The standard of review which must be applied by the Court is contained in Rule 56(a) of the Federal Rules of Civil Procedure which reads in pertinent part as follows:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Summary judgment should nevertheless be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986). When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

## ARGUMENT

**II.     Probable Cause Existed for the Continued Detention of Plaintiff by the MCSO**

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. Amend. IV. The hallmark of a reasonable search or seizure is the existence of probable cause and the issuance of a warrant by a detached and neutral magistrate. Illinois v. Gates, 462 U.S. 213, 216, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Generally, searches and seizures arise in criminal investigations, but they also arise in other contexts. In fact, individuals may be arrested for any violation of law—civil or criminal. See Arkansas v. Sullivan, 532 U.S. 769, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001) (per curiam) (noting that police officer had authority to arrest defendant for fine-only traffic offense).

   **a. Administrative and Civil Warrants**

Administrative warrants have regularly been upheld as a matter of law so long as a showing of administrative probable cause satisfies the basic purpose of the Fourth Amendment, which is "to safeguard the privacy and security of individuals against arbitrary invasions by government officials." W. Point-Pepperell, Inc. v. Donovan, 689 F.2d 950, 958 (11th Cir. 1982); (citing

Marshall v. Barlow's, Inc., supra, 436 U.S. at 312, 98 S.Ct. at 1820). Moreover, nothing in the original meaning of "probable cause" or "Warrants" excludes civil offenses and such civil warrants have been upheld in the Eleventh Circuit. United States v. Phillips, 834 F.3d 1176, 1181 (11th Cir. 2016).[1]

Indeed, civil warrants are routinely used to effectuate arrests in civil and family law matters. See United States v. Jones, 377 F.3d 1313 (11th Cir. 2004) (Where arresting officer discovered an outstanding warrant to arrest defendant for failure to pay child support, and officer executed warrant within 30 days when it was still valid, arrest was lawful.). Temporary civil detentions effectuated by one sovereign on behalf of another routinely occur in our system of dual sovereignty. See, e.g., United States v. Cardona, 903 F.2d 60 (1st Cir. 1990) (parole-violator warrant issued by New York, arrest effectuated by local police officers in Rhode Island); Chavez v. City of Petaluma, No. 14-CV-5038, 2015 WL 6152479, *6, *11 (N.D. Cal. Oct. 20, 2015) (dismissing a claim for allegedly improper warrantless arrest and detention where parole officers placed parole hold on a plaintiff, city policy effectuated warrantless arrest, and County detained following arrest).

In the context of immigration and customs enforcement, administrative warrants have a long history and Congress has specifically legislated the legality of their use (along with the cooperation of local agencies). See 8 U.S.C. § 1357(g); see also Arizona v. United States, 567 U.S. 387, 132 S. Ct. 2492, 2494, 183 L. Ed. 2d 351 (2012)("The Federal Government's broad, undoubted power over immigration and alien status rests, in part, on its constitutional power to

---

[1] In United States v. Phillips, The Eleventh Circuit Court of Appeals explained that "The closest historical analog to the writ of bodily attachment for unpaid child support is the bench warrant. A bench warrant, or, more traditionally, a "capias," instructs the police to arrest someone to ensure that he appears in court." Phillips, 834 F.3d at 1181 (citing *Capias (Capias Ad Respondendum)*, *Black's Law Dictionary* (10th ed. 2014); *Warrant (Bench Warrant)*, and *Black's Law Dictionary* (10th ed. 2014)); see Fla. Fam. L. R. Proc. 12.615(c).

"establish an uniform Rule of Naturalization," Art. I, § 8, cl. 4, and on its inherent sovereign power to control and conduct foreign relations[.]"). The Immigration and Nationality Act ("INA") expressly authorizes ICE to arrest and detain aliens pending removal decisions "on a warrant issued by the Attorney General." *See* 8 U.S.C. § 1226. It does not require judicial approval of the warrant. The Supreme Court noted more than 50 years ago that there is "overwhelming historical legislative recognition of the propriety of administrative arrest for deportable aliens." Abel, 362 U.S. at 233, 80 S.Ct. 683. This Court has recently ruled on the legality of SB 168 and the "detainer mandate" in Florida's anti-sanctuary cities law in the case of City of S. Miami v. Desantis, 408 F. Supp. 3d 1266 (S.D. Fla. 2019). Specifically, the Desantis Court held that the detainer mandate fell within the scope of cooperation contemplated by Congress when it enacted the INA's cooperation clause, and thus, was not conflict nor field preempted. Id.

The evidence establishes that Plaintiff was arrested for a criminal violation in Monroe County and detained as a result. [See Complaint]. It is undisputed that a Basic Ordering Agreement ("BOA") existed between the Defendant Sheriff and ICE. Id. Further, DHS/ICE faxed a warrant and detainer (demonstrating the completion of an investigation and, consequently, probable cause for the removal of Plaintiff from the United States) requesting the cooperation of the Sheriff. Nothing contained within the four-corners of the warrant itself would give rise to an inference that the warrant was invalid. Given the undisputed material facts of this case, it cannot reasonably be stated that the Defendant Sheriff's *practice* of cooperating with immigration detainers (accompanied by a facially valid warrant) amounts to a viable 1983 claim for violation of Plaintiff's 4th Amendment right. [See Exh. "B"].

b. **Cooperation and Collective Knowledge**

Congress has authorized DHS to enter into cooperative agreements (287(g) agreements), see 8 U.S.C. § 1357(g), under which local officers may, "subject to the direction and supervision

of the [Secretary]," Id. § 1357(g)(3), perform immigration enforcement functions relating to investigating, apprehending, and detaining aliens. Id. § 1357(g)(1). DHS may also enter into intergovernmental services agreements (IGSAs) to house detainees after DHS has arrested them. Id. § 1103(a)(1)(A). Even without a formal 287(g) agreement or IGSA, States and localities may "communicate with the [Secretary] regarding the immigration status of any individual" or "cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," 8 U.S.C. § 1357(g)(10), when that cooperation is pursuant to a "request, approval, or other instruction from the Federal Government," Arizona, 567 U.S. at 410. Such cooperation may include "arrest [ing] an alien for being removable" when the federal government requests such cooperation and "responding to requests for information about when an alien will be released from their custody." Id.

In Arizona, The Supreme Court explained that the case before it was an easy one because "no coherent understanding of the term [cooperation] would incorporate the unilateral decision of state officers to arrest an alien for being removable absent any request, approval, or other instruction from the Federal Government," as is the case presently before this Court. Arizona, 567 U.S. at 410. Not only did a formal IGSA exist in the case at bar (the BOA), but all actions taken by the local government was at the behest and instruction of DHS/ICE and complied with both state and federal statutes. Indeed, the BOA itself is only a formal agreement between the Sheriff and ICE for services which include "reasonable access to all detainees or inmates for . . . immigration enforcement related purposes." [See Exh. ___ BOA]. Specifically, the only service being provided by the Sheriff is housing of detainees pursuant to the "issuance and acceptance of" an I-203, I-247 and an I-200 or I-205 (Warrants). Thus, it is beyond debate that the Sheriff and his deputies may cooperate with ICE detainers and warrants because the INA expressly authorizes

6

ICE to arrest and detain aliens pending removal decisions "on a warrant issued by the Attorney General." *See* 8 U.S.C. § 1226. It does not require judicial approval of the warrant. The Supreme Court noted that there is "overwhelming historical legislative recognition of the propriety of administrative arrest for deportable aliens." Abel, 362 U.S. at 233, 80 S.Ct. 683. Probable cause for an arrest, in a particular case, can be established on the basis of the collective knowledge of all law enforcement officers involved, provided there is communication among the officers, and thus, state officers may act on valid probable cause determinations by federal officers. Tenorio-Serrano v. Driscoll, 324 F. Supp. 3d 1053 (D. Ariz. 2018).

In Tenorio-Serrano v. Driscoll, the Court explained that the challenged conduct of detaining alleged aliens by local Sheriffs (absent a formal agreement) fell within § 1357(g)(10)(B), which **"authorizes the Sheriff to cooperate with a request from ICE to detain a specific inmate already in the Sheriff's custody, whom ICE has independently determined is removable, for a short period to facilitate ICE's apprehension of the individual."** Tenorio-Serrano v. Driscoll, 324 F. Supp. 3d 1053 (D. Ariz. 2018)(emphasis provided). From there, the court reasoned that the plaintiff had not shown a likelihood of success on his Fourth Amendment claim, because probable cause of removability was sufficient to authorize the administrative warrant, so the county's seizure of him was not unreasonable. Although the Driscoll court addressed the denial of a plaintiff's motion for a preliminary injunction based on a Fourth Amendment claim, the rationale for the dismissal was premised upon the unlikely success of the claim on the merits. Driscoll, 324 F. Supp. 3d 1053 (D. Ariz. 2018); see also Lopez-Lopez v. Cty. of Allegan, No. 1:17-CV-786, 2018 WL 9801892, at *2 (W.D. Mich. Aug. 13, 2018). Because the case before this Court presents the existence of a formal agreement, a detainer and a warrant issued

by ICE to the Sheriff, both cooperation and collective knowledge are present and sufficiently evidence the existence of probable cause. [See Exh. "F" 1-3; see also Exh. "G"].[2]

### c. The DHS/ICE Warrant Issued for Plaintiff was Facially Valid and Defendant was Under No Obligation to Investigate the Sufficiency of the Warrant

Under Florida law, a Plaintiff may not maintain a claim for false imprisonment if the arrest is pursuant to a facially valid warrant. Jackson v. Navarro, 665 So. 2d 340 (Fla. 4th DCA 1995). The Eleventh Circuit Court of Appeals has held that, under the fellow officer rule, the officer seeking to effectuate a warrant is entitled to rely on another officer's statements notwithstanding the fact that the officer effectuating the warrant has no personal knowledge of the facts. See Rankin v. Bd. of Regents of Univ. Sys. of Georgia, 732 F. App'x 779 (11th Cir. 2018) (citing Terrell v. Smith, 668 F.3d 1244, 1252 (11th Cir. 2012) (noting that "the collective knowledge of the investigating officers [may] be imputed to each participating officer"). The Rankin Court made no mention of a law enforcement officer's duty to investigate the veracity of a fellow-officers' statements when applying the collective knowledge standard because this rule is so well-established.

Florida courts have long recognized that "[i]f the imprisonment is under legal authority it may be malicious but it cannot be false. This is true where legal authority is shown by valid process, even if irregular or voidable." Id. (quoting S.H. Kress & Co. v. Powell, 181 So. 757, 762 (1938) and Johnson v. Weiner, 19 So.2d 699, 700 (1944)); see also Willingham (explaining that law enforcement really has no discretion when presented with a facially valid arrest warrant but to take the person into custody for the court to resolve the criminal charge). See also Florida Statute § 839.21 - making it a crime for a jailer to refuse to accept a prisoner lawfully directed, pursuant

---

[2] In this case, "on or about April 6, 2018," a Miami Enforcement and Removal Operations (ERO) assistant and "Deportation Officer (DO) conducted their own investigation and concluded he had probable cause to believe that Plaintiff was" a deportable alien and the "DO's supervisor reviewed the case and approved the admirative warrant of removal for "Peter Brown." [See Exh. "G" Aff. Of Garrett Ripa].

to process, to be jailed. Law enforcement officials are not required to examine legal questions, such as a statute of limitations defense, before giving effect to a valid arrest warrant. Abdullah v. State, 883 So.2d 843, 845 (Fla. 5th DCA 2004). Moreover, Compliance with an ICE detainer "constitutes a paradigmatic instance of the collective-knowledge doctrine, where the detainer request itself provides the required 'communication between the arresting officer and an officer who has knowledge of all the necessary facts.' " City of El Cenizo, Texas v. Texas, 890 F.3d 164, 187–88 (5th Cir. 2018)(citing United States v. Ibarra, 493 F.3d 526, 530 (5th Cir. 2007).

In Florida, it is well established that the government does not owe individual citizens a common law duty to convey accurate information or maintain accurate records. See Florez v. Broward Sheriff's Office, 270 So. 3d 417 (2019). In Florez, the Fourth District Court of Florida, held that a claimant who is arrested by an agency based on a facially sufficient and validly issued arrest warrant, cannot satisfy the elements of a false arrest claim because the warrant confers "legal authority" on the arresting agency. Florez v. Broward Sheriff's Office, 270 So. 3d 417, 421–22 (Fla. 4th DCA 2019)(internal citations omitted). "This is true even if the warrant was erroneously issued by another entity but still appears to be facially valid to the arresting agency." Id. (noting that the court properly granted summary judgment in arresting agency's favor on arrested person's false imprisonment claim when the arresting agency effectuated the arrest pursuant to a warrant that was erroneously issued by a court in another county).

In the case at bar, a Warrant of Removal/Deportation—ICE Form I-205—was issued by federal ICE agents on April 6, 2018. [Exh. F-1-3]. The warrant itself stated that an immigration judge ruled that Mr. Brown was subject to removal/deportation. [Exh. F-1-3/ I-205]. An Order to Detain an Alien—DHS Form I-203—was also issued to Monroe County Sheriff's on the same date. Id. The BOA between the Sheriff's office and ICE was in effect at the time of the issuance

of the federal warrant, the order to detain alien, and the immigration detainer notice from DHS (DHS Form I-247 - issued April 6, 2018). It was the duty of the Sheriff to see to it that the warrant issued by federal authorities was given full effect. See <u>State v. Walkin</u>, 802 So.2d 1169, 1171 (Fla. 3d DCA 2001); <u>Wigfall v. State</u>, 323 So.2d 587, 589 (Fla. 3d DCA 1975); <u>State v. Foust</u>, 262 So.2d 686 (Fla. 3d DCA 1972).

There is no responsibility nor duty for local law enforcement to determine the validity of an objectively valid federal warrant (or any warrant issued by a separate agency) and to hold contrary to this would be unprecedented. [See Exh. "G" - Depo. of Garret Ripa Pg(s) 2-3]; see also <u>Willingham v. City of Orlando</u>, 929 So. 2d 43, 50 (Fla. Dist. Ct. App. 2006). While Plaintiff in hindsight seeks to discredit the validity of the warrant issued by ICE, neither the Defendant nor any of the deputies working for MCSO had any obligation to investigate a seemingly valid federal warrant at the time that it was received.[3] Practically speaking, Plaintiff seeks to have this Court mandate that every local detention facility or jail inspect beyond the four-corners of a warrant when such a warrant is challenged by an inmate/detainee simply asserting that the warrant is flawed. Requiring jails to investigate the existence of probable cause for each out-of-county or federal hold of inmates pursuant to a warrant would undermine the structure of the criminal justice system and impose an obligation which has never before existed. Federal courts addressing this argument have stated that "Implicitly, the plaintiffs' argument would invalidate any compliance with ICE detainers [because] officers *must* make their own removal-status determinations to satisfy the Fourth Amendment but officers *cannot* make such determinations under *Arizona* [. . .] <u>City of El Cenizo, Texas v. Texas</u>, 890 F.3d 164, 188 (5th Cir. 2018). Consequently, such an imposition

---

[3] Exh. "G" Aff. Of Garrett Ripa ¶ 8 ("In this instance, ICE made the initial determination of alienage and removability that served as the basis for the detainer and administrative warrant leading to Plaintiff's brief period of detention for purposes of transfer to ICE custody.").

would run afoul of the legislative intent behind the cooperation clause in § 1357 and create discord and obstinance among various local and federal agencies.[4]

### d. Probable Cause Existed for Plaintiff's Detention After the Resolution of His Criminal Case Under Both State and Federal Law

The determination of whether probable cause exists is the functional equivalent whether considered in the context of a civil claim for false arrest under state law or a claim of unreasonable seizure under the Fourth Amendment to the United States Constitution. (See Rankin v. Evans, 133 F.3d 1425 (11th Cir. 1998) and United States v. McDonald, at 606 F.2d 552 (5th Cir. 1979)). Probable cause constitutes an absolute bar to both state tort and section 1983 claims for false arrest. Rankin, supra at 1435.

The existence of probable cause constitutes an affirmative defense to the claims of false arrest and imprisonment under Florida Law. (See Brolanos v. Metropolitan Dade County, at 677 F.2d 1005 (3rd D.C.A., 1996)). In a Fourth Amendment claim for false arrest, it is the Plaintiff's burden to demonstrate the absence of probable cause. (See Evans v. Hightower, 117 F.3d, 1318 (11th Cir. 1997). Regardless of who has the burden, if the arrest of Plaintiff is supported by probable cause, he cannot succeed on either claim. Further, probable cause may be (and often is) based on information provided by eye witness testimony of one individual. The City of Clearwater v. Williamson, 938 7 F.2d 985 (2nd D.C.A. 2006) and Foreman v. City of Port St. Lucie, 394 F.3d, *Appx*. 554 (11th Cir. 2008). It is well-settled that, where a reasonably credible complaint has been

---

[4] As this Court has stated, "Considering the language of the INA itself, it is clear that Congress did not intend to preclude states from supplementing the field of how local law enforcement agencies can participate in federal immigration enforcement efforts. Specifically, the express language in the cooperation clause in § 1357(g)(10)(B) leaves numerous cooperative avenues open for law enforcement officers to participate in the immigration efforts of federal officers." City of S. Miami v. Desantis, 408 F. Supp. 3d 1266, 1299 (S.D. Fla. 2019)(discussing field preemption challenge to the detainer mandate of SB 168).

made, the existence of probable cause does not depend upon the actual truth of the complaint. See Woodsbee v. City of Chicago, 234 F.3d, 979 (7th Cir. 2000).

Both Florida and federal courts have established that no Fourth Amendment violation or common law claim of false imprisonment exists in the context of an immigration hold where a warrant **and** detainer is issued to a local law enforcement agency. See City of S. Miami v. Desantis, 408 F. Supp. 3d 1266, 1299 (S.D. Fla. 2019)("The combination of the detainer and the administrative warrant rectify many of the issues presented in . . . prior cases."). This is premised, in part, upon the Collective Knowledge Rule or the "Fellow Officer Rule" discussed supra and is given further merit by virtue of Florida Statute Sections 950.03-4 & 839.21. As this Court has noted:

> It is undisputed that *federal* immigration officers may seize aliens based on an administrative warrant attesting to probable cause of removability. *Abel v. United States*, 362 U.S. 217, 233–34, 80 S.Ct. 683, 694, 4 L.Ed.2d 668 (1960). It is also evident that current ICE policy requires the Form I-247A to be accompanied by one of two such administrative warrants. On the form, an ICE officer certifies that probable cause of removability exists. Thus, an ICE-detainer request evidences probable cause of removability in every instance.

City of El Cenizo, Texas v. Texas, 890 F.3d 164 (2018).

The Southern District of Florida has relied on Lopez-Lopez v. County of Allegan, 321 F. Supp. 3d 794 (W.D. Mich. 2018), for its analyses of Fourth Amendment violations and succinctly stated as follows:

> In finding that the detainer hold did not violate the defendant's Fourth Amendment rights, in *Lopez-Lopez*, the court reviewed and distinguished the previous line of cases holding that immigration detainers violated the Fourth Amendment. *Id.* at 799-802; *id.* at 799 ("Plaintiff asserts that '[n]umerous federal district courts have found that detention by local authorities pursuant to ICE detainers alone violates the Constitutional rights of the detainee.' The problem is that Lopez-Lopez was not detained solely on the basis of an ICE detainer.
> . . .
> Specifically, the *Lopez-Lopez* court noted that, while a detainer alone or an administrative warrant alone may not comply with the Fourth Amendment's

12

>  requirements because law enforcement officers "[e]ither [ ] lack probable cause (situations without an administrative warrant) or they lack a request to act (situations without a detainer)," the combination of the detainer and the administrative warrant rectifies these issues and complies with the Supreme Court's holding in *Arizona*. *Id.* at 801; *id.*

City of S. Miami v. Desantis, 408 F. Supp. 3d 1266, 1299 (S.D. Fla. 2019). The United States District Court of the Southern District of Florida (Judge Beth Bloom) has opined that a plaintiff's assertion of a pre-enforcement challenge compared to a post-enforcement Fourth Amendment challenge to detainer holds is a "critical" distinction. Desantis, 408 F. Supp. 3d at 1298 (comparing *C.F.C.*, 349 F. Supp. 3d 1236 (detainer not accompanied by an administrative warrant); Creedle, 349 F. Supp. 3d 1276 (detainer not accompanied by an administrative warrant); Lopez-Aguilar, 296 F. Supp. 3d 959 (no detainer issued)). The case before this Court presents only a post-enforcement challenge and is factually similar to Lopez-Lopez. In both circumstances, a local government defendant cooperated by complying with the federal government's request (as allowed pursuant to § 1357(g)(10)) by providing operational support by holding a plaintiff until ICE could take custody of him following the resolution of a state criminal matter. Critically, both cases involve circumstances where both an ICE detainer and warrant were present. [Exh. "F" - 1-3]. The reasoning promoted by Judge Bloom holds that the presence of both the detainer and warrant is sufficient in and of itself to establish probable cause. As a result, Plaintiff's claims are barred and final summary judgment is appropriate.

### III. Defendant Sheriff and the MCSO Deputies Were Acting Pursuant to Federal Authority and are Therefore Entitled Immunity to this Suit

Plaintiff claims that "In seizing Mr. Brown, the Sheriff was acting under color of state law." [DE 1 ¶ 93]. However, upon the issuance of a detainer and warrant issued pursuant to DHS/ICE authority, the continued detention of an individual within a county jail is pursuant to federal authority. Ricketts v. Palm Beach Cty. Sheriff, 985 So. 2d. 591, 593 (Fla. 4th DCA 2008) ("Once

appellant posts bond on his state charges... the sheriff will not be holding appellant pursuant to state authority but pursuant to federal authority" and a "state court cannot adjudicate the validity of the federal detainer, as the area of immigration and naturalization is within the exclusive jurisdiction of the federal government."). As this Court has stated, officers acting pursuant to a 287(g) Agreement "become de facto immigration officers. Desantis, 408 F. Supp. 3d at 1301.

The cooperation between a county and federal agency - whether it is pursuant to a formal 287(g) agreement or without one (for example, through informal cooperation with ICE detainers under 8 U.S.C. § 1357(g)(10)) - occurs under color of federal authority, rather than state authority. "An officer or employee of a State or political subdivision of a State acting under color of authority under this subsection, or any agreement entered into under this subsection, shall be considered to be acting under color of Federal authority for purposes of determining the liability, and immunity from suit, of the officer or employee in a civil action brought under Federal or State law." 8 U.S.C. § 1357(g)(8) (emphases added). "This subsection" includes both 8 U.S.C. § 1357(g)(1) (and so includes formal 287(g) agreements) and 8 U.S.C. § 1357(g)(10) (and so includes cooperation without a formal agreement)(E.g., Santos v. Frederick Cty. Bd. of Comm'rs, 725 F.3d 451, 463 (4th Cir. 2013) ("8 U.S.C. § 1357(g)(8) provides that a local law enforcement officer acting under any agreement with ICE under Section 1357(g) shall be considered to be acting under color of federal authority for purposes of determining liability in a civil action"); Silva v. United States, 866 F.3d 938, 942 (8th Cir. 2017) ("Section 1357(g)(8) would take effect if any such claim were brought against a local officer seeking damages"); see also Rios v. Jenkins, No. 18-cv-082, 2019 WL 3070632, at *10 (W.D. Va. July 15, 2019) ("[L]ocal law enforcement officials may cooperate with ICE in the detention or removal of aliens not lawfully present in the United States... when such cooperation is expressly requested or authorized by ICE[.]" (internal citations,

14

quotations, and alterations omitted)); Arias v. ICE, No. 07-cv-1959 2008, WL 1827604, at *13-15 (D. Minn. Apr. 23, 2008) (joint immigration task force resulting in arrests).

Although Plaintiff is fundamentally challenging the validity of a federal statutory scheme under 8 U.S.C. § 1357, he has not named the federal authorities as a Defendant in this matter. [DE 1]. Rather, only the Sheriff of Monroe County is named in his official capacity. Id. However, Plaintiff has deposed a federal ICE agent and is keenly aware of the role each individual played in this matter. [See generally, Exh. "F"]. Particularly, Plaintiff is aware that ICE independently conducted all aspects of the investigation of Mr. Brown and expressly requested the cooperation of the Defendant Sheriff through the issuance of a Form I-205, I-203, and I-247 on April 6, 2018. [See Exh. G Aff. of Garrett Ripa Pg. 2-3]. ICE was solely responsible for the investigation and determination of Plaintiff's status as a U.S. citizen, not the Sheriff. Id. The ICE investigation of Mr. Brown was largely concluded by the time the Form I-203, I-205, and I-247 was completed. Defendant's policy does not authorize Sheriff officers to unilaterally investigate, apprehend, or detain persons for immigration violations. [See Exh. "A" - BOA]. Rather, it authorizes the Sheriff to cooperate with a request from ICE to detain a specific inmate already in the Sheriff's custody, whom ICE has independently determined is removable, for a short period to facilitate ICE's apprehension of the individual. Id. This conduct falls within the language outlined in § 1357(g)(10)(B). Thus, the conduct challenged by Plaintiff is conduct specifically authorized by federal law. Further, any detention facility behavior challenged by Plaintiff would fall under detention/prison administration and federal courts have routinely stated that [p]rison administration is ... a task that has been committed to the responsibility of [the legislative and executive] branches, and separation of powers concerns counsel a policy of judicial restraint." Turner v. Safley, 482 U.S. 78, 85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); see also Arpaio

v. Baca, 217 Ariz. 570, 177 P.3d 312, 321 (Ariz. Ct. App. 2008) (courts have limited authority to interfere with a sheriff's duties to maintain and operate the county jails).

The facts developed in this matter, do not give rise to municipal/local government liability under 42 U.S.C. § 1983. Plaintiff is suing the Defendant for violating his Fourth Amendment rights inasmuch as Plaintiff claims that he was unlawfully seized by the Defendant. [DE 1 ¶ 95]. Plaintiff claims that the vehicle giving rise to his unlawful detention was the "policy and practice" of complying with ICE detainer requests. However, Plaintiff was seized pursuant to a detainer and a warrant alleging that probable cause existed for Plaintiff's continued detention. Once Plaintiff resolved his local criminal charges, he was subjected to a federal detention by DHS/ICE pursuant to a federal warrant. [See Exh. F-1-3]. Unquestionably, this detention was conducted by virtue of federal authority. As a result, Plaintiff's claims against the Sheriff are without merit and the Sheriff is entitled to final summary judgment.

## **CONCLUSION**

For the reasons stated, Defendant Sheriff is entitled to final summary judgment on the claims made by the Plaintiff as a matter of law.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been filed with the Clerk of Court via the CM/ECF system, which sends a copy to: SEE ATTACHED CERTIFICATE OF SERVICE LIST, this 18th day of February, 2020.

> PURDY, JOLLY, GIUFFREDA, BARRANCO & JISA, P.A.
> Attorneys for Defendant SHERIFF
> 2455 East Sunrise Boulevard, Suite 1216
> Fort Lauderdale, Florida 33304
> Telephone (954) 462-3200
> Telecopier (954) 462-3861
> E-mail: bruce@purdylaw.com
> susie@purdylaw.com
>
> BY: */s/ Bruce W. Jolly*
> BRUCE W. JOLLY
> Fla. Bar No. 203637
>
> */s/ Harrison A. Joss*
> Harrison A. Joss
> Fla. Bar No. 118289

## CERTIFICATE OF SERVICE LIST

**PETER SEAN BROWN V. RICHARD A. RAMSAY, etc.**
**CASE NO. 18-10279-CIV-KMW**

SPENCER E. AMDUR
CODY H. WOFSY
American Civil Liberties Union
39 Drumm Street
San Francisco, CA 94111
Telephone (415) 343-1198
samdur@aclu.org
cwofsy@aclu.org

OMAR C. JADWAT
LEE GELERNT
American Civil Liberties Union
125 Broad Street
New York, NY 10004
Telephone (212) 549-2500
ojadwat@aclu.org
lgelernt@aclu.org

AMIEN KACOU
ACLU Foundation of Florida, Inc.
4023 N. Armenia Avenue, Suite 450
Tampa, Florida 33607
Telephone (813) 288-8390
akacou@aclufl.org
Fla. Bar No. 443020

JENNIFER K. BRACHT
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone (213) 229-7000
jbracht@gibsondunn.com

SARAH M. RICH
Southern Poverty Law Center
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
Telephone (404) 521-6700
sarah.rich@splcenter.org

JONATHAN N. SOLEIMANI
JASON S KIM
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone (213) 229-7000
jsoleimani@gibsondunn.com
jkim@gibsondunn.com

DANIEL B. TILLEY
ACLU Foundation of Florida
4343 West Flagler Street, Suite 400
Miami, FL 33134
Telephone (786) 363-2714
Fla. Bar No. 102882
Dtilley@aclufl.org

ANNE JANET HERNANDEZ ANDERSON
Southern Poverty Law Center
P.O. Box 12463
Miami, Florida 33101
Telephone (786) 347-2056
aj.hernandez@splcenter.org

HEATHER RICHARDSON
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone (213) 229-7000
hrichardson@gibsondunn.com

PATRICK HAYDEN
Gibson, Dunn & Crutcher, LLP
200 Park Avenue
New York, New York 10166
Telephone (212) 351-4000
phayden@gibsondunn.com