**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 18-10279-CV-WILLIAMS**

PETER SEAN BROWN,

     Plaintiff,

v.

RICHARD A. RAMSAY,

     Defendant.

_____ /

## ORDER

     **THIS MATTER** is before the Court on Plaintiff Peter Sean Brown's ("***Plaintiff***" or "***Mr. Brown***") Motion for Partial Summary Judgment (DE 126) and Defendant Monroe County Sheriff Richard A. Ramsay's ("***Defendant***" or "***MCSO***") Motion for Summary Judgment (DE 127) (collectively, the "***Motions***"). The Court has carefully reviewed the Motions, the briefing, the record, and the applicable law. The Parties presented oral argument before the Court on the Motions in May 2024. (DE 225.) For the reasons set forth below, Plaintiff Mr. Brown's Motion for Partial Summary Judgment (DE 126) is **GRANTED** and Defendant Sheriff Ramsay's Motion for Summary Judgment (DE 127) is **DENIED**.

## I.   FACTUAL BACKGROUND[1]

### A.  The Monroe County Sheriff's Office and U.S. Immigration and Customs Enforcement

On February 14, 2018, the Monroe County Sheriff's Office ("***MCSO***") executed a Basic Ordering Agreement ("***BOA***") with United States Immigration and Customs Enforcement ("***ICE***"). (Def. SOMF ¶ 2.) In relevant part, the BOA provides:

> The Service Provider shall provide U.S. Immigration and Customs Enforcement (ICE) with reasonable access to all detainees or inmates for purposes of interviewing such individuals for immigration enforcement related purposes.

> SERVICES: The Service Provider shall house detainees pursuant to the issuance and acceptance of Form I-203 (Order to Detain or Release Alien) accompanied by Form I-247A (Immigration Detainer – Notice of Action) and either a Form I-200 (Warrant for Arrest of Alien) or Form I-205 (Warrant of Removal), consistent with Section 287.7(d) and (e) of Title 8 of the Code of Federal Regulations.
> . . .
> COMMENCEMENT OF SERVICES: Services will commence at the time of the alien's scheduled release from State custody after issuance and acceptance of Form I-203 (Order to Detain or Release Alien) accompanied by Form I-247A (Immigration Detainer – Notice of Action) and a Form I-200 (Warrant for Arrest of Alien) or Form I-205 (Warrant of Removal) issued by ICE. Services end when properly identified ICE personnel remove the alien from the Service Provider's facility or issue another Form I-203 (Order to Detain or Release Alien), or after 48 hours of detention, whichever occurs first.

---

[1] The following facts are taken from Defendant's Statement of Material Facts ("***Def. SOMF***") and related exhibits (DE 128) and Plaintiff's Statement of Material Facts ("***Pl. SOMF***") and related exhibits (DE 129).

(DE 128-1 at 2.) The February 2018 BOA is not a formal "287(g) agreement"[2] pursuant to 8 U.S.C. § 1357(g)(1). The BOA requires the issuance of a Form I-203, a Form I-247A, and a Form I-200 or a Form I-205 (collectively, "**Detainer Packet**") by ICE and the acceptance of such a Detainer Packet by MCSO. (DE 128-1 at 2.)

### B. Mr. Brown's Detention

Mr. Brown is a United States citizen who was born in Philadelphia in 1968. (Pl. SOMF ¶¶ 1–2.) On April 5, 2018, MCSO arrested Mr. Brown for a probation violation and sent his fingerprints to the FBI for a background check. (*Id.* ¶¶ 3–4.) Then, his fingerprints were checked against Department of Homeland Security ("**DHS**") databases, which generated a "possible match" to immigration records. (*Id.* ¶ 5.) This information was sent to the Miami ICE field office, triggering an investigation into whether the field office would issue a detainer. (*Id.* ¶¶ 5, 8–10.) ICE did not interview Mr. Brown at any point while he was in MCSO custody. (*Id.* ¶ 11.) Instead, an ICE officer conducted searches of various databases to investigate the potential match. (*Id.* ¶¶ 12–13.) Among these databases was the Enforcement Alien Removal Module ("**EARM**"), an investigatory tool ICE "always" utilizes before deciding to issue detainers. (*Id.* ¶¶ 14, 18.) EARM includes information about each individual's past encounters with federal immigration agents. (*Id.* ¶ 17.)

---

[2] A 287(g) agreement is made between state or local actors and the Department of Homeland Security. 8 U.S.C. § 1357. Under these agreements, local law enforcement officers are delegated federal powers to perform certain immigration related functions and are required to "receive[] adequate training regarding the enforcement of relevant federal immigration laws" to carry out such duties. *Id.*

Mr. Brown's EARM profile includes "comments" indicating that there were two different people named Peter Brown: a Peter Davis Brown, who was a noncitizen with a final removal order; and Plaintiff, Peter Sean Brown. (*Id.* ¶¶ 20–21.) The comments further referenced an incident in 2005 where ICE had wrongly issued a detainer for Plaintiff Mr. Brown based on the mistaken belief that he was Peter Davis Brown. (*Id.* ¶¶ 22–23.) The 2005 detainer resulted in Mr. Brown's erroneous detention in New Jersey for nearly a full day before ICE realized its error and released him. (*Id.* ¶ 24.) The EARM comments catalogued this incident and acknowledged that Mr. Brown's "photos and prints . . . were used in error." (*Id.* ¶ 26.) These EARM notes were available during ICE's 2018 investigation of Mr. Brown and would have been readily accessible to the ICE officer conducting the investigation and his supervisor, who approved the detainer. (*Id.* ¶¶ 19–20, 27.) Nonetheless, on April 6, 2018, ICE again issued a detainer for Mr. Brown. (*Id.* ¶ 31.) The detainer asked MCSO to hold Mr. Brown for up to an additional 48 hours after he would have otherwise been released from MCSO custody. (*Id.* ¶ 32.)

On April 6, 2018, while Mr. Brown awaited his April 26, 2018 court date in MCSO custody, he received a Detainer Packet. (Def. SOMF ¶ 14.) The documents in the Detainer Packet were issued for "Brown, Peter" and listed a birthdate that matched Mr. Brown's. (*Id.* ¶ 18.) Mr. Brown felt "scared" and "terrified" that he would be deported. (Pl. SOMF ¶ 38.) Over the course of three weeks, Mr. Brown repeatedly informed MCSO employees that he was a U.S. citizen and could not be deported or detained for ICE. (*Id.* ¶ 39.)

On April 8, 2018—just two days after ICE issued the Detainer Packet—Mr. Brown submitted a written complaint to MCSO stating:

> I AM REQUIRING INFORMATION REGARDING LEGAL ADVICE PERTAINING TO FALSE IMMIGRATION DETAINER…I AM AND HAVE ALWAYS BEEN A U.S. CITIZEN AND THIS IS NOT THE FIRST TIME THIS HAS BEEN [] HARRASSEMENT [sic]. . . I INTEND TO FILE LEGAL ACTIONS THIS TIME BECAUSE I ALLOWED IT TO BE DISMISSED AS A MISTAKE YEARS AGO . . . NOW IT IS BECOMING A BIT MUCH TO DEAL WITH AGAIN. . . .

(129-26 at 2.) MSCO closed the complaint three days later, stating "We cant [sic] advise you on any legal process[.]" (*Id.*) On April 16, 2018, Mr. Brown submitted a complaint to MCSO: "I have been wrongly accused and threatened with deportation from ICE? I am and have always been a citizen of the United States. This error happened previously over twenty years or so ago, while up north in NJ." (129-25.) MCSO responded a day later: "It is not up to us to determine the validity of the ICE hold. That is between you, your attorney[,] and ICE." (*Id.*) MCSO informed him that they would continue to hold him for ICE and would not take any action to corroborate his statements. (Pl. SOMF ¶ 42.) On April 19, 2018, Mr. Brown submitted another written complaint to MCSO: "Im [sic] trying to obtain information concerning a[n] unvalid [sic] ICE hold..Im [sic] a US citizen…how is this even possible..?" (129-26 at 3.) MCSO never replied and closed the complaint over a month later, on May 28, 2018. (*Id.*)

On April 26, 2018, the state court judge presiding over Mr. Brown's probation violation case ordered Mr. Brown released. (Pl. SOMF ¶ 36.) However, because MCSO

had received the Detainer Packet for Mr. Brown, it continued to detain him. (*Id.* ¶ 35.) On

April 26, 2018, Mr. Brown submitted a final complaint to MCSO:

> I AM BEING MISCLASSI[F]IED AS AN ILLEGAL JAMAICAN
> IMMIGRANT…I WAS CORRECTLY HERE ON A VIOLATION OF
> PROBATION WARR[A]NT FOR WHICH I WENT TO COURT THIS
> MORNING . . . . MY PROBATION WAS RE[I]NSTATED AND SUPPOSED
> TO REPORT TO MY PROBATION TOMORROW . . . PROBLEM BEING IS
> I AM NOW BEING ILLEGALLY DETAINED ON AN APPARENT I.C.E.
> WARR[A]NT WHICH IS ABSOLUTELY ABSURD . . .  BEING AS THOUGH
> I AM A U.S.A. CITIZEN..BORN IN PHILADELPHIA,
> PENNSYLVANIA…WHATEVER MISTAKE IS NEEDS TO BE
> ADDRESSED AND RECTIFIED, BECAUSE TIS [sic] ILLEGAL
> DETAINMENT IS NOW PLACING ME IN A VIOLATION OF PROBATION
> SITUATION AGAIN AND OUTOF [sic] MY CONTROL…I HAVE ASKED
> FOR ASSISTANCE..WHICH HAS BEEN FUTILE AS OF YET.. HOWEVER
> THIS SITUATION HAS REACHED A BEING DETAINED FOR THIS ICE
> WARR[A]NT IS TRULY INCORRECT AND UNJUSTIFIED…THANK YOU
> PETER SEAN BROWN

(129-26 at 1.) MCSO closed the complaint the next day with a note: "Released to ICE

4/27/18[.]" (*Id.*)

At all relevant times, MCSO utilized an electronic database called SmartCop to

maintain inmate records. (Pl. SOMF ¶ 48.) Mr. Brown's SmartCop records referenced his

U.S. citizenship and place of birth in numerous places. (*Id.* ¶¶ 50–51.) MCSO records

also repeatedly referenced his valid Florida identification card. (*Id.* ¶ 52.) In April 2018,

MCSO officers regularly utilized SmartCop and reviewed inmate records, with at least one

official testifying that he accessed SmartCop "at least a dozen times per day." (*Id.* ¶ 53.)

Throughout April 2018, MCSO was "in touch with ICE via phone, e-mail and fax" and

could have easily raised concerns with ICE about any Detainer Packets. (*Id.* ¶¶ 59–60.)

Nonetheless, MCSO never spoke with ICE about Mr. Brown's Detainer Packet or his claims of U.S. citizenship. (*Id.* ¶ 62.)

Mr. Brown's friend and manager, Brooke Lynch, reached out to MCSO to inquire about Mr. Brown's detention. (*Id.* ¶¶ 63–65.) When MCSO informed her that Mr. Brown had an ICE detainer against him, Ms. Lynch informed the MCSO employee that Mr. Brown was a U.S. citizen. (*Id.* ¶ 66.) MCSO did not take any action to investigate Ms. Lynch's statement or ask her for more information. (*Id.* ¶ 67.) Mr. Brown has submitted sworn testimony[3] that he offered to have his U.S. birth certificate sent to MCSO numerous times. (DE 129-8 ¶ 2.) Sheriff Ramsay disputes that Mr. Brown made such offers but does not cite to any contrary evidence.

ICE Assistant Field Officer Director Garrett Ripa testified that if MCSO had contacted ICE about Mr. Brown's detainer, ICE could have investigated Mr. Brown's claim of citizenship and cancelled the Detainer Packet. (Pl. SOMF ¶ 61.) By MCSO's own admission, at all relevant times to this action, MCSO had a practice of enforcing every Detainer Packet received from ICE and not investigating anything "beyond the four corners of such documents." (Def. SOMF ¶ 22.) Between the late hours of April 26 and

---

[3] The Court is perplexed by MCSO's assertion that Mr. Brown's affidavit submitted in support of his motion for summary judgment is "biased" and "uncorroborated hearsay." (DE 150 at 1.) Plaintiffs' declarations are routinely a part of the summary judgment record submitted to the Court. *See, e.g., McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003) (considering statements from plaintiff's affidavit and deposition). Accordingly, the Court includes Mr. Brown's sworn testimony in its review.

the early hours of April 27, Mr. Brown was transferred to federal custody. (Pl. SOMF ¶ 73.) During the transfer process, Mr. Brown again repeated to MCSO staff that he was a U.S. citizen. (*Id.*) In response, MCSO deputies sang the Fresh Prince of Bel Air theme song—presumably a reference to Mr. Brown's place of birth in Philadelphia—as well as "Don't worry, be happy" and "Everything is going to be all right"—presumably a reference to the incorrect idea that Mr. Brown was a Jamaican national. (*Id.* ¶ 76.) On April 27, 2018, ICE agents at Krome Immigration Detention Center finally interviewed Mr. Brown, reviewed his birth certificate and the Florida Driver and Vehicle Information Database, and released Mr. Brown. (Pl. SOMF ¶ 81; Def. SOMF ¶ 25.)

**C.  Mr. Brown's Detainer Packet**

**1.  Form I-247A**

The Form I-247A, titled "Immigration Detainer – Notice of Action," is a generic form with space to fill in the personal details of the individual. (128-6 at 2–4.) ICE officers completing the form are instructed to "complete box 1 or 2." (*Id.*) The first box reads: "1. DHS HAS DETERMINED PROBABLE CAUSE EXISTS THAT THE SUBJECT IS A REMOVABLE ALIEN. THIS DETERMINATION IS BASED ON . . ." Below the box are four checkboxes, which read as follows:

A final order of removal against the alien;

The pendency of ongoing removal proceedings against the alien;

Biometric confirmation of the alien's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the alien either lacks immigration status or

notwithstanding such status is removable under U.S. immigration law; and/or

Statements made by the alien to an immigration officer and/or other reliable evidence that affirmatively indicate the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

(*Id.*) Here, the first and third boxes—final order of removal and biometric confirmation—were selected. (*Id.*) Additionally, the I-247A provides a phone number for the ICE Law Enforcement Support Center that local law enforcement may call if they "have any other questions or concerns about [the] matter." (*Id.*) At no point did MCSO officers reach out to ICE using this number, despite Mr. Brown's consistent statements about U.S. citizenship. (Pl. SOMF ¶ 62.)

On the second page of the I-247A, a "Notice to the Detainee" is set forth in several languages. (128-6 at 3.) Of particular importance here, the notice includes the following: "[i]f you believe you are a United States citizen . . . please advise DHS by calling the ICE Law Enforcement Support Center . . . ." (*Id.*) Mr. Brown attempted to call this number twice while in MCSO custody in April 2018. (Pl. SOMF ¶ 46.) However, one attempt resulted in an endless loop of automated messages while the other resulted in the phone ringing continuously. (*Id.*) When Mr. Brown informed an MCSO officer that he had been unable to reach ICE using the number provided on the I-247A, the MCSO officer replied that there was nothing he could do to help. (*Id.* ¶ 47.)

## 2.  Form I-205

The Form I-205, titled "Warrant of Removal/Deportation," is addressed "[t]o any immigration officer of the United States Department of Homeland Security" with blank

spaces for the ICE officer to enter the personal details of the individual for whom the form is being issued. (DE 128-6 at 6–7.) Here, the Acting Field Office Director signed the I-205 and filled out the "Full name of alien" section with: Peter Brown—no middle name. (*Id.*) Again, the form includes four checkboxes to indicate the reasoning for the individual's subjection to removal or deportation: "a final order by: [1] an immigration judge in exclusion, deportation, or removal proceedings [2] a designated official [3] the Board of Immigration Appeals [4] a United States District or Magistrate Court Judge." (*Id.*) In Mr. Brown's case, the first box—a final order by an immigration judge—was selected. (*Id.*)

### 3. Form I-203

The Form I-203 is titled "Order to Detain or Release Alien." (DE 128-6 at 5.) The "Remarks" section includes a single line: "PLEASE HOLD FOR ICE PICK-UP (BOA AGREEMENT)" and the name on the form is listed as Peter Brown. (*Id.*)

### D. Immigration Arrests and Detainers

"Removal is a civil, not criminal, matter." *Arizona v. United States*, 567 U.S. 387, 396 (2012). Nonetheless, federal civil immigration statutes utilize criminal law terms such as 'arrest' and 'warrant.' *See* 8 U.S.C. §§ 1226, 1357. This collapsing of legal terms has led to Constitutional concerns. As relevant here, the concept of a warrant in the criminal context is rooted in the understanding that the Fourth Amendment requires a determination "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14 (1948); *see also United States v. Blasco*, 702 F.2d 1315, 1324 (11th Cir. 1983) ("Our Founding Fathers had the prescience to realize that law

enforcement officers in their zealous efforts to do their jobs cannot always undertake the detached and neutral reflection embodied in the fourth amendment's warrant clause. Therefore, the insistence upon a neutral decisionmaker is mandated."). At its core, Fourth Amendment jurisprudence on warrants in the criminal context is based on the foundational principal that review by a neutral party is required to protect the Constitutional liberties of the accused. No such protections apply in the civil immigration context.[4] Although the Form I-205 is titled 'Warrant of Removal/Deportation,' it does not require any judicial officer or neutral magistrate to review the sufficiency of the ICE officer's determination of probable cause.

Furthermore, as a check-the-box form, the Form I-205 does not include any specific factual details about the basis for such probable cause, in contrast to criminal warrants which require a fact-specific inquiry. The evolution of ICE forms to incorporate the language of 'probable cause' indicates that the agency is aware of these Constitutional issues. *Roy v. Cnty. of Los Angeles*, No. CV1209012ABFFMX, 2018 WL 914773, at *2 (C.D. Cal. Feb. 7, 2018) ("The June 2015 I–247D and August 2015 I–247X detainer forms, which ICE changed in response to judicial decisions holding ICE detainers lacked probable cause to justify a warrantless arrest and law enforcement agencies nationwide began to refuse to comply with them, further modified the form's wording to

---

[4] The Supreme Court has expressly declined to rule on whether administrative warrants satisfy Fourth Amendment requirements. *Abel v. United States*, 362 U.S. 217, 230 (1960) ("The claim that the administrative warrant by which petitioner was arrested was invalid, because it did not satisfy the requirements for 'warrants' under the Fourth Amendment, is not entitled to our consideration in the circumstances before us.")

state that '[p]robable cause exists that the subject is a removable alien.'") (citation omitted and alterations in the original).

## II.   PROCEDURAL BACKGROUND

On December 3, 2018, Mr. Brown filed this action against Sheriff Ramsay in his official capacity. (DE 1.) In his Complaint, Mr. Brown brings two claims: (1) Unconstitutional Seizure in Violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 ("**Section 1983**"), and (2) False Imprisonment under Florida Law. (*Id.* at 17–20.) In sum, Mr. Brown challenges his confinement by MCSO following the state court's April 26, 2018 order of release and MCSO's policy and practice of detaining and transferring every single person for whom ICE issued a Detainer Packet without question and without regard to any information tending to prove the person is not removable.

On January 2, 2019, Sheriff Ramsay responded to the Complaint. (DE 31.) On February 18, 2020, the Parties filed the at-issue Motions and the accompanying Statements of Material Facts.[5] On May 15, 2024, the Court held oral argument on both Motions. (DE 225.)

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[O]nly disputes over facts that might affect the outcome of the suit

---

[5] (DE 126; DE 127; DE 128; DE 129.)

under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Any such dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party seeking summary judgment carries the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case." *Feinman v. Target Corp.*, No. 11-62480-CIV, 2012 WL 6061745, at *3 (S.D. Fla. Dec. 6, 2012) (citing *Celotex*, 477 U.S. at 325).

Once the movant satisfies their burden, the burden of production shifts to the nonmoving party, which must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Courts must view the evidence and make all reasonable factual inferences in the light most favorable to the nonmoving party. *In re Optical Techs.*, 246 F.3d 1332, 1334 (11th Cir. 2001). However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. Evidence that is "merely colorable" or "not significantly probative" is insufficient to defeat a motion for summary judgment. *Id.* at 249–50.

## IV.    DISCUSSION

The Court begins by clarifying which issues are *not* before the Court in this action. Here, the Court need not opine on whether ICE may issue warrants for the arrest of individuals suspected of being noncitizens; whether local law enforcement agencies may cooperate with ICE with or without 287(g) agreements; whether civil warrants can be used to effectuate arrests; or whether all arrests made pursuant to a Form I-247A, Form I-203, and Form I-205 run afoul of the Fourth Amendment. Accordingly, to the extent that the Parties' briefing discusses these topics, the Court will not address these arguments. Instead, the narrow question before the Court is whether a local law enforcement agency cooperating with ICE may disregard information tending to prove a person is not removable and abdicate all responsibility regarding the truth of his status solely based on a Detainer Packet. For the reasons set forth below, the Court finds that the answer to this narrow question is a resounding no.

### A.  Count I – Unlawful Seizure Pursuant to the Fourth Amendment

Section 1983 provides a cause of action against any person who deprives another "of any rights, privileges, or immunities secured by the Constitution and laws" while using state government authority. 42 U.S.C. § 1983. Since 1978, the Supreme Court has affirmed that municipalities and local government entities may also be held liable where the local entity causes such a deprivation. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978). To succeed on such a claim, "the plaintiff must show: (1) the violation of a federal right occurred; (2) the existence of a municipal policy or custom; and (3) a causal connection between the violation and the municipal policy or custom." *Watts*

*v. City of Hollywood*, 146 F. Supp. 3d 1254, 1270 (S.D. Fla. 2015). It is undisputed that MCSO had a policy of complying with all Detainer Packets and that Mr. Brown was seized pursuant to such a Detainer Packet.[6] Therefore, the only inquiry before the Court is whether a violation of a federal right occurred.

Again, the issue before the Court is a narrow one: Mr. Brown does not challenge his detention between April 5 and April 26, 2018, during which time he was being held pursuant to lawful process based on a probation violation. Instead, Mr. Brown challenges his continued detention after he was ordered released by the state court judge on April 26, 2018. Mr. Brown argues that because ICE had no probable cause to issue the Detainer Packet against Mr. Brown, MCSO had no probable cause to detain him pursuant to the Detainer Packet. Alternatively, Mr. Brown argues that even if MCSO initially had probable cause to detain him pursuant to the Detainer Packet, any such probable cause dissipated once MCSO refused to look into Mr. Brown's claims of citizenship in any way. MCSO wisely does not raise any arguments that ICE had probable cause to issue the Detainer Packet. Instead, MCSO argues it received a facially valid Detainer Packet from ICE and was not required to investigate the Detainer Packet's sufficiency.

---

[6] MCSO has stated that it would not "assert any lack of sufficient factual evidence to satisfy the *Monell* standard" assuming that a constitutional violation is found. (DE 120 at 2.) MCSO confirmed this position at the Motion hearing.

**1. It is undisputed that ICE did not have probable cause to issue the Detainer Packet for Mr. Brown.**

"Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). In this context, that standard is met when the "facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe" that the arrested individual is subject to removal. *Id.* (quotation omitted). Here, numerous ICE officers accessed the EARM database prior to issuing the Detainer Packet for Mr. Brown. The notes displayed on the first page of Mr. Brown's profile on the database referenced his prior erroneous detention and indicated that there were two Peter Browns with different middle names: one, Plaintiff Mr. Brown, who was a U.S. citizen, and another, with a final removal order. Mr. Brown argues—and MCSO does not dispute[7]—that ICE lacked probable cause to issue the Detainer Packet against Mr. Brown. The Court therefore concludes that ICE lacked probable cause to issue the Detainer Packet against Mr. Brown.

_____

[7] To the extent that MCSO's briefing addresses the issue of ICE's probable cause to issue the Detainer Packet, it only states that ICE's lack of probable cause is "irrelevant to the question of whether probable cause existed for [MCSO] to detain the Plaintiff. . . ." (DE 150 at 9.) For reasons set forth, *infra*, the Court disagrees that ICE's lack of probable cause is wholly irrelevant to the Court's analysis of MCSO's liability.

**2. The collective knowledge doctrine cannot insulate MCSO from liability in this case.**

"Fourth Amendment seizures are 'reasonable' only if based on probable cause." *Dunaway v. New York*, 442 U.S. 200, 213 (1979). "Detention is a type of seizure of the person to which Fourth Amendment protections attach." *Alcocer v. Mills*, 800 F. App'x 860, 865 (11th Cir. 2020). The law is clear that MCSO required new, independent probable cause to continue to detain Mr. Brown after the state court judge ordered him released. *Id.* ("Supreme Court precedent also prohibits keeping a detainee in custody for a new purpose after initial entitlement to release, without new probable cause justifying the new seizure under the Fourth Amendment."). MCSO invokes the 'collective knowledge'[8] doctrine for the proposition that because it received a facially valid Detainer Packet from ICE, it had probable cause to continue to detain Mr. Brown. However, "while law enforcement personnel may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 688 (5th Cir. 2003) (citations omitted).

Here, MCSO officials ignored Mr. Brown's repeated, specific claims of U.S. citizenship and their own records that suggested his citizenship status. Although a law enforcement officer "is not required to explore and eliminate every theoretically plausible

---

[8] Courts interchangeably refer to this concept as the 'fellow officer' rule or 'collective knowledge' doctrine. The Court refers to the collective knowledge doctrine in this Order, recognizing that it is the same concept as the 'fellow officer' rule.

claim of innocence before making an arrest . . . an officer may not choose to ignore information that has been offered to him or her . . . [n]or may the officer conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts." *Kingsland*, 382 F.3d at 1229. In fact, the Eleventh Circuit has made clear that "lack of corroboration through independent police work . . . is noteworthy in [the] probable cause analysis." *Id.* Mr. Brown and his manager offered to have his birth certificate sent to MCSO, but MCSO refused.[9] Despite these offers of evidence, MCSO failed to contact ICE—even though the forms in the Detainer Packet provided a mechanism and phone number for them to do so. "[P]robable cause becomes stale when new information received by the police nullifies information critical to the earlier probable cause determination before the warrant is executed." *United States v. Dalton*, 918 F.3d 1117, 1128 (10th Cir. 2019) (citing *United States v. Bowling*, 900 F.2d 926 (6th Cir. 1990)). Mr. Brown repeatedly informed MCSO of his U.S. citizenship prior to the new arrest and offered documentation of his claims. The Court finds that this is the exact type of information that renders the earlier probable cause determination to be stale, requiring

---

[9] MCSO's reliance on *Lopez-Lopez v. County of Allegan* is misplaced. As the Court has reiterated, this case is not about whether local law enforcement can ever hold an individual pursuant to an ICE detainer and an administrative warrant; it is about whether in doing so, local law enforcement can choose to ignore and take no action on potential information tending to prove the person is not removable. 321 F. Supp. 3d 794 (W.D. Mich. 2018). In *Lopez-Lopez*, there was no allegation that the plaintiff had offered any information to local law enforcement that would cause a reasonable officer to doubt the sufficiency of the detainer and warrant. *Id.* Therefore, the case is inapposite.

some sort of action on MCSO's part to verify or inquire about ICE's probable cause determination.

In *City of El Cenizo v. Texas*, the Fifth Circuit examined a facial challenge to a bill that "require[d] law-enforcement agencies to comply with detainer requests submitted by ICE." 890 F.3d 164, 174 (5th Cir. 2018). Such requests were made through the combination of a Form I-247A and a signed administrative warrant. *Id.* In finding the bill constitutional, the Fifth Circuit discussed a subsection of the law that exempted law enforcement agencies from complying with ICE's requests "when the individual in custody 'has provided proof that the person is a citizen of the United States or that the person has lawful immigration status in the United States, such as a Texas driver's license or similar government-issued identification." *Id.* at 185 (quoting Tex. Code Crim. Proc. Art. 2.251(b)). Indeed, in finding that the law complied with the Fourth Amendment, the Fifth Circuit made clear that the bill "require[d] cooperation—not blind obedience. This seems reasonable given the assumption that ICE should have no interest in detaining aliens when local officials communicate that the original determination was flawed." *Id.* at 189 ("The plaintiffs are also wrong to suggest that the ICE-detainer mandate requires officers to ignore facts that negate probable cause."). The Fifth Circuit also recognized that even in the statutory scheme set forth in the bill—one with a detainer and warrant—"seizures may occur where probable cause was lacking. . . . [I]f violations occur, the proper mechanism is an as-applied, not a facial challenge." *Id.* at 190. That is exactly what Mr. Brown does here.

MCSO asks this Court to go beyond what other federal courts have held and sanction conduct that would amount to the blind obedience—not cooperation—that the Fifth Circuit explicitly warned against. The birth certificate that Mr. Brown and his manager offered to present is the type of evidence that "did not merely make it less likely probable cause existed but obviously and irrefutably established that it didn't exist." *Davis v. City of Apopka*, 78 F.4th 1326, 1343 (11th Cir. 2023), *cert. denied sub nom. Davis v. City of Apopka, Fla.*, 144 S. Ct. 2528 (2024). To be clear, the Court does not seek to supplant local law enforcement's judgment of how to process and investigate potential information tending to prove that a person is not removable. Nor does the Court hold that local law enforcement agencies are permitted to make removability determinations—they categorically are not. Instead, the Court simply holds that in the face of specific, detailed evidence that would dissipate probable cause, a local law enforcement agency cannot simply turn a blind eye and be shielded from liability by a seemingly valid Detainer Packet, especially one that was itself issued without probable cause. MCSO could have contacted ICE to investigate Mr. Brown's claims of citizenship or, if unwilling to do that, released him based on their own records that dissipated probable cause. To hold otherwise would be to permit law enforcement agencies to use the collective knowledge doctrine as both a sword and a shield.[10] Accordingly, the Court grants summary judgment in favor of Mr. Brown as to Count I.

_____

[10] The Court recognizes MCSO's position that it was somehow required to execute all Detainer Packets. But this was not the law. Anti-commandeering jurisprudence makes clear that local law enforcement cannot be forced by the federal government to take such

### B.  Count II – False Imprisonment

"In Florida, the tort of false imprisonment is defined as 'the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty.'" *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006) (quoting *Escambia Cnty. Sch. Bd. v. Bragg*, 680 So. 2d 571, 572 (Fla. Dist. Ct. App. 1996)). "The essential elements of a cause of action for false imprisonment include: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or 'color of authority'; and (4) which is unreasonable and unwarranted under the circumstances." *Bartley v. Kim's Enter. of Orlando, Inc.*, 568 F. App'x 827, 834 (11th Cir. 2014) (quoting *Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. Dist. Ct. App. 2010)). MCSO argues that its re-arrest and detention of Mr. Brown following the state court's order of release was lawful and with legal authority, challenging the first and third elements of Mr. Brown's false arrest claim.

It is undisputed that arrest and detention without probable cause are unlawful. *See, e.g., Exford v. City of Montgomery*, 887 F. Supp. 2d 1210, 1229 (M.D. Ala. 2012). As discussed *supra*,[11] MCSO's probable cause to detain Mr. Brown pursuant to the Detainer

---

actions. "The overwhelming consensus of the federal courts is that immigration detainers are requests and are not binding on state and local authorities. If detainers were mandatory, they would likely be struck down on anti-commandeering, Tenth Amendment grounds." *Lopez-Lopez*, 321 F. Supp. 3d at 797 (citing *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014)).

[11] "[D]etermining the existence of probable cause is the same under both Florida and federal law." *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998).

Packet dissipated when he repeatedly made claims of citizenship and MCSO took no action to investigate those claims.[12] MCSO's invocation of the collective knowledge doctrine fares no better in the Florida law context: "Just as Florida courts have long held that the knowledge of one officer may be imputed to other officers under the fellow officer rule, the same is true for their mistakes." *State v. J.R.D.*, 311 So. 3d 84, 89–90 (Fla. Dist. Ct. App. 2019) (citation omitted). Accordingly, the Court finds that Mr. Brown has proven an unlawful detention.

Next, MCSO argues that it acted with legal authority because the BOA created a contractual duty for MCSO to detain Mr. Brown for ICE. First, the language of the BOA expressly provides that MCSO would detain individuals for ICE "pursuant to the issuance and acceptance" of a Detainer Packet. Based on a plain reading of the BOA, then, MCSO's mandate to detain people only flows from their acceptance of a Detainer Packet from ICE. Nothing in the BOA prevents MCSO from calling ICE to inquire about the sufficiency of a particular Detainer Packet and, in fact, the forms list a specific phone number to encourage MCSO to call about any questions they may have. Furthermore, as discussed *supra*, the federal government forcing MCSO to detain people for ICE would raise Tenth Amendment concerns. MCSO may *choose* to collaborate with ICE through

---

[12] Florida courts have found that liability can attach for false imprisonment where probable cause may have existed at the time of the arrest but "evaporated" due to information ascertained following the arrest. *Mathis*, 24 So. 3d at 1290.

the BOA, but in doing so, they cannot violate the law. Accordingly, the Court grants summary judgment in favor of Mr. Brown as to Count II.[13]

### C. Declaratory Judgment

Finally, the Court turns to Mr. Brown's claim for declaratory relief. "[T]he Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "In order to demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a plaintiff is seeking declaratory relief—as opposed to seeking damages for past harm—the plaintiff must allege facts from which it appears that there is a substantial likelihood that he will suffer injury in the future." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210–11 (11th Cir. 2019) (citations omitted). "Thus, in order for this Court to have jurisdiction to issue a declaratory judgment . . .  [a plaintiff] must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999). "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Id.* (citation omitted).

---

[13] MCSO further argues that it was acting under the color of federal law and is therefore immune from suit. However, MCSO has already previously admitted that it was acting under the color of state law in seizing Mr. Brown and the Court will not consider an eleventh-hour change in position. *Compare* Complaint ¶ 93 ("In seizing Mr. Brown, the Sheriff was acting under color of state law.") *with* Answer and Affirmative Defense ¶ 93 ("Admitted.").

As an initial matter, in three briefs submitted to the Court over the course of briefing the two Motions, MCSO never addressed Mr. Brown's declaratory judgment claim, despite Mr. Brown's Motion specifically arguing the issue. It is axiomatic that a party "waive[s] their claims by failing to brief them, failing to respond to the [opposing party's] motion for summary judgment, and failing to bring to the court's attention evidence that supported their claims." *A.L. v. Jackson Cnty. Sch. Bd.*, 635 F. App'x 774, 787 (11th Cir. 2015); *see also B.T. by & through Jackson v. Battle*, No. 21-10318, 2021 WL 4147087, at *5 (11th Cir. Sept. 13, 2021) ("[D]istrict court did not err in concluding B.T. abandoned the excessive force claim. B.T.'s failure to address the claim at all in his response brief other than in a heading shows abandonment."); *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004) ("Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party.").

Nonetheless, even if MCSO had not waived its opposition to Mr. Brown's claim for declaratory judgment, the Court finds that Mr. Brown would still prevail. First, it is undisputed that Mr. Brown has already been wrongfully detained twice: once in New Jersey, and once in Florida. Furthermore, Mr. Brown's "status as a U.S. citizen is also not determinative of whether he is likely to be held pursuant to a detainer in the future because, as other courts have recognized, U.S. citizens are frequently held pursuant to detainers." *Creedle v. Miami-Dade Cnty.*, 349 F. Supp. 3d 1276, 1289 (S.D. Fla. 2018) (collecting cases). Accordingly, Mr. Brown has demonstrated that he is entitled to a declaratory judgment as set forth below.

## V.    CONCLUSION

MCSO argues that "Plaintiff is attempting to advocate for a policy of judicial oversight by challenging the Defendant jailor's practice of compliance with ICE detainers and warrants." DE 152 at 9. This misconstrues Mr. Brown's request of the Court and the scope of this Order. It bears clarifying: the Court is not ordering that MCSO cannot comply with ICE detainers and warrants. Instead, the Court's holding today is simply that, when MCSO possesses information indicating that an individual in MCSO custody is a U.S. Citizen, MCSO cannot abdicate its legal responsibility and turn a blind eye to this information. Nor does the Court impose any particular duty or specific course of action upon MCSO—MCSO is free to choose from a range of actions following an individual's assertion of citizenship, such as calling ICE to inquire about the individual, looking at MCSO's own records, or conducting a search of the DMV database. This list is not exhaustive, and MCSO may choose which investigatory option it uses to examine the individual's claim. The Court merely holds that, MCSO cannot choose to do *nothing* as they did here.

For the reasons set forth above, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff Mr. Brown's Motion for Partial Summary Judgment (DE 126) is **GRANTED**.

2. Defendant Sheriff Ramsay's Motion for Summary Judgment (DE 127) is **DENIED**.

3. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, it is declared as follows:

Whenever MCSO possesses information indicating that an individual in MCSO custody is a U.S. Citizen, including, but not limited to the individual's own statements or MCSO records, if:

a. the individual's U.S. citizenship can be confirmed by records readily accessible to MCSO in the ordinary course; or

b. MCSO fails to conduct any inquiry into the individual's citizenship, including by contacting ICE; or

c. further investigation by MCSO and/or ICE does not undermine the information indicating that the individual is a U.S. citizen;

any failure by MCSO to release the individual from custody due to an ICE detainer after the individual would otherwise be entitled to release violates the individual's rights under the Fourth Amendment of the U.S. Constitution and Florida tort law.

4. The Parties' pending motions *in limine* (DE 200; DE 201) are **DENIED AS MOOT**.

5. The Parties are instructed to file a proposed scheduling order for any remaining pretrial deadlines, including a deadline to file updated motions *in limine*, within **fourteen (14) days of the date of this Order**.

**DONE AND ORDERED** in Chambers in Miami, Florida, on this 30th day of May, 2025.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE